THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Appeal from the United States District Court for the District of Rhode Island

MARY SEGUIN                                      No. 23-1967
*Plaintiff-Appellant*

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

————————————

**APPELLANT'S MOTION REQUEST TO SUPPLEMENT THE RECORD PRIOR TO BRIEFING**

**Pursuant to FRE 201, the Inherent Authority of the Court Pursuant to Supervening Change of Facts and Change in Law**

**28 U.S.C. § 2106 and Fed. R. App. P. 27**

————————————

**ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS**

This case is about the gross irreparable harm human toll of "too much law" that is corruptly administered by Appellee administration of an Act of Congress that itself is fundamentally "too much law" that dress up fundamentally legal action in debt at common law, that involves hundreds of billions of federal public funds to operate annually, which Appellees criminally administer through federal criminal obstruction falsifying and altering federal Title IV records and support orders to "zero out interest" relating to the Rhode Island's usurious and unlawful "interest debt" at 12% compound interest that facially violates 42 U.S.C. sec. 654(21)(A) –

alteration "zeroing out interest" makes it look like Appellees are federal law compliant, in order to make false claims (certainly, Appellee public officers and their respective politically influenced attorneys and former attorneys such as William E. Smith knew and should have known that federal document alteration "zeroing out interest" facially violates the statutory texts of, among others, 18 U.S.C. sec. 1503, 1512 and 1516) – Appellees aimed to falsely make Rhode Island look like it is compliant and eligible to make claims for Title IV-D federal funds for 3-4 billion dollars annually to operate a RICO operation collecting 12% compound interest debt from support obligor victims in legal actions in debt at common law dressed up as "enforcement" in constitutionally infirm forums that are facially rigged by the judiciary Appellees in their ministerial capacity operating the Title IV proceeding forums that are structurally defective to the advantage of the State Appellee Title IV Administrator agencies that further impair the availability to federal auditors of court document records relating to the corrupt Rhode Island-prescribed Title IV administrative procedures relating to alteration and falsification of Title IV records "zeroing out interest" as in Appellant's case. Indeed, it is equally disturbing that the federal court in the district court for the district of Rhode Island (presided by the same William E. Smith) in the related district court case 23-cv-34 (Appeals 23-1851 and 24-1451) to be nonresponsive to Appellee-proffered "evidence" of a state court order that textually ordered "interest

is put back on the system without prejudice" showing, as it turns out in hindsight, evidence of record alteration that it turns out is systemic and systematic that William E. Smith, who has a former intimate, broad, personal and political attorney client relationship with the State Appellees for several years and whose ex-firm continues Smith's attorney-client relationship with the State Appellees currently that is emblazoned on the Federal Judiciary Website biography for Smith, <u>knew or should have known</u>.

Plaintiff-Appellant, MARY SEGUIN, hereby respectfully moves, pursuant to this Court's orders dated May 24, 2024 (Document: 00118148678) and dated August 13, 2024 (Document: 00118177676), Federal Rules of Evidence 201(c)(1) and (2), invoking the Inherent Authority of the Court, **28 U.S.C. § 2106** and pursuant to supervening change of facts and change in law, to supplement the record prior to court-ordered briefing due September 13, 2024 with the attached undisputable records under FRE 201(c)(2), that Appellant hereby furnishes.  This same evidence is filed in the district court in the underlying case 23-cv-126 pursuant to FRE 201(c)(2).  The Court must take judicial notice that Appellant filed a Rule 62.1 Motion for Indicative Ruling in the district court for Rule 60(b) and Rule 15(a) motions on September 5, 2024.  See attached documents in Exhibit I, that show the following:

(1) Federal United States Department of Health and Human Services Website entitled, "State Child Support Agencies with ***Debt*** Compromise Policies" – making it clear Congress and the Secretary of the U.S. Department of Health and Human Services statutory and regulatory texts show that "enforcement" of support and/or interest is nothing more than dressed up legal actions in debt at common law, in which the United States has a substantial, regulatory, and federal law compliance audit interest. This Circuit's caselaw relating to factual ***legal actions in debt at common law*** dressed up as "state support enforcement" as a state interest with no substantial federal regulation or 66% funding of such state legal actions in debt at common law akin to state criminal proceedings applying Younger Abstention is ripe for Article III Supreme Court review. State legal actions in debt at common law that are regulated by extensive and complex Title IV of Social Security Act that are subject to federal audit for federal law and regulatory compliance, contingent upon which federal public funding is then eligible to operate 66% of the state's legal actions in debt at common law dressed up as "enforcement" in which obstruction falsification of the interest records by the state is prescribed in official procedures zeroing out the interest for the purpose of concealing Rhode Island's unlawful 12% compound interest, are represented to support obligors are waived, then are "put back on the

computer system," then fraudulent liens placed on obligors' properties does not meet the threshold standard for Younger Abstention, nor is it recognized as constitutional or lawful administrative procedures under the laws of the United States, i.e., *see* 5 U.S.C. sec. 706.  This Circuit's caselaw is ripe for Article III Supreme Court review on its application of Younger Abstention in the First Circuit on dressed up "enforcement" proceedings that are no more than legal actions in debt at common law that are moreover importantly federally regulated, involving clearly substantial *federal* interest and *federal* regulation and *federal* funding of Rhode Island's criminal obstruction administration of an Act of Congress (Title IV-A, Title IV-D etc.) in the First Circuit for <u>decades</u>, that the 2024 new evidence criminal obstruction document falsification procedures facially shows that the administrative procedures prescribed iteration has been in effect for fourteen years since January 2011, and another earlier iteration in effect in another legacy computer system prior to 2011.  The First Circuit's "abstention" of federal jurisdiction to review criminal corrupt administration of an Act of Congress has caused *substantial irreparable harm* to the United States and to support obligors, and irreparably harm the Appellant, and is prejudicial to the Appellant; this issue is ripe for Article III review.  See S.*E.C. vs Jarkesy*, 603 U.S. __ (2024).  The First Circuit's failure to exercise jurisdiction

conferred upon it to judicially review the legality of the administrative

procedures of one of the largest state-federal work-together federal

programs, Title IV of the Social Security Act, that as it turns out has caused

*substantial irreparable harm* to the public, to the United States, and to the

Appellant, is ripe for Article III review.

(2)  The Appellant further moves for judicial notice under FRE 201(c)(2) of the

fact in record in the underlying district court case 23-cv-126, that Appellant

filed a Rule 62.1 Motion for Indicative Ruling on Plaintiff-Appellant's Rule

60(b) and 15(a) motions on September 5, 2024, ECF 63.  See ECF 63 that is

attached.  Appellant filed the same document in the district court entitled

"State Child Support Agencies with ***Debt*** Compromise Policies" ECF 64 –

making it clear before the district court in the record Congress enacted and

the Secretary of the U.S. Department of Health and Human Services's

statutory and regulatory texts show that "enforcement" of support and/or

interest is nothing more than dressed up legal actions in debt at common

law, in which the United States has a substantial, regulatory, and federal law

and regulation compliance audit interest, especially given federal public

funds funding the work-together Title IV administration scheme are only

eligible contingent on federal law and federal regulatory compliance.

Appellees have conspired and coordinated with their former political and

attorney William E. Smith in his *functus officio* unofficial capacity
committing *mispriscio clerico* that involved obstruction interference with
this official appellate judicial proceeding that includes criminal obstruction
*altering* and *falsifying* the record on appeal for the purpose of making this
Court falsely believe it lacked jurisdiction over Appeal no. 23-1978 –
whether that appeal is active, not consolidated or dismissed for "lack of
prosecution" (Appellant actions and filings show Appellant is actively
prosecuting but challenges the penalty attached to paying filing fees when it
is Appellant who has been irreparably harmed by the lower court's *federal
judiciary* obstruction in a pending official proceeding before *this* Court, an
issue that is preserved, and this Court's equitable obligation requires it
remedy to remedy the harm) is immaterial - because *this* Court's document
record conclusively shows Appellees and Smith have extraordinarily
succeeded in confusing this appellate Court since March 2024, in defrauding
the United States for decades, defrauding receiving state Sovereigns under
the Title IV scheme for decades, defrauding support obligors for decades,
and defrauding the Appellant, among others, and Appellant is *irreparably
harmed*. Appellant seeks to amend the Complaint with five Administrative
Procedure Act Claims: *see* ECF 63, 5 U.S.C. sec. 706 and this issue is ripe
for Article III review.   See *CORNER POST, INC. v. BOARD OF*

*GOVERNORS OF THE FEDERAL RESERVE SYSTEM*, (2024) (Slip Opinion); *Lopes Bright Enterprises v. Raimondo*, (2024) (Slip Opinion); *Trump v. U.S.*, 603 U.S. ___ (2024); *Ohio v EPA, et al*, (2024) (Slip Opinion); *Over Ruled, The Human Toll of Too Much Law*, Neil Gorsuch and Janie Nitze, Harper Collins Publishers (2024).

(3) Due to the superseding change in law, the law that the Court must apply to this matter since June 27, 2024 are *CORNER POST, INC. v. BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM*, (2024) (Slip Opinion); *Lopes Bright Enterprises v. Raimondo*, (2024) (Slip Opinion); *Trump v. U.S.*, 603 U.S. ___ (2024); *Ohio v EPA, et al*, (2024) (Slip Opinion) and *S.E.C. v. Jarkesy*, 603 U.S. ___ (2024) as the law applies to the seismic change in the facts in this matter. *Jarkesy* makes clear that Congressional statutory schemes like Title IV-D of the Social Security Act, are nothing but another one of the several "over ruled" State-federal work-together programs funded with federal public funds, "enforced" by nothing more than legal actions in debt at common law. The great administrative state is shown to resort to criminal obstruction alteration and fabrication of federal records "zeroing out interest" in both federal records transmitted to the Title IV Federal Central Registry and zeroing out interest in support orders. *Trump v. U.S.* 603 U.S.__ (2024) makes clear that proffering altered

or falsified court orders is a federal obstruction crime, irrespective of whether there is a pending proceeding – and similarly, altering and falsifying documents is a federal obstruction crime where the penalty is up to 20 years imprisonment irrespective of whether there is a pending proceeding. Where systemic criminal obstruction is concerned, nothing or nobody is "too big to fail" nor above the law, see the demise of Arthur Andersen and *Trump vs. U.S.*, 603 U.S. __ (2024). Similarly, Title IV-D in Rhode Island is not too big to fail – the smallest state Sovereign in the Republic having been allowed to continue its debt collection RICO scheme, destroyed the integrity of the accuracy of the federal Central Registry through its "zero out interest" scheme, which zeroed out interest are then "put back on the system" by both administrators and state judges alike. It destroys the basic legitimacy of government administration. Here before this Court is the evidence that the state family court "put interest back on the system without prejudice" indicating "interest was removed" previously, on its face suggesting record alteration relating to Rhode Island's usurious 12% compound interest that runs afoul of the only simple 3-6% permitted under 42 U.S.C. sec. 654(21)(A). The Rhode Island Attorney General himself proffered the evidence of record alteration itself, showing his and the Office's long standing criminal obstruction "enforcement" of Rhode Island's systemic and

systematic record alteration and falsification dressed-up as "legitimate" administration of Title IV.  The overly complex Title IV-D scheme whose statutory nature is distilled into nothing more than ordering support "obligation" debts that are "enforced" through legal actions in debt at common law, which debt is forgivable as per the "Debt Forgiveness Program" is fraught with unconstitutional seizures of properties in nothing more than debt collection.  Certainly, Jarkesy makes clear that even those accused of securities fraud by the S.E.C. who are characterized by the Court as "unpopular" are even more deserving of the constitutional protection afforded by the Seventh Amendment – certainly support obligors should not be less popular than those accused of securities fraud, and in fact support obligors are recognized as integral to society in promoting family relationships – see the critical "**foster better family relationships**" Clause that underlies the purpose of the "State Child Support Agencies with Debt Compromise Policies" document attached for FRE 201(c)(2) judicial notice. While Rhode Island is listed as one of the states that has such a program, the evidence shows it is nothing but another public lie – if it indeed has a "state debt forgiveness plan or policy," Rhode Island should not be at the same time clandestinely systemically and systematically continuing to criminally alter and falsify records "zeroing out interest" that it "puts back on the

system" to fraudulently lien properties – Rhode Island's RICO liability is extensive and broad and if unchecked, irreparably destroys the legitimacy of the government, that in this matter, has adversely affected the legitimacy of the federal judiciary in the First Circuit through similar *functus officio misprisio clerico* in his unofficial capacity by William E. Smith altering the record on appeal to falsely make it look like the Court lacked jurisdiction over Appeal 23-1978, for the explicit purpose of functus officio interference of a pending appeal that he dressed up as "in aid of the court," violating 18 U.S.C. sec. 1503, 1512(c)(2), among others, not once, but at least FIVE times, that aims to aid and abet his former client Appellees to continue its RICO debt collection.  It is now obvious William E. Smith knew and should have known he has no standing, no authority, nor any official capacity under the law to interfere or influence the appellate court adjudication in a pending official appellate proceeding dressed up as "aid the court" during the pendency of an appeal, especially as it involves his purposeful alteration of the appeal record to alter the filing dates of pre-appeal filed motions that were disposed of and no longer pending at the time of filing of the notice of appeal on November 17, 2023.  As a result, Appellant is egregiously prejudiced and has suffered egregious irreparable harm by the federal judiciary in the district for Rhode Island in the First Circuit.

WHEREFORE, pursuant to the invocation of FRE 201, the Inherent

Authority of the Court Pursuant to Supervening Change of Facts and Change

in Law, 28 U.S.C. § 2106 and Fed. R. App. P. 27, and specifically under

FRE 201(c)(2), the Court <u>must</u> take judicial notice of adjudicative facts,

documents of which the Appellant attaches hereto.  Appellant requests all

remedy and relief deemed just under the law.

Respectfully submitted,

Mary Seguin

/s/    *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: September 6, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motions were served via the Court's ECF

filing system on September 6, 2024, on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

/s/    *Mary Seguin*
Mary Seguin
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

🇺🇸 An official website of the United States government   Here's how you know

# State Child Support Agencies with Debt Compromise Policies

Listen

**Publication Date:** June 2, 2023 **Current as of:** June 2, 2023

OCSS found that at least 36 states and the District of Columbia have debt compromise options available to noncustodial parents.  Although the approach varies from state to state, each has the same goal to encourage consistent payments and foster better family relationships.

Please check with the state in which you have your child support order for additional information. **See our map for contact information for each state**.

## Alabama

An interest rebate law allows for forgiveness of interest owed to the state and custodial parent (if the custodial parent agrees), in cases where current support is paid consistently for at least 12 months.

Source: **Code of Alabama §30-3-6.1** ⧉

**Back to top**

## Alaska

The state offers debt forgiveness for noncustodial parents who have accrued at least $1,500 in state-owed child support arrears and meets other eligibility criteria. If the parent complies with the arrears forgiveness agreement, state-owed debt will be forgiven in stages over a 6-year period.

Source: **15 AAC 125.650** ⧉

**Back to top**

## Arizona

The Division of Child Support Services (DCSS) Settlement Program assists noncustodial parents who may have a large arrears balance on their child support case. It provides an opportunity to pay off past-due balances.

If you are limited in your ability to pay, you may offer to settle your arrears balance by paying either a lump sum or by making monthly installments that can be accepted for up to three months.

To participate in the program:

1. Think about how much you would like to offer to settle the past due amount.
2. Stop by a local DCSS office or contact the DCSS Customer Service Center at 602-252-4045 or 1-800-882-4151, or email the DCSS Settlement Team at **dcsssettlement@azdes.gov** to submit your settlement offer.

Note: The state's role is not to advocate the amount of the settlement, but to facilitate whatever offer is appropriate for the state and the parties involved in the case. The DCSS cannot require a custodial parent to accept a settlement offer.

Source: **Arizona Parents who Pay Child Support** ⧉

**Back to top**

# Arkansas

Does not have a program.

**Back to top**

# California

The California Department of Child Support Services' Debt Reduction Program aims to increase support collected for families and resolve uncollectable debt that is owed to the state of California. The Debt Reduction Program allows for the acceptance of a partial-pay offer in exchange for compromising the remainder of permanently assigned arrears owed by a participant.

Source: **Child Support Reduction Program** ⧉

**Back to top**

# Colorado

County child support offices have the ability to offer arrears compromise for assigned child support arrears. It is up to the counties to determine if they want to implement an arrears compromise program

and, if so, what criteria they wish to use.

Source: State

Back to top

## Connecticut

Connecticut has implemented two arrears programs. The first one, the Arrears Adjustment Program, is designed to reduce state-owed debt as well as encourage the positive involvement of NCPs in the lives of their children and to pay current support. The second program, the Arrears Liquidation Program, is designed to liquidate state-owed arrears by allowing obligors to pay off arrears in a lump-sum payment at a discounted rate.

Source: **Regulations of Connecticut State Agencies §17b-179b-1 to §17b-179b-4** ⧉

Back to top

## Delaware

Does not have a program.

Back to top

## District of Columbia

The Fresh Start program allows for a portion of Temporary Assistance for Needy Families (TANF) arrears to be forgiven in return for successfully making consecutive timely payments on the current support obligation or making a lump sum payment towards arrears. The Child Support Services Division must invite noncustodial parents to participate in the program.

Qualifications are:

- At least $1,000 owed in TANF arrears
- No voluntary payment in at least 12 months
- Previous unsuccessful enforcement efforts
- Valid addresses for both parties
- Failure to pay support must not be due to bad faith
- Responding interstate cases are not eligible for the program

Source: **District of Columbia Fresh Start Program** ⧉

**Back to top**

# Florida

Does not have a program.

**Back to top**

# Georgia

A state statute gives the child support program the authority to waive, reduce, or negotiate the payment of state-owed arrears for administrative child support orders if it is determined that there is good cause for nonpayment or that enforcement would result in substantial and unreasonable hardship to the parent or parents responsible for the support. Courts have discretion in applying or waiving past-due interest owed on arrears.

Source: O.C.G.A. § 19-11-5, § 7-4-12.1; Ga. Comp. R. & Regs. r. 290-7-1-.20

**Back to top**

# Hawaii

Does not have a program.

**Back to top**

# Idaho

Does not have a program.

**Back to top**

# Illinois

Project Clean Slate provides opportunities for low-income noncustodial parents to apply for forgiveness of assigned arrears in exchange for making regular, ordered payments of current support to the custodial parent for six months. The noncustodial parent must have demonstrated that they were unable to pay the assigned support at the time it was owed due to unemployment, incarceration, or serious illness. The noncustodial parent must also meet low-income standards.

Source: **Clean Slate Program** ⧉ ; Illinois Public Aid Code §5/10-17.12; 89 Illinois Administrative Code Section 160.64.

Back to top

## Indiana

Does not have a program.

Back to top

## Iowa

The Promoting Opportunities for Parents Program assists parents in overcoming the barriers which interfere with fulfilling their obligations to their children. In order to encourage parent participation, Iowa's Child Support Recovery Unit may partner with community providers and resources and offer incentives. The incentives include satisfactions of arrears due to the state for payment of court-ordered child support.

Source: **Iowa CSRU Customer Handbook** ⧉

Back to top

## Kansas

The updated incentive program returned January 1, 2021, with an effective date of September 1, 2020. The focus of the updated incentive program is to work with payors to achieve stable employment. The primary incentive remains: a reduction of state-owed arrears only, with a lifetime maximum of $2500 and an additional incentive of $1000 for those payors who complete their GED or high school diploma. So, the lifetime maximum for those who obtain a GED is $3500.

There are three different categories in the incentives:
1) Career enhancement: Enables a payor to progress in their career, $2000 cap (HVAC certificate, barbershop or cosmetology license, forklift driver certificate, etc.)

2) Education: $1000 cap (GED or high school equivalent)

3) Personal enhancement: $500 cap (fatherhood or parenting class, finance class, addiction class, etc.)

The incentives are capped by their category. For example, the completion of an addiction class and a financial class will only result in one $500 incentive. Completion of both the HVAC and Welding certificate programs will only result in one $2000 incentive. In addition, if a payor has already received the maximum amount under prior versions of the incentive program, they will not receive additional incentives. If, however, a payor only received $500 previously, they could be eligible for additional incentives under this program.

Beginning January 1, 2021, all incentives program requests with their appropriate documentation (certificates of completion, attendance logs, etc.) must be sent to **DCF.CSSIncentives@ks.gov** for consideration and approval of credit.

Back to top

# Kentucky

Does not have a program.

Back to top

# Louisiana

Does not have a program.

Back to top

# Maine

Does not have a formal program. The state considers debt forgiveness on a case-by-case basis only for assigned arrears. Factors considered are:

- Ability to pay (present and future)
- Partial or continuing payments for current or partial debt
- Reduction in state owed arrears
- Potential case closure

Back to top

# Maryland

The Payment Incentive Program encourages the noncustodial parent to make consistent child support payments by:

- Reducing state-owed arrears by half if the noncustodial parent makes full child support payments for a year.
- Eliminating the balance owed if the noncustodial parent makes full child support payments for two years.

The noncustodial parent will receive credit for uninterrupted court-ordered payments made immediately prior to participation in the program. Consideration will be given for periods of unemployment due to

seasonal work and no-fault termination.

Source: **Maryland Payment Incentive Program** ⧉

Back to top

## Massachusetts

Massachusetts child support regulations allow for the settlement of interest, penalties, and arrears, as well as equitable adjustment of arrears. The Child Support Commissioner may waive all or a portion of the interest and penalties owed to the Commonwealth if the Commissioner determines such waiver is in the best interest of the Commonwealth and will maximize collection of current and past-due child support.

The Commissioner may also accept an offer in settlement that is less than the full amount of state-owed arrears, where there is serious doubt as to liability or collectability of such arrearages. The Commissioner may also equitably adjust the amount of child support arrearages owed to the Commonwealth when the obligor has no present or future ability to pay the full arrearages.

Source: **830 CMR 119.A.6.2** ⧉

Back to top

## Michigan

Several laws allow for adjustment of arrears and interest.

- In some cases, the Department of Human Services or its designee may use discretion to settle and compromise state-owed arrears (MCL 205.13).
- Other laws allow noncustodial parents who do not have the ability to pay the arrearage in full, presently, or in the near future to request a payment plan (for a minimum of 24 months). At the completion of the payment plan, the court may waive any remaining arrears owed to the state (MCL 552.605e).
- Additionally, noncustodial parents may request a payment plan as a means to have the surcharge (interest) waived or reduced if regular payments are made (MCL 552.603d).

Source: **MCL 205.13** ⧉ , **MCL 552.605e** ⧉ , **MCL 552.603d** ⧉

Back to top

## Minnesota

State statute gives the parties (including the public authority with assigned arrears) the authority to compromise unpaid support debts or arrearages owed by one party to another, whether or not docketed as a judgment.

Source: **Minn. Stat. §518A.62** ⧉

**Back to top**

# Mississippi

Does not have a program.

**Back to top**

# Missouri

Does not have a program.

**Back to top**

# Montana

Does not have a program.

**Back to top**

# Nebraska

Does not have a program.

**Back to top**

# Nevada

Nevada will only consider arrears-only cases where there is no money owed to the custodian. The noncustodial parent must apply and provide supporting documents. Each application is reviewed, and a recommendation is provided to the Administrator of the Division of Welfare and Support Services who has authority to forgive state debt.

Source: State

**Back to top**

## New Hampshire

The New Hampshire Division of Child Support Services does not have a formal debt compromise policy. Child support workers do have some discretion to negotiate agreements to secure current support that may include forgiveness of assistance debt owed to the state that accrued prior to the establishment of a child support order and which was based on imputed income. Any such agreement must be approved by the child support worker's supervisor. Check with the state for more information.

Source: State

**Back to top**

## New Jersey

Occasionally, the New Jersey Child Support Program will offer a time-limited match on payments made towards the child support case and credit the same amount towards the arrears balance owed to the state. The program is announced yearly and is based on availability of funds.

Source: **New Jersey Arrears Match Program** ⧉

**Back to top**

## New Mexico

New Mexico's Child Support Arrears Management Program, *Fresh Start,* supports the needs of today's modern family by reviewing cases to focus on right-sized court orders, resulting in more payments and less debt.  This program may provide an option for the noncustodial parent to reduce the amount of assigned arrears by providing a lumpsum payment or consistent monthly payments to the custodial parent. To be eligible, the noncustodial parent must have over $1,000 of state-owed arrears and meet other additional criteria outlined on the **Fresh Start Arrears Management Program** ⧉ .

Source: State

**Back to top**

## New York

New York State offers several debt compromise programs to noncustodial parents who owe the state. The program varies depending on the local district. Interested persons must confirm with the local district where their order was issued if the service is available.

- Arrears Cap: a limit on the amount of child support debt owed to the government.

- Arrears Credit Program: open to noncustodial parents who owe Department of Social Services child support arrears and do not have more than $3,000 in the bank or more than $5,000 in property.
- Parent Success Program: designed to help noncustodial parents by supporting their well-being and strengthening their ability to provide for their children by completing a substance-use treatment program.
- Pay It Off: a time-limited program that enables noncustodial parents to pay off NYC DSS child support debt twice as fast. See the website for more information about each program.

Source: **New York Debt Reduction** ⧉

Back to top

# North Carolina

To be eligible the obligor must:

- Owe a minimum of $15,000 in state-owed arrears
- Agree to make 24 consecutive monthly payments for current support and an amount toward arrears
- Comply with the agreement.

Source: **NC General Statute, Chapter 110, Section 135 (§ 110-135)** ⧉  (PDF)

Back to top

# North Dakota

North Dakota has three goals for its debt compromise program:

1. Motivate obligors to comply with long-term payment plan
2. Eliminate uncollectible debt
3. Facilitate case closure where appropriate

Compromise of assigned arrears is permitted if an offer is received for at least 95% of the outstanding arrears balance (after subtracting all negotiable interest) or 90% with IV-D Director approval.

Interest may be compromised when an obligor enters into a payment plan to avoid license suspension or other enforcement remedies or when an obligor has been making payments on a regular basis.

In both cases, interest is not charged while regular payments are made and, after one year of regular payments, any unpaid interest that had accrued before that date can be compromised.

Interest can also be considered uncollectible under certain circumstances. Some situations are pre-approved, such as an obligor is receiving Supplemental Security Income. In these cases, a worker may prevent interest from accruing on the case and can request an adjustment to the payment record for any unpaid interest that has already accrued.

In situations that are not pre-approved, the worker cannot suspend interest or have it waived as uncollectible without IV-D Director approval.

Source: State

Back to top

## Ohio

Permanently assigned arrears can be reduced if/ when the obligor satisfies all the terms and conditions of a waiver, installment plan compromise, lump sum compromise, or a family support program.

Source: **Ohio Administrative Code: Rule 5101:12-60-70** ⧉

Back to top

## Oklahoma

The state permits a waiver of some or all child support arrears with court approval, provided the parents mutually agree (or the state agrees when the debt is owed to the state).

Settlements of past support may include an agreement that the noncustodial parent make a lump-sum partial payment or a series of payments toward the total amount of past support.

Settlements also may include an agreement for the noncustodial parent to pay a specified number of current child support payments or in-kind payments in the future.

In addition, the state has established an amnesty program for accrued interest owed to the state. The state attorney in the local district must approve all settlements of state-owed interest.

Source: **43 O.S. §112 Oklahoma Administrative Code 340:25-5-140 56 O.S. §234** ⧉

Back to top

## Oregon

The Oregon Child Support Program/ Division of Child Support does not have a formal program, but forgiveness is used in appropriate situations. The program considers the family's best interest and may

satisfy all or any portion of child support arrears that are assigned to the State of Oregon or to any other jurisdiction if:

- The arrears are a substantial hardship to the paying parent
- A compromise will result in greater collections on the case; or
- The paying parent enters into an agreement with the program to enhance the parent's ability to pay or their relationship with the children for whom the parent owes arrears.

Source: **OAR Rule 137-055-6120** ↗

Back to top

## Pennsylvania

Per Pennsylvania Supreme Court Rule, any compromise of state-owed debt must be approved by the court.

Source: State

Back to top

## Rhode Island

The Office of Child Support Services has the discretion to compromise state-owed arrears.

Source: State

Back to top

## South Carolina

Does not have a program.

Back to top

## South Dakota

South Dakota Division of Child Support (DCS) does not have a formal debt compromise policy.

Child support workers do have some discretion to negotiate a lump sum settlement of 75% of state-owed arrears. If the parents agree to a lump sum settlement for arrears owed to the family, DCS has a forgiveness

of arrears form, which the parties can sign. The form is submitted to the court for approval. If the court approves the settlement, DCS will remove the arrears from the case.

Source: State

**Back to top**

## Tennessee

With the approval of the court, the parties have the right to compromise and settle child support arrears owed directly to the person owed support (family-owed arrears). State-owed debt cannot be forgiven.

Source: **Public Chapter 200, amending Tennessee Code Annotated, Section 36-5-101(f)** 🗗 (PDF)

**Back to top**

## Texas

The child support agency may establish and administer a payment incentive program to promote payment by noncustodial parents who are delinquent in satisfying child support arrearages assigned to the child support agency under Section 231.104(a).

The program must provide to a participating noncustodial parent a credit for every dollar amount paid on interest and arrearage balances during each month of the NCP's voluntary enrollment in the program.

Source: **Texas Family Code 231.124** 🗗

**Back to top**

## Utah

The Prisoner Forgiveness Program targets recently released prisoners and forgives state-owed arrears for those who are approved for the program and pay 12 consecutive months of current support plus a nominal amount toward arrears.

Utah also targets obligors in treatment programs and forgives state-owed arrears for those who are approved for the program and pay 12 consecutive months of current support and/or arrears.

Source: UT Admin. Code Rule R527-258

**Back to top**

## Vermont

The court may limit the child support debt, taking into consideration the criteria of 15 V.S.A. § 659.

Source: **33 VSA §3903** ⧉

**Back to top**

# Virginia

The Division of Child Support Enforcement's Temporary Assistance for Needy Families (TANF) Debt Compromise Program is available to parents who owe TANF debt under a Virginia court or administrative order.

The program is designed to encourage consistent child support payments by offering eligible parents a debt reduction in TANF debt. There are three tiers of participation based on your ability to pay. For more information on how much you may be eligible to save, call 800-468-8894 or visit your local district office.

Source: **State Child Support TANF Debt** ⧉

**Back to top**

# Washington

The Child Support Department may accept offers of compromise of disputed claims and may grant partial or total charge-off of support arrears owed to the state.

The state established an administrative dispute resolution process through its Child Support Conference Boards to hear parents' request to reduce the amount of arrears and make determinations based on the individual circumstances.

Source: **Rev. Code of Washington 74.20A.220** ⧉ , **Washington Admin. Code 388-14A-6400 through 388-14A-6415** ⧉

**Washington Child Support Conference Boards** ⧉  (PDF)

**Back to top**

# West Virginia

This program allows forgiveness of interest for obligors who pay off all arrears within 5 years/60 months. This is a voluntary program and requires all parties to voluntarily agree to forgive the interest.

Source: **West Virginia Code §48-1-302 (c)** ⧉

**Back to top**

## Wisconsin

Local child support agencies may forgive all or part of the state-owed arrears under a variety of circumstances, including when the obligor is unable to pay the arrearage based on income, earning capacity, and assets, or the obligor has a long-term disability.

Source: Child Support Bulletin # CSB 20-06

Back to top

## Wyoming

Does not have a program.

Back to top

## Puerto Rico

Does not have a program.

Back to top

## Virgin Islands

Does not have a program.

Back to top

## American Samoa

Does not have a program.

Back to top

## Commonwealth of the Northern Mariana Islands

Does not have a program.

Back to top

## Guam

Does not have a program.

**Back to top**

## Federated States of Micronesia

Does not have a program.

**Back to top**

## Republic of the Marshall Islands

Does not have a program.

**Back to top**

## Republic of Palau

Does not have a program.

**Back to top**

**Types:**
**Outreach Material**

**Audiences:**
**Parents** , **States**

 Gmail

**Mary Seguin <maryseguin22022@gmail.com>**

---

## Activity in Case 1:23-cv-00126-WES-PAS Seguin v. Rhode Island Department of Human Services et al Motion for Miscellaneous Relief

1 message

---

**cmecf@rid.uscourts.gov** <cmecf@rid.uscourts.gov>
To: cmecfnef@rid.uscourts.gov

Thu, Sep 5, 2024 at 3:48 PM

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Rhode Island

### Notice of Electronic Filing

The following transaction was entered on 9/5/2024 at 4:48 PM EDT and filed on 9/5/2024
**Case Name:**       Seguin v. Rhode Island Department of Human Services et al
**Case Number:**    1:23-cv-00126-WES-PAS
**Filer:**              Mary Seguin
**WARNING: CASE CLOSED on 10/19/2023**
**Document Number:** 63

**Docket Text:**
**MOTION for Rule 62.1 Indicative Motion on Plaintiff's Rule 60(b)(2) Motion based on New Evidence, Rule 60 (b)(3) Motion based on Fraud to Vacate the Final Judgment, Rule 60(b)(4) Motion to Vacate Void Post Appeal Orders, Rule 60(b)(6) Motion to Vacate, and Rule 15(a)(2) Motion filed by Mary Seguin. Responses due by 9/19/2024.** (Attachments: # (1) Email) (Gonzalez Gomez, Viviana)

**1:23-cv-00126-WES-PAS Notice has been electronically mailed to:**

Joanna M. Achille &nbsp &nbsp jachille@darroweverett.com

Marissa D. Pizana &nbsp &nbsp mpizana@riag.ri.gov, aclark@riag.ri.gov, jdagnenica@riag.ri.gov, kragosta@riag.ri.gov

Mary Seguin &nbsp &nbsp maryseguin22022@gmail.com

**1:23-cv-00126-WES-PAS Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096917572 [Date=9/5/2024] [FileNumber=1985943-0]
[470e4f593b1a853271aa4c0c9836122509a027163c297108f8b1b47ef10ca254c65a
1b8cf674f709dc32b2a2bb4c5076577eec328f1f0566e01e19ca79557dd8]]
**Document description:** Email
**Original filename:** n/a

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096917572 [Date=9/5/2024] [FileNumber=1985943-1]
[37866fa10087d113d2938388f9c8b8c105be5431e7b8c0dcebb08605d897a1ea7ecd
30d3ddd0d571c15eb992300950a6cca87f52b14a04ae8a52063b66637206]]

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.

Civil Action No. 1:23-cv-126-WES-PAS
U.S. Court of Appeals for the First Circuit Appeal No. 23-1967
Related Appeal No. 23-1851
Related Appeal No. 24-1451

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

*Defendants*

## RULE 62.1 INDICATIVE MOTION ON PLAINTIFF'S

## RULE 60(b)(2) Motion based on New Evidence

## AND

## RULE 60(b)(3) Motion based on Fraud to Vacate the Final Judgment

## AND

## RULE 60(b)(4) MOTION to Vacate Void Post Appeal Orders

## AND

## RULE 60(b)(6) MOTION to Vacate based on 28 U.S.C. § 655(a) Disqualification of William E. Smith for *Functus Officio* Pattern of *Mispricio Clericio* Obstruction Involving the Alteration and Falsification of the Record on Appeal Corruptly Influencing A Pending Official Appellate Proceeding, NECESSITATING DISQUALIFICATION and RE-ASSIGN

## AND

## RULE 15(a)(2) MOTION

## ORAL ARGUMENT REQUESTED

---

## STATE-SPONSORED ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS

### Unlawful Interstate Collection of Unlawful 12% Compound Interest Within the Title IV-D Legal Framework Involving Organized Felonious Obstruction of Justice Acts by Defendants, Obstruction of Justice and Misprision of Felony by Defendant Counsels, and

## I.    UNDISPUTED FACTS

State Title IV-D Administrator and private partner Defendants withheld from the Court, concealed from United States judges and federal authorities listed in 18 U.S.C. §§ 1503, 1512, and 4 *concealed* document evidence (Exhibit A) within their possession (and knowledge) that shows the decades-long and on-going official Rhode-Island State-prescribed administrative procedure that prescribes altering and falsifying federal Central Registry records and state court orders for the purpose of concealment by "zeroing out" Rhode Island's unlawful usurious 12% compound interest in interstate support cases, which on its face runs afoul of federal laws and regulations requiring the Rhode Island Title IV-D State Plan Administrator State Defendants to only charge interest (if any) between 3%-6% simple interest, per 42 U.S.C. § 654(21)(A).  The new evidence shows the corrupt scheme put in place (regarding altering and falsifying the interest records in the

State's new computer Title IV record system as of 2011 by the State Defendants Administrators of federal Title IV-A and Title IV-D of the Social Security Act) entails the coordination of all political subdivisions of the State of Rhode Island (*see* 42 U.S.C. § 654(1) requiring the State's Title IV-D administrative procedures in place to be in effect in *all* political subdivisions of the State), to order 12% compound interest through the complicit state family court, which the Title IV-D State Administrators (State Defendants) subsequently "zero out" in the 42 U.S.C. § 654(27) computer federal records when transmitting support records to the federal Central Registry (*see* federal regulation 45 CFR 303.2 and 45 CFR 303.7), including "modifying court orders" that contain Rhode Island's unlawful 12% compound interest. Federal regulation requires the State Title IV-D Administrator Defendants to certify records transmitted to the federal Central Registry within Title IV-D framework (see 45 CFR 303), which the State Title IV-D Administrator Defendants falsely certified to the accuracies of the interest "zeroed-out" support records and support court orders that the Defendants modified, aided in modifying and knew were modified. In interstate support cases under 42 U.S.C. § 666(14), the State Title IV-D Administrator Defendants moreover certify systematically and systemically to Receiving States, such as Texas, that there is no interest in the support cases, after falsifying the records and support orders "zeroing out" interest. In this matter, State Title IV-D Administrator Defendants' false certifications of

"zero interest" to the United States and to Texas occurred in 2018, 2019, 2020, 2021, 2022, 2023 and 2024, and is on-going, pursuant to the new evidenced Defendants' Title IV-D administrative procedures. New evidence shows that after the aforesaid 12% compound interest record is "zeroed out," Defendants represent to support obligor victims that interest was "waived" then fraudulently "put interest back on the system" and pursue debt collection activities and legal actions in debt at common law, including placing fraudulent liens on properties for the Defendants' "zeroed out" 12% compound interest against the support obligor victims, dressed up as "enforcement" under the Title IV-D legal framework in "Title IV" proceedings in constitutionally infirm forums, that moreover deprive the right to jury trial. The infirm state family court forum's domestic procedure does not even contain rules (*e.g.* domestic rule 38 of the state family court's rules and procedures is intentionally left blank as "reserved") preserving the right to jury trial – the deprivation of trial by jury in a thoroughly constitutionally infirm forum for Title IV-D proceedings is intentional, so that the Defendants' egregious systemic and systematic *criminal* "zeroing out" of Rhode Island's unlawful 12% compound interest in both Title IV federal records and modification of support orders has not been at issue in the annals of Rhode Island Supreme Court caselaw. To that end, the Judiciary Title IV-D State Administrator Defendants make sure to conceal, impair and otherwise obstruct the availability to the public and federal

auditors alike of state court records and state judge-created laws in the State's digital courts so as to obstruct and impair the availability and access to cases in which the systemic criminal federal record alteration "zeroing out of interest" issues are actually raised in cases in the state's digital courts. Finally, to ensure that judge-created laws relating to the unlawful 12% compound interest that is "zeroed out" is cleaned up so that the State Defendants' criminal systemic record alterations in Title IV proceedings are equally "erased from the record," the State Judiciary Defendants implemented and continuously operate digital courts that operate two separate electronic case management systems, one undisclosed and unnamed "legacy system" with its own separate set of court clerks called "clerks of Reciprocal" for the filings for State Title IV-D Administrator Defendants who "zero out interest" record alterations and falsifications that only the State and the judge can see, and another separate electronic case filing system for everyone else called Odyssey, purposefully failing to integrate the two case management systems, so that: (1) State Administrator Defendants' electronic filings (pursuing 12% compound interest) cannot be seen by anyone else other than the judge and the State Defenders; (2) State Administrator Defendants' electronic filings are not noticed to the opposing party who is predominantly pro se; (3) the clerks of the state family court are not able to see the State Administrator Defendants' filings nor can the Rhode Island's Virtual Clerk see their "legacy system" filings; (4)

despite objections filed by the opposing party to the State Administrator's proposed orders (that obscure the unlawful 12% compound interest and zeroing out interest facts purposefully in vague language in order to conceal it), the judge automatically signs and enters the State's proposed orders without a hearing, in violation of due process; (5) pro se litigants are denied electronic remote access to their own court case information; (6) the public, pro se litigants and federal auditors are denied remote access to court information of Rhode Island's digital courts, effectively denied access to, obstructed from access to Rhode Island judge-created laws, in violation of the First Amendment, the Due Process and Equal Protection and Privileges and Immunities Clauses, the Supremacy Clause, the Administrative Procedures Act, and the Government Edicts Doctrine – *see* Rhode Island Supreme Court promulgated and enforced Rule 5 Denying Remote Access to Court Information to the public, pro se litigants and Federal Auditors – see new evidence Exhibit A showing Rhode Island Supreme Court acknowledgement that Rule 5 "is a problem." More importantly, Defendants' acts carry federal criminal penalties, in violation of RICO (making false claims for debt), wire fraud, mail fraud, computer fraud, obstruction (*inter alia* 18 U.S.C. §§1512, 1503, 1516, 666). Plaintiff repeatedly raised these facts and issues of egregious criminality, to which neither Defendants nor Defendant counsel disputed, including the Rhode Island Attorney General, in the pending official federal proceeding Appeal 23-1967, nor

any explanatory justification whatsoever for systemically and systematically altering and falsifying federal Title IV records zeroing out Rhode Island's 12% compound interest for both federal central registry computer records and "modifying court orders zeroing out interest," then certifying there is no interest to both the United States and to receiving State Sovereigns.   Under the Administrative Procedures Act, State Defendants' criminal record falsification and alteration to conceal Rhode Island's unlawful 12% compound interest systemically and systematically altering court orders in the system to zero out interest in order to conceal it, falsely certifying to the altered records' accuracy then making claims for federal funds under Title IV-A and Title IV-D when the State is knowingly noncompliant with federal regulation are egregious, treasonous crimes.  Obvious to the Court and to *any objective observer* under 28 U.S.C. § 455(a), the integrity of federal records for one of the largest State-Federal work-together Programs is damaged, the legitimacy of the agency administration and political subdivision administration of an Act of Congress is grossly harmed, the United States is the recipient of false claims from Rhode Island, and the State Defendants systemically make false claims to support obligors within the federal Title IV-D legal framework.  Defendants caused gross *irreparable harm* to the Plaintiff, and the systemic nature of Defendants' corrupt egregiously criminal administration of an

Act of Congress is a matter of extraordinary public interest causing extraordinary irreparable public harm.  The aforesaid is at the state level.

At the federal level, the Plaintiff is moreover irreparably harmed by the federal judiciary in the district for Rhode Island, for similar pattern of criminal *misprisio clericio* record alteration, falsification, impairment and obstruction of the record on appeal during the pendency of Appeal No. 23-1967 by the *functus officio* William E. Smith and associating clerks of the court in the district court, in violation of 18 U.S.C. § § 1512(c)(2) and 1503.  Moreover, the Plaintiff has raised the facts and criminal issues of the record on appeal in this matter in the pending Appeal No. 23-1967 to United States judges – again, none of the Defendants-Appellees disputed. The undisputed facts of the record on appeal shows the follows:

(1) Emblazoned on the Federal Judiciary website for the district of Rhode Island is the undisputed biographical facts that U.S. District Court Judge William E. Smith has had unusually intimate multi-prong and multi-layered personal, professional **attorney-client relationship**s with *numerous* state (inter alia Office of the Governor and Office of the Treasury) and municipal political subdivisions of the State of Rhode Island, and loyal political relationships with the Rhode Island government judicial and executive Appellees, who implemented the 2024 newly evidenced systemic and systematic *criminal* document alteration

of Title IV of the Social Security Act _federal records_ procedures

approved and operating under former Rhode Island Governor Lincoln

Chafee in 2011 (systemic criminal computer record alteration procedures

evidenced in the 2024 new evidence shows it is effective from 2011 (start

of Chafee Governorship) to the present), for whom William Smith had

quit his Partnership at his former firm Edwards & Angell in order to run

Chafee's campaign full-time for the U.S. Senate in 2000; Chafee, after

successful election to the Senate, in turn rewarded Smith's personal and

political loyalty by nominating Smith to the federal judgeship that Smith

started twenty-two years ago in 2002.

(2) Earlier iterations (from 1996 to 2011) of the 2024 evidence showing

Rhode Island's systemic and systematic _criminal_ federal document

alteration procedures were implemented by and in effect in _all_ political

subdivisions of Rhode Island (including counties, cities, towns, villages)

under the Rhode Island State Plan pursuant to 42 U.S.C. § 654(1).

Chafee served as the mayor of W. Warwick at the time of the seismic

1996 Congressional Amendments to Part D of Title IV of the Social

Security Act, and the Rhode Island _criminal_ federal document alteration

procedures were in effect in W. Warwick, a political subdivision of

Rhode Island, as early as 1996, zeroing out Rhode Island's 12%

compound interest systemically and systematically electronically and manually.

(3) Smith had complex and in-depth attorney-client relationships with political subdivisions of Rhode Island at multiple levels, e.g., towns, cities, counties, state judiciary, state attorney-general, state secretary, state treasury, state governor and executive subdivisions, to a well-known *personal* attorney-client relationship fact in Rhode Island with Lincoln Chafee from 1996 to 2002. This fact is so well known that the ***Federal Judiciary Website*** itself credits Smith with building Edward & Angell's Public Law Practice based on Smith's person, professional and political attorney-client relationships with the judiciary and executive Appellees, in part through his personal relationship with Chafee. Smith knew and or should have known the 2024 new evidence of Rhode Island systemic alteration of federal records for the purpose of making false claims to the United States for federal public funds of billions of dollars, and making false claims to support obligors for tens of millions of dollars within the reach of the Title IV legal framework.

(4) Before the Notice of Appeal was filed on November 17, 2024 (ECF 32), Smith interfered three times with the docketing of Appellant's filed papers on November 16, 2024 and November 17, 2024, in a pending

judicial proceeding at the federal district court in the district of Rhode Island in violation of Federal Rules of Civil Procedure 79, and federal *criminal* laws 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, among others, such as *misprisio clerici.*

(5) There were no pending motions before the docketing of the Notice of Appeal (ECF 32) on November 17, 2023 – this critical fact is now undisputable: The Court Order dated May 24, 2024 in Appeal No. 23-1967 **Document: 00118148678** found the Court has jurisdiction over Appeal No. 23-1978 after reviewing Appellant's court-ordered Show Cause, which is only legally possible if there were no pending motions at the time of notice of appeal filing on November 17, 2023 (ECF 32).

(6) Moreover, the district court clerk had certified there were no pending motions on November 17, 2023 (ECF 33, 33-1) – this critical fact is also undisputable:  The Court Order dated May 24, 2024 in Appeal No. 23-1967 **Document: 00118148678** found the Court has jurisdiction over Appeal No. 23-1978 after reviewing Appellant's court-ordered Show Cause.

(7) Three days post appeal (23-1967), on November 20, 2023, the *functus officio misprisio clerici* district court judge William E. Smith, whose personal, political and professional attorney-client relationship with the

executive and judicial Appellees are at issue on appeal (and the subsequent 2024 new evidence shows Smith knew or should have known of the systemic Rhode Island falsification of federal Title IV official records in the federal Central Registry), in his *unofficial capacity* schemed to alter the record on appeal. Issuing a void, *functus officio* directive dressed up as "an order," William E. Smith instructed the district court clerks in Rhode Island to alter the district court docket and the record on appeal, that purposefully *falsified* the record on appeal to make it look like there were pending motions on November 17, 2023. Therefore, while the federal Appeal 23-1967 was pending, Smith and the district court clerks knowingly falsified the federal record on appeal by post-appeal docketing three motions under the date November 17, 2023, to corruptly fabricate a false appellate record aimed to confuse this Court to falsely believe there were pending motions on November 17, 2023 this Court lacked jurisdiction over properly filed appeal no. 23-1978 that precisely appealed the district court's void November 20, 2023 text order and the subsequent resulting falsification and alteration of the original record on appeal, docketing on November 20, 2023 three motions under the November 17, 2023 docket entry date for the purpose of falsely making it look like there were pending motions on November 17, 2023,

for the purpose of corruptly influencing this Court into believing it lacked jurisdiction over properly filed appeal No. 23-1978 (that appealed the validity of William Smith's post-appeal *functus officio* November 20, 2023 order). The knowing functus officio actions by William E. Smith and persons in the district court altering the record on appeal for the purpose of corruptly influencing and interfering with a pending federal official proceeding in their unofficial capacities, trigger 18 U.S.C. § 1512(c)(2) and § 1503, and *misprisio clerici* among others.

(8) William E. Smith's former clients, the Rhode Island government judiciary and executive Appellees, in coordination with Smith, knowingly and purposefully filed dressed up "objections" in the district court while Appeal No. 23-1967 was pending, in coordination with the functus officio district court transmitting altered and falsified record on appeal with the purpose of interfering with the pending No. 23-1967 and 23-1978, moreover triggered 18 U.S.C. § 1512(c)(2) and § 1503 and among others, *misprisio clerici*.

(9) On February 1, 2024, William Smith in his functus officio *misprisio clerici* unofficial capacity issued a void "order" dressed up as "in aid of the court" to interfere with the pending appeals 23-1967 and 23-1978.

(10)   This appellate Court fell for the *functus officio* William E. Smith's and the Rhode Island judiciary and executive Appellees' *criminal misprisio clerici* ruse.  Three days prior to the due date of the opening brief, this Court vacated its original briefing schedule on the late afternoon of a Friday, on March 1, 2024, with explicit instructions to the Appellant to file a motion for extension of time under FRAP 4 or amend the complaint in Appeal no. 23-1967.

(11)   Appeal No. 24-1313 arises from the district court's equally *functus officio misprisio clerici* VOID denials (dressed up as legitimate) of timely filed FRAP 4 motions for extensions of time, that this Court-instructed Appellant to file.

(12)   The *functus officio misprisio clerici* William E. Smith, in his unofficial capacity, persons in the district court in coordination with Smith, and William Smith's former clients, Rhode Island judiciary and executive Appellees, in coordination with Smith, knowingly altered and falsified the record on appeal, committed at common law *misprisio clerici*, and collectively interfered with Appeal No. 23-1967 and 23-1978, that <u>succeeded</u> in confusing this Court and succeeded in interfering with pending proceedings in this Court, which necessitated the filing of an

appeal of yet more *functus officio* VOID denial orders in March 2024, the resulting Appeal 24-1313.

(13)    The newly discovered evidence showing criminal systemic and systematic procedures altering and falsifying federal records by the Appellees and all political subdivisions under the State Plan federally regulated and federally funded under Part D of Title IV of the Social Security Act shows the motive behind the elaborate falsification and alteration of federal records of pending official proceedings in Appeals No. 23-1967 and 23-1978 by the *functus officio* William E. Smith, the Appellees with whom William E. Smith had intimate, extensive and broad multiple attorney-client relationships at multiple levels of political divisions and political subdivisions of the State of Rhode Island in which the systemic and systematic falsification of federal records procedures were in effect pursuant to federal regulation under 42 U.S.C. § 654(1), and *functus officio* persons employed by the district court for the district of Rhode Island, who ***all knew or should have known*** that making *functus officio* alterations to the record pursuant to a *functus officio* judge's void orders during the pendency of said appeals to falsely make it look like the appellate court lacked jurisdiction over a properly filed appeal corruptly interferes with the pending official appellate

proceedings.  The forensic misconduct implicates on its face *misprisio clerici* by officers of the federal court, whose misconduct this Court has ministerial supervision responsibility.

(14)   After this Court performed a forensic investigation of the record on appeal in the same underlying district court matter 23-cv-126 and determined that the Court has jurisdiction over Appeal 23-1978 because the forensic record investigation concluded there were no pending motions on November 17, 2023, the Court in effect determined forensic misconduct *misprisio clerici* by the *functus officio* William E. Smith who issued not one but FIVE *functus officio misprisio clerici* VOID orders post appeal, purposefully and corruptly dressed up as legitimate orders by falsifying the docket entry post-appeal on November 20, 2023 to make it look like there were pending motions at the time of the appeal of the final judgment on November 17, 2023.  The forensic investigation of the record performed by this Court shows as a matter of undisputed fact that the acts of William E. Smith, the Appellees with whom Smith had extensive attorney-client relationships, and persons at the district court triggered federal criminal 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, as well as *misprisio clerici* among others.

(15)   Pursuant to the performance of forensic investigation of the record on appeal, the Court of Appeals, at Plaintiff-Appellant's request, consolidated three appeals, 23-1967, 23-1978 and 24-1313.

(16)   These above extraordinary circumstances involve federal obstruction crimes by federal officers of the district court for the district of Rhode Island under *misprisio clerici* at common law.

(17)   Under these extraordinary circumstances that involve the commission of **==*misprisio clerici*== by *functus officio* persons of the federal judiciary in and officers of the lower district court for the district of Rhode Island**, this Court's <u>equitable obligations</u> and the Court's adherence to 28 U.S.C.  § 455(a) require the Court to disqualify William E. Smith, at the minimum, <u>whose actions caused</u> appeals No. 23-1978 and 24-1313, that had stemmed from injurious harm to Appellant caused by the ==*misprisio clerici*== *functus officio* <u>forensic misconduct</u> by William E. Smith.  The Court by law should apply the superseding *Fischer vs. U.S.*, 603 U.S. ___ (2024), *Trump vs. U.S.*, 603 U.S. ___ (2024), and *Lopes Bright Enterprises, Inc. vs. Raimondo* (2024)(Slip Opinion).

Plaintiff hereby incorporates the Appellate Court's May 24, 2024 Order in **Appeal No. 23-1967 Document: 00118148678 as fully referenced herein**.

Plaintiff hereby incorporates the Appellate Court's filings Documents

**00118162842** and Document **00118178653** as fully alleged herein. The Court

must note and find as a matter of fact in the record on appeal in Appeal 23-1967

that Plaintiff-Appellant repeatedly made several filings of the above facts in the

pending Appeal 23-1967 for seven months from March 2024 to September 2024,

to which facts the Defendants from March 2024 to September 2024 ***do not dispute.***

The state government defendants as a matter and fundamental issue of government

legitimacy concern must dispute allegations challenging the legitimacy and legality

of its actions that violate federal criminal laws in our democratic government

system. The Title IV-D Administrator Defendants never disputed any of the above

aforesaid facts. The aforesaid facts are **undisputed facts**. William E. Smith's

extensive, broad and political attorney-client relationship makes it clear to the 28

U.S.C. § 455(a) objective observer that Smith knew or should have known about

the systemic and systematic criminal alteration and falsification of federal Title IV-

D records effective in ALL political subdivisions of Rhode Island under 42 U.S.C.

§ 654(1)with whom Smith had intimate, broad, in depth political and personal and

***attorney-client relationships*** in one of the largest state-federal work-together

programs in the counry.

    In light of this newly discovered withheld and concealed evidence, Plaintiff

respectfully requests that the Court indicate to the First Circuit that it would grant

Plaintiffs' Rule 60(b) and 15(a)(2) Motions.

Had Defendants, who are not just officers of the federal Court but are also

public officers in the First Circuit under *United States v.  §ballo-Rodriguez*, 480

F.3d 62 (1st Cir. 2007) (who are also referenced as  public officers in Section 1503

and Section 1512) that applies to *any and all **public federal** and state officials*

throughout the First Circuit as required by federal law, and when required by this

Court nearly a year ago, Plaintiff would have sought leave to bring five

Administrative Procedure Act ("APA") claims, *i.e.*, that State Defendant Agency

Rhode Island Department of Human Service's November 29, 2022, decision (1) is

per se arbitrary and capricious; and (2) resulted from improper criminal influence

by the Office of the Child Support Services and for reasons that Congress did not

intend him to consider; Defendants' "zeroing out interest" of Title IV-D records

then put the zeroed out and State falsely certified "no-interest" back on the system

are criminal obstruction; Defendants' Rule 5 concealment, impairment of

availability of court information records showing the State's systemic and

systematic zeroing out of interest from federal auditors are criminal obstruction;

denials of access to administrative procedures relating to the State's making claims

for all Title IV federal Public Funds related to the zeroed out interest records that

are criminal obstruction. **5 U.S.C. § 706**; *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*

*State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)

Plaintiff has now presented new evidence that "raises a substantial issue," the relevance of which Plaintiff and this Court should at least be allowed to explore. Fed. R. Civ. P. 62.1. Plaintiff has otherwise "made [a] showing that defendants' actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." **5 U.S.C. § 706.** This Court should not countenance Defendants' now transparent criminal dereliction of agencies' duties—especially Title IV-D administrators' statutory and regulatory obligation to furnish this Court the whole record. **5 U.S.C. § 706**.

## II.   The Omitted New Evidence Reveal Defendants' and Smith's Scheme To Help Operate A 'Racket' Under RICO.

The aforesaid makes clear that Defendants' and William E. Smith's scheme help operate a "racket" under RICO and operating false claims that involves document obstruction under 18 U.S.C. § 1512(c)(2) and 1503, including *mispisio clerico*.

## III.  Defendants Withheld The Systemic and Systematic Title IV-D Administrative Procedures Prescribing "Zero Out Interest" Federal Record Alteration and Falsification Evidence Despite Plaintiffs' APRA-FOIA Request.

The Defendant State Administrators of Title IV-D withheld the federal record alteration and falsification Title IV-D administrative procedures prescribing zeroing out to conceal Rhode Island's unlawful 12% compound interest despite Plaintiff's APRA-FOIA request. The Defendant's administration of Title IV-D

involves falsifying federal Title IV-D records in the federal Central Registry that is regulated by federal law and regulations and the Defendants' administration is funded by federal public funds contingent upon compliance with federal laws and regulations, which Defendants purposefully schemed to violate, conceal and aimed to operate a RICO debt collecting enterprise, funded by federal public funds. It is utterly outrageous and goes towards the legitimacy of the government that commits systemic fraud and obstruction with each count punishable by 20 years imprisonment.

## IV. FEDERAL OBSTRUCTION OF JUSTICE CONSTRUCTION STATUTES RELATING TO DOCUMENTS IS <u>BROAD</u>

1. The undisputed fact remains that Smith, persons in the district court and the Appellees altered the record on appeal in part to make it look like the Court lacked jurisdiction over Appeal 23-1978 and subsequent post-appeal void orders, succeeded in confusing this Court, the Court had to perform a forensic investigation of the record, found forensic alteration implicating *functus officio misprisio clerici* forensic misconduct by officers of the district court, and that it turns out in part was calculated to conceal a more egregious systemic document alteration and falsification crime by the State Appellees, with whom William E. Smith had extensive and broad attorney-client relationships, and who knew and should have known about the systemic federal record falsification implicating false

claims involving billions of federal public funds, showing Smith's commission of egregious *misprisio clerici* with broad implications affecting the legitimacy of the judiciary and the corrupt administration of the federal Title IV-A and Title IV-D programs.

2. Obstruction of justice as both a concept and a legal term of art has adorned the halls of Anglo-American justice in the context of professional misconduct for over four centuries. See *People ex. rel. Karlin v. Culkin*, 162 N.E. 487, 489-92 (N.Y. 1928) (Cardozo, C.J.) (tracing, with <u>derision</u>, the history of barristers and attorneys who have been charged with obstruction of justice back to the seventeenth century and making comparisons to contemporaneous prosecutions). In analyzing a case involving "practices obstructive or harmful to the administration of justice," Justice Cardozo considered the early instances of the attachment of culpability for such behavior, and that history underscores the importance of documentation in the judicial process dating to the 16th Century.' *Id.* at 490-91 (discussing the charge of *misprisio clerici*: the submission of writs without the required formalities).  The appearance of judicial propriety, equity, and fairness was the underlying rationale behind the charge, as the Court emphatically must apply <u>here</u>. "Our court is 'slandered and evil spoken of, our cares and labors made void and frustrate' by the 'negligence of clerks and ministers;' the client 'beginneth to think evil of us that are judges, to suspect our skill,' and to speak evil

of the law." *Id.* (quoting in part the Lord Chief Justice of the Common Pleas, Easter Term, 9 Eliz. 1567). The charge of obstruction of justice was carried into the Americas and retained its strongly negative normative overtone. *See* THE DECLARATION OF INDEPENDENCE para. 2, 10 (U.S. 1776), noted in *O'Malley v. Woodrough*, 307 U.S. 277, 284 (1939). The Declaration of Independence is illustrative: "The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States .... He has obstructed the Administration of Justice, by refusing his Assent to Laws for establishing Judiciary powers. ' *Id*. (emphasis added). In the twentieth century, federal obstruction of justice provisions expanded from Section 1503, the wellspring from which most of the obstruction of justice provisions arose, including section 1512. See *United States v. Poindexter,* 951 F.2d 359, 380-83 (D.C. Cir. 1991) (providing a detailed history of the development of federal obstruction of justice statutes including §§ 1503, 1505, and 1512). Sections 1503 and 1512 have been broadly construed to proscribe actions beyond those enumerated in their provisions. *See* Michael E. Tigar, *Crime Talk, Rights Talk, and Double-Talk*: *Thoughts on Reading the Encyclopedia of Crime and Justice*, 65 TEX. L. REV. 101, 111 n.72 (1986). Section 1512 was thought to "significantly broaden" the reach of Section 1503, even while 1503 was being read to reach outside its specifically enumerated scope.

Tigar, *supra* note 33, at 111 n.72. Modern readings of the statutes texts "corrupt"

intent require only that the act in question have the reasonably foreseeable effect of

obstructing a proceeding, regardless of the defendant's actual intent. *See* Jeffrey R.

Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV.

1090-91 (2001). The prosecutorial inquiry is not, therefore, the presence of intent

to obstruct the proceeding per se, but rather the presence of intent to commit an act

that could reasonably be foreseen to have that effect. *Id*. Already having had to

apply the necessary prosecutorial inquiry itself during the Appellate Court's own

performance of forensic investigation of the appellate record in order to determine

that Appeal 23-1978 could proceed, the Appellate Court already answered in the

affirmative the "presence of intent to commit an act that could reasonably be

foreseen to have that effect" – the act did in fact confuse the Appellate Court, did

in fact mislead the Appellate Court into falsely believing initially that the

Appellate Court lacked jurisdiction over 23-1978 after William E. Smith and

officers of the court in the district court altered and falsified the appellate record

post-appeal (on November 20, 2023) to falsely make it look like there were

pending motions when the notice of appeal was filed for appeal no. 23-1967 (ECF

32 filed on November 17, 2023). (Successfully) Misleading the Appellate Court

through record alteration into falsely believing the Appellate Court lacks threshold

jurisdiction over a properly filed notice of appeal (23-1978) is a <u>fundamental material</u> corruption of the record on appeal.

3. Moreover, under construction of Section 1503, to be "corrupt" an act must only have the natural and probable effect of interfering with an official proceeding. Both natural and probable effect of interfering with this pending official proceeding occurred here.  See *United States v. Aguilar*, 515 U.S. 593, 598-601 (1995).  In *United States v. Aguilar*, a federal judge was convicted of both illegally disclosing a wiretap and obstruction of justice.  Section 1512(c)(1) states, "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2) states, "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

4. The Supreme Court in *Fischer vs. U.S.*, 603 U.S. ___ (2024) made clear that Section 1512(c)(2) "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so," relates to any official proceeding obstruction involving documents and records, that this Court must apply to the district court's acts in these consolidated matters.  The Court must independently review the facts of travel of the appellate record post appeal after the overturn of the *Chevron* deference (see *Lopes Bright Enterprise vs. Raimondo*, (2024) (Slip Opinion), with

no deference to the agency Defendant-Appellees who aided and abetted the criminal alteration of the record on appeal. *Trump vs. U.S.*, 603 U.S. ___ (2024) instructs the Court to review official and unofficial acts by public officials, that when applied here, must make the distinction among *functus officio* void acts of *mispriscio clericio* dressed up as valid judge-created law that on its face states "in aid of the court" showing intent to corruptly influence and interfere with the appellate judges in a pending official appellate proceeding when the *functus officio* William Smith lacked any authority, that the 2024 new evidence shows Smith's action is calculated to conceal, impair, impede the availability of egregiously incriminating evidence from coming to light showing systemic and systematic federal record falsification and alteration procedures that went on for decades in Rhode Island covered by 18 U.S.C. §1512(c)(1) and (2), each count up to 20 years imprisonment.

5. Under the Court's fundamental truth-finding and equitable obligations, these sets of extraordinary circumstances involving systematic and systemic obstruction with each count up to 20 years imprisonment warrants the Court to explore the "substantial issue."    Smith's obstruction act is not merely prejudicial to the Plaintiff-Appellant but compounds the officer *mispriscio clericio* injury rather than provide requisite truth-seeking and equitable obligation the Court by law is required to remedy.   The harm of any resulting error would be irreparable and

goes towards the legitimacy of the judiciary. Appellant hereby preserves the issues raised in this motion for Article III review by the U.S. Supreme Court and states on the record that the raised and preserved issues are ripe for Supreme Court review.

## V. LAW AND ARGUMENT

6. The Ninth Circuit Court of Appeals explains that "[t]he whole administrative record," as per 5 U.S.C. § 706, "'is not necessarily those documents that the agency has complied and submitted as 'the' administrative record.' 'The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position.'" *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original; citations omitted). The newly discovered evidence prescribing administrative procedures that systemically and systematically shows falsification and alteration of federal Title IV-D records as it relates to Rhode Island's unlawful 12% compound interest that prescribes "zeroing out" interest and altering support orders to zero out interest, purposefully on its face is intended to conceal the unlawful and 42 U.S.C. § 654(21)(A) noncompliant 12% compound interest Rhode Island Defendants seek to collect in actions in debt, triggering systemic (1) RICO liability, (2) false claims liability and (3) obstruction liability. The Supreme Court ==*Trump v. U.S.*==, 603 U.S.__(2024) made it crystal clear that alterations and falsification of court orders trigger 18 U.S.C. §

1512(c)(2), which is [precisely and textually what the new evidence prescribes to do, alter court orders to zero out the interest. The whole administrative record must now be brought before this Court.

### A. FED. R. CIV. P. 62.1 ALLOWS THIS COURT TO REMEDY DEFENDANTS' CRIMINAL MALFEASANCE.

7. "A party proffering newly discovered evidence may obtain an indicative ruling from a district court concerning relief from judgment pending appeal." *Franken v. Mukamal,* 449 F. App'x 776, 779 (11th Cir. 2011) (citing Fed. R. Civ. P. 62.1; Fed. R. App. P. 12.1); see also *Amarin Pharm. Ireland v. Food & Drug Admin*., 139 F. Supp. 3d 437, 447 (D.D.C. 2015) ("Where a district court concludes, for example, that newly discovered evidence warrants vacatur of a judgment that is already on appeal, the court can issue an indicative ruling . . . .").

8. Once an appeal is filed, the District Court no longer has jurisdiction to consider motions to vacate judgment. *Gould v. Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769, 772 (9th Cir.1986). However, the District Court may entertain and decide a motion after notice of appeal is filed if the movant adheres to Rule 62.1, which sets forth a process to "ask the district court whether it wishes to entertain the motion, or to grant it, and then move this court, if appropriate, for remand of the case." *Id*; see also *Crateo, Inc. v. Intermark, Inc.,* 536 F.2d 862, 869 (9th Cir. 1976) ("The most the District Court could do was to either indicate that it would 'entertain' such a

motion or indicate that it would grant such a motion."). If the District Court states that it would grant the motion or that the motion raises a "substantial issue," the movant must notify the Circuit Clerk and the District Court "may decide the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(b), (c); see also *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, No. 16- 04294, 2018 WL 2010980, at *4 (N.D. Cal. Apr. 30, 2018) (district courts "have authority to deny [a motion], but . . . may not grant it without a remand from the court of appeals").

### 1. Fed. R. Civ. P. 60(b) Relief From This Court's Judgment is Appropriate.

9. Usually, Rule 62.1 relief is sought under Rule 60(b). See *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) ("To seek Rule 60(b) relief during the pendency of an appeal, the proper procedure is to ask the district court whether it wishes to entertain the motion, or to grant it, and then move this court, if appropriate, for remand of the case."). As explained in *Hake v. Guardian Life Ins. Co.*: Rule 62.1 permits the Court to make an "indicative ruling" on a post-judgment motion to give the Court of Appeals an indication on how the Court would rule if it still had jurisdiction to rule. The Rule 62.1 "indicative ruling" procedure was instituted to deal with post-appeal Rule 60(b) motions, where a district court lacks jurisdiction to rule directly. No. 07-1712, 2010 WL 11578944, at *2 (D. Nev. Apr. 1, 2010) (citing Fed. R. Civ. P. 62.1 advisory committee's note). In *Comm. on Oversight &*

*Gov't Reform, United States House of Representatives v. Sessions* it was similarly

explained: Rule 62.1 provides that upon the timely filing of a motion for relief that

the court lacks authority to grant because of an appeal that has been docketed and

is pending, the court may: (1) defer considering the motion; (2) deny the motion; or

(3) state either that it would grant the motion if the court of appeals remands for

that purpose or that the motion raises a substantial issue. This rule is invoked in

situations where a court has lost jurisdiction over a case because it has been

docketed for appeal, and therefore cannot entertain motions such as those made

under Rule 60(b) for relief from judgment. Rule 62.1 allows a court to indicate to

the appeals court that it would grant the party's motion if remanded to the lower

court. 344 F. Supp. 3d 1, 7 (D.D.C. 2018) (quotation omitted).

## 2. Fed. R. Civ. P. 15(a)(2) Leave To Amend Is Also Appropriate.

10. While "Rule 62.1 codifies the procedure most courts used to address Rule

60(b) motions to vacate final judgments which had already been appealed . . . ,

nothing in Rule 62.1's language limits its application to Rule 60(b) motions or to

motions made after final judgment." *Ret. Bd. of Policemen's Annuity v. Bank of*

*New York Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013). The Advisory

Committee's note confirms that it "adopt[ed] for any motion that the district court

cannot grant because of a pending appeal the practice that most courts follow when

a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal."

Fed. R. Civ. P. 62.1 Advisory Committee's Note; see also *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden,* No. 11-0253, 2013 WL 1867067, at *3 (D. Idaho May 1, 2013) (issuing an indicative ruling under Rule 62.1 regarding a motion to add a party under Rule 21); *Reflex Media, Inc. v. Chan*, No. 16- 0795, 2017 WL 8223985, at *1 (C.D. Cal. Oct. 17, 2017) ("Rule 62.1 provisions were originally drafted as an addition to Rule 60, addressing only relief under Rule 60 pending appeal, but the proposal was broadened to include all circumstances in which a pending appeal ousts districtcourt authority to grant relief."). Thus, an indicative ruling is appropriate where, under any Rule of Federal Procedure, it would "allow for the timely resolution of motions which may further the appeal or obviate its necessity" and not simply "place a district court in a position where it must predict the outcome of an appeal of its own decision." *United States v. Brennan,* 385 F. Supp. 3d 205, 208 (W.D.N.Y. 2019) (quotation omitted); see e.g. *Rabang v. Kelly*, No. 17-088, 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018) (denying a Rule 62.1 motion that was "simply asking this Court to decide the question on appeal").

11. Plaintiff is requesting that this Court allow Plaintiff to assert five new claims, based on new evidence that was not—but should have been—available when Defendants made their filings in the district court.

## C. PLAINTIFF DESERVES BOTH FED. R. CIV. P. 60(B) AND 15(A)(2) RELIEF.

### 1. Plaintiff Deserves Leave To Plead Two New APA Claims By Amendment.

12. A motion to amend the complaint "can be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996); see also *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (same). Under Rule 60(b)(6), a judgment may be vacated for any "reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60(b)(6). The U.S. Supreme Court has held that a "motion to vacate the judgment in order to allow amendment of the complaint" constitutes such a justifying reason, so long as the movant meets the requirements of Rule 15(a). *Foman v. Davis,* 371 U.S. 178, 182 (1962). As the Foman rule was more recently articulated by the Fourth Circuit: "To determine whether vacatur is warranted . . . the court need not concern itself with either [Rule 59 or 60]'s legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). In other words, a court should evaluate a post judgment motion to amend the complaint under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quotation omitted).

13. Had the Defendants not withheld in both 2022 and 2023 the new 2024 evidence, Plaintiff (also — per 5 U.S.C. § 706) when the public officers Defendants originally produced documents pursuant to APRA in 2022, and in the district court as required by federal law based on their administration of Title IV-D, pursuant to Rule 11(b)(3), 18 U.S.C. § 4, 1503 and 1512(c)(2), the Plaintiff would have had the factual and legal basis required by Rule 11(b)(3) to seek leave to amend Plaintiff's Amended Complaint and add five new Administrative Procedure Act (APA) claims. Plaintiff now has the evidence Plaintiff needs to bring those five claims. Plaintiff was manifestly prejudiced by not being able to seek leave to plead those five new claims to the Court under Rule 15(a). None of the new claims would be futile. All claims are plausible, if not dispositive in favor of Plaintiff. Defendants, on the other hand, have demonstrated bad faith by not originally producing the federal record alteration and falsification evidence either as part of the administrative record in July 2023, or in response to Plaintiff's APRA-FOIA request for administrative procedures documents or in response to Plaintiff's APRA-FOIA request for administrative procedures documents on December 1, 2022.

## 2. Plaintiff Should Also Be Granted Rule 60(b)(2) Relief.

14. Rule 15(a) aside, Plaintiff is independently entitled to Rule 60(b)(2) relief under the "newly discovered evidence" rule. Fed. R. Civ. P. 60(b)(2). For the Court

to grant relief under this rule "the movant must show the evidence (1) existed at the time of the [judgment], (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir. 1990) (quotation omitted). Requirements (1) and (2) are easily met. There is no doubt that this evidence was discovered after the now-appealed judgment was issued.  There is no doubt that Plaintiff made several APRA-FOIA requests for administrative procedure documents to both the Department of Human Services and Rhode Island Judiciary Defendants in 2022 and 2023.  This evidence, particularly was of such magnitude that production of it earlier would have been likely to change the disposition of the case. Those new evidence show that in making systemic falsification of federal records to zero out interest in Title IV-D federal registry, federal interests are not only central to this case, but that Defendants are involved in systematic and systemic falsifying records in official proceedings systematic for the purpose of making false claims to both the United States and support obligors, in actions at debt at common law, and creating purposeful constitutional infirm Title IV proceeding forums to rig the process in a RICO scheme, that purposefully impair the availability of public Title IV-D actions in debt at common law proceeding records to federal auditors, pro se support obligors and to the public. This is not permitted under the APA. *Id*. at 43;

see also, e.g., *ATX, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1527 (D.C. Cir. 1994) ("The test is whether 'extraneous factors intruded into the calculus of consideration' of the individual decisionmaker.") (quoting *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs,* 714 F.2d 163, 170 (D.C. Cir. 1983)); *Saget v. Trump,* 375 F. Supp. 3d 280, 360 (E.D.N.Y. 2019) (finding an agency "decision was arbitrary and capricious due to improper political influence"); *Connecticut v. U.S. Dep't of the Interior,* 363 F. Supp. 3d 45, 65 (D.D.C. 2019) (APA claim where "significant political pressure was brought to bear on the issue and the Secretary may have improperly succumbed to such pressure"); *Tummino v. Torti,* 603 F. Supp. 2d 519, 544 (E.D.N.Y. 2009) ("An agency's consideration of some relevant factors does not immunize the decision; it would still be invalid if based in whole or in part on the pressures emanating from political actors.") (quotation omitted).  The new evidence would have easily produced a different result.  In addition, as noted above, had Plaintiff been in possession of the record falsification record, in particular, Plaintiff would have sought to amend Plaintiff's Complaint pursuant to Rule 15(a) to allege additional five APA claims, as alleged above already. See e.g. *Jianhong Zhai v. Ning Liu,* No. 16-7242, 2017 WL 7156251, at *2 (C.D. Cal. Aug. 17, 2017) (instructing plaintiffs to "file a motion to set aside the default judgment pursuant to Rule 60(b) in conjunction with a motion to

supplement the complaint pursuant to Rule 15(d)" in order to include new evidence in a pleading).

15. Plaintiff is moreover entitled to Rule 60(b)(3) relief for fraud, as the new evidence delineates in detail falsification of records for false claims in actions in debt at common law.

16. Plaintiff is further entitled to Rule 60(b)(4) relief to vacate all void orders issued post appeal after November 17, 2023 by William Smith, as outlined above.

17. Plaintiff is additionally entitled to Rule 60(b)(6) relief to vacate based on the extraordinary egregious gross irreparable harm to Plaintiff that has been outlined in detail above.

18. Based on the above, the Court must disqualify William E. Smith and re-assign to hear this motion.

19. The issues raised herein are hereby preserved on the record and is ripe for Article III review by the Supreme Court of the United States.

## VI. CONCLUSION

20. Plaintiff and this Court must be allowed to discover who and what actually caused to and to what extent, and how falsified Title IV-D records have been transmitted to the federal Central Registry, based on which how much federal

public funds has been knowingly falsely claimed to the United States to operate the

RICO scheme and to support obligors, and to the Plaintiff. Oral Argument is

Requested.

Respectfully submitted,

Mary Seguin
Pro Se
/s/         *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: September 5, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing motion has been filed on September 5, 2024 electronically transmitted to the Clerk of the Court who serves via the Court's ECF filing system, on all registered counsel of record.

Mary Seguin
Pro Se
/s/         *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63-8 Filed 09/05/24 Page 28 of 81 PageID #65855
2345

STATE OF RHODE ISLAND                    SUPREME COURT

MARY SEGUIN
    *Appellant*

VS.                                      C.A. NO. SU-2023-0278-A

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES *et al.*
    *Appellees*

## **APPELLANT'S MOTION FOR PRELIMINARY INJUNCTION**

Texas Appellant, MARY SEGUIN, proceeding self-represented ("pro se"),

respectfully moves the Court for a preliminary injunction to enjoin the Court, also

known as the Rhode Island Supreme Court, in its ministerial capacity as the Rhode

Island courts rules promulgator, administrator and digital court implementor to

immediately enjoin from enforcing (1) Rhode Island Supreme Court promulgated

and administered Rule 5 that denies remote access to judge-created laws and all

digital court information (except for the docket sheet) to the public, pro-se litigants

and federal agency or federal auditors in Rhode Island's digital courts; (2) enjoin

from enforcing and ministering grossly structurally defective digital courts that

operates TWO digital case management systems and TWO sets of court clerks,

effectively, TWO court systems within the court that forces pro-se and all other

court users to use Odyssey while executive administrative agencies, such as the

Appellee Department of Human Services, file through an unnamed LEGACY case

management system where agency filings are (a) only visible to themselves and the

judge, (b) are invisible to pro se litigants, the public and the Virtual Clerk in

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 69 Filed 09/05/24 Page 39 of 81 PageID #: 5855
2346

Odyssey, (c) are not digitally nor electronically noticed to the pro-se litigant, (d)
the agencies' filings are managed by a separate "reciprocal court clerks" that fail to
coordinate with the main court clerks who manage everyone else's filings through
Odyssey, (d) that result in agency proposed orders automatically entered and
signed by a judge even though objections are filed by defendants through Odyssey
without a hearing thereby unconstitutionally structurally prejudiced to advantage
Rhode Island's agencies in violation of *inter alia* Due Process and Equal
Protection Clauses; (3) enjoin Appellees and this Court's ministered Rhode Island
Family Court forum from structurally depriving defendants of United States
Constitutional Seventh Amend rights to trial by jury in civil actions at law and civil
actions in debt at common law (ordered support are debts (including debts signed
over to the State in welfare cases) with the federal Title IV legal framework in
Title IV proceedings – this Court's ministered Domestic Family Relations Rule 38
that traditionally provide for preserving the right for jury trial does not exist and is
"reserved"; (4) enjoin Appellees and this Court's ministered Rhode Island Family
Court forum from structurally depriving defendants of Rhode Island constitutional
right to jury under Section 15 right to jury trial shall be inviolate in civil actions at
law and civil action in debt at common law (ordered support are debts (including
debts signed over to the State in welfare cases) within the federal Title IV llegal
framework in Title IV proceedings.  Appellant is unconstitutionally denied access

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 670 Filed 09/05/24 Page 70 of 81 PageID #65855
2347

to judge-created laws in Rhode Island's digital courts and hereby reserves and
preserves Appellant's right to amend and supplement this motion with Rhode
Island judge-created laws created by the Superior Court judges, Family Court
judges, and Supreme Court judges that are unpublished and freely publicly
accessible on all issues raised herein. This State's constitution moreover
guarantees the right to justice and entitles the Appellant to the requested remedy
under Section 5 that guarantees Appellant the right to "obtain justice freely,
without purchase, completely and without denial, promptly and without delay,
comformably to the laws." This Court in its ministerial capacity promulgating and
administering the rules of the courts and the structures of the digital courts
purposefully and knowingly violate established principles of the Government
Edicts Doctrine, the First Amendment, Due Process and Equal Protection,
Privileges and Immunities Clauses, the Seventh Amendment, and the Supremacy
Clause, as well as this state's constitution guarantees in Section 5 and Section 15.
In support of this motion for preliminary injunction, Appellant incorporates all
motions files before this Court requesting access to judge-created laws and court
information in Rhode Island's digital courts, that have been acknowledged by this
Court as "a problem" and won't be resolved until the "end of the year," and
simultaneously denied immediate relief in violation of the First Amendment, Due
Process, Equal Protection, Privileges and Immunities Clauses and the Government

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Edicts Doctrine, violating constitutional guarantees for prompt remedy without delay and purchase, and contravening constitutional requirement to comform to the laws. The laws require this Court to minister the judicial branch's court architecture and basic structure to conform to the Laws and to the Constitution, not structurally rig proceedings to the advantage of agencies, such as the Appellees. Appellant has raised this fundamental structural issue in both lower courts (in superior court incorporating the Administrative Procedure Act over Title IV administration by Appellee, and in the family court incorporating compliance to Title IV in Title IV proceedings) to _no avail_, saying they can't do anything about it (denying remedy) and to go and ask the Rhode Island Supreme Court for remedy. Appellant hereby moves this Court now for the above requested remedy to enjoin the aforesaid structural bias promulgated, implemented and ministered by this Court – in other words, the lower courts point to THIS Court for unconstitutional structural bias causation - and preserves this Rhode Island Supreme Court fundamental _ministerial_ unconstitutional court structural bias for United States Supreme Court review – Appellant preserves the issue of structural bias and raises before the Court that it is ripe for Article III review. Appellant raises before the Court that the Court's ministered structural bias functions to CONCEAL _criminal_ agency administration of federal programs calculated to make false claims in constitutionally infirm forums that deny the fundamental right to jury trial in civil

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 72 Filed 09/05/24 Page 42 of 81 PageID #65855
2349

actions at common law, to wit the Appellees' criminal policy and procedure to

falsify interstate interest support records zeroing out Rhode Island's illegal 12%

compound interest disallowed by 42 U.S.C. sec. 654(21)(A) then electronically

transmits the falsified zeroed out interest support records to the Federal Central

Registry within the Title IV legal framework, while falsely certifying the falsified

support record and falsely transmitting a falsified zeroed out interest support order

to the Federal Central Registry and to the Receiving State, in this case, to Texas,

thus damaging and destroying the integrity of both the Federal Central Registry

records and the Receiving State (this case Texas) Registry records within the Title

IV legal framework – that encompassed the calculation to ultimately make false

claims to the United States Title IV federal program for funding in the attempt to

CONCEAL the 12% compound interest that facially contravenes 42 U.S.C. sec.

654(21)(A) for the purpose of receiving TANF and Title IV-D 66% funding that

the Appellee agency persons know(s) they are not eligible for when they falsify

records, zero out the unlawful 12% compound interest and "collect debt" in actions

in debt at common law in constitutionally infirm forums like this Court's

ministered family court that operates the illegal aforesaid structurally biased two

digital case management systems that further deprives access to court information

and judge-created laws to pro se litigants and the public, as well as deprive

defendants the right to jury trial in actions in debt at common law, and which the

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS  Document 73  Filed 09/05/24  Page 73 of 81 PageID #: 5855
2350

Appellee agencies knowingly scheme to <u>conceal</u> this penalty incurring scheme from federal auditor detection under 42 U.S.C. sec. 655.  This Court's ministering and enforcement of Rule 5 effectively functions to CONCEAL from and obstruct federal auditors access to judge-created law Title IV proceeding documents that involve documented evidence of the falsification of Title IV records by Appellees routinely zeroing out Rhode Island's unlawful 12% compound interest in Title IV interstate support cases, false certifications of Title IV compliance, routinely falsifying support orders with zeroed out interest, routinely transmitting falsified records to the Federal Central Registry and routinely transmitting falsified records to the receiving states' registry carrying false certifications of regulatory compliance within the Title IV legal framework.  As such, Appellant incorporates the Administrative Procedure Act that is triggered upon injury to the Appellant. This Access to Public Records Act action over the Appellees' interstate administration of the Title IV program incorporates by definition the Administrative Procedure Act.  The Appellant submitted the public records request to the Appellee agency on December 1, 2022, at which time there was no pending action initiated by the Appellees.  The Appellees' public records written denial on December 13, 2022 relied on alleged "unsegregable" reasons, not impending litigation.  The Appellee agency Chief Counsel Ms. Martinelli's written public records denial letter dated December 16, 2022 also relied on unsegregable reasons

not impending litigation, notifying Appellant in writing of Appellant's right to

appeal under the Access to Public Records Act.   Mr. Coleman's written claims in

this proceeding contravenes his boss Ms. Martinelli's written reasons for record

denial.  Either Mr. Coleman is lying on July 31, 2024 before this Court or his boss

Ms. Martinelli is lying, in writing, dated December 16, 2022.  Either way, the

Appellee is lying, in writing, before this Court and/or committing wire fraud

interstate to Texas lying about public record denials under both open records laws

and the Administrative Procedure Act governing Appellee administration

procedures of the federal Title IV program, that it turns out, involves routine

interstate criminal fraud, false claims, obstruction, and obstruction of federal

auditors.   This state's open government laws never differentiate textually between

Title IV records and other federal program records, conferring the family court

jurisdiction over public access to Title IV records – instead jurisdiction is

conferred to the Superior Court over ALL records access denial appeals

irrespective of program, agency or nature.  No litigation was pending at the time of

APRA request and Appellee counsel Ms. Martinelli never stated impending

litigation as a basis for denial on December 16, 2022, instead stating in writing

"unsegregable" as the reason.  The Superior Court structurally is required to review

the disputed records to make a determination, not defer to Appellee agency

opinions, which is controlled by new Supreme Court case law, ***Loper Bright***

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 3:23-cv-00120-WES-PAS  Document 637  Filed 09/05/24  Page 45 of 81 PageID #: 65855
2352

***Enterprise Inc. vs. Raimondo***, Slip opinion (2024) conclusively overturning the

Chevron deference.   In support of this motion, Appellant incorporates Appellant's

Rule 12A Statement, all of Appellant's filed motions to repeal Rule 5 and grant

access to judge-created laws, motion to stay, and the Court's orders to date in this

matter, as fully alleged and raised herein.  Moreover, Appellant states the follows:

## <u>New Controlling United States Supreme Court Case Law</u>

### <u>Overturn of the Chevron Deference</u>

1. This Court's ministering of the biased court structure rigged in favor of

   the Appellee agency, replete with family court structure operating the

   aforesaid said biased and illegal TWO digital case management systems

   that blinds the pro se litigant, fails to notice the pro se litigant and

   coupled with access denial to court information and judge-created laws

   effectively functions as this Court's deference to the agency on steroids,

   that implements and enforces and administers structural biased rigged in

   favor of the Appellee agency.  This Court's ministerial bias in gross

   deference to the Administrative State is ripe for United States Supreme

   Court review of this State's administration of federal Title IV that

   incorporates the Administrative Procedure Act over the subsequently

   enacted Title IV.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63-76 Filed 09/05/24 Page 46 of 81 PageID #: 5855
2353

2. ***Lopes Bright Enterprises Inc. vs. Raimondo*** (Slip Opinion) (2024)

   overturned the Chevron deference, and gives Article III courts

   independent review of all agency administrative actions of federal

   programs. This Court's ministerial administration of structurally biased

   state courts involving federal Title IV programs in favor of the agency

   that de facto functions to conceal from the public and support obligors

   and conceal from federal auditors court documents and otherwise

   records evidence relating to the Appellee agency's routine falsification

   of Title IV records zeroing out Rhode Island's unlawful 12% compound

   interest in interstate cases in order to make false claims is

   unconstitutional and Appellant is entitled under the Constitution to

   remedy upon injury. Appellant preserves the issue for United States

   Supreme Court review of Appellee and court structural ministering by

   this Court triggering 18 U.S.C. § 4 and incorporates 18 U.S.C. § 1512,

   18 U.S.C. § 666, 18 U.S.C. § 241, 18 U.S.C. § 1516.

3. ***Corner Post, Inc. v. Board of Governors of the Federal Reserve***

   ***System***, 603 U. S. _____ (2024) makes clear that Appellant is entitled to

   remedy upon injury by the aforesaid Court ministered structural defect

   and the Appellee's corrupt administration of a federal program,

   including covering up and denying access to Appellees' routine

falsification of interstate Title IV support records under the
Administrative Procedure Act  that requires disclosure of records.
Appellant is injured now and continues to seek denied remedy.
Appellant's entitlement to remedy upon injury is moreover guaranteed
by the Rhode Island constitution Section 5.  This issue of remedy denial
thus far is preserved for United States Supreme Court review.  Appellant
seeks remedy now that conform to the laws, that this Court
acknowledges "is a problem" but denies Appellant the requisite
immediate remedy to irreparable harms by the Court's ministerial acts.
Appellant is entitled to access Rhode Island's judge's created laws
relating to access to all Title IV public records, Appellee procedures
zeroing out interest, procedures falsifying and certifying zeroed out
interest in interstate Title IV support cases, and the procedures relating
to the transmission of falsified zeroed out interest records to the Federal
Central Registry and the receiving state that is moreover governed under
the Administrative Procedure Act.  This Court's ministerial court
information and judge-created laws access denial as it relates to what the
judges are up to in Rhode Island as it relates to agency administration of
federal programs requires immediate First Amendment injury remedial
access.  This issue is preserved for Article III review.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 78 Filed 09/05/24 Page 48 of 81 PageID #: 5855
2355

4. On June 28, 2024, the United States Supreme Court reinforced in

   ***Fischer v. U.S.***, 603 U. S. _____ (2024), that 18 U.S.C. § 1512(c)(1) and

   Section 1512(c)(2) cover criminal conduct altering, fabricating and

   falsifying U.S. Government Federal Central Registry computer records

   by the State Appellees and Appellee client Gero Meyersiek.  On page 9,

   the U.S. Supreme Court held "…subsection (c)(2) makes it a crime to

   impair the availability or integrity of records, documents, or objects used

   in an official proceeding in ways other than those specified in (c)(1). For

   example, it is possible to violate (c)(2) by creating false evidence—

   rather than altering incriminating evidence. See, e.g., *United States v.*

   *Reich*, 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.) (prosecution

   under subsection (c)(2) for transmitting a forged court order). Subsection

   (c)(2) also ensures that liability is still imposed for impairing the

   availability or integrity of other things used in an official proceeding

   beyond the "record[s], document[s], or other object[s]" enumerated in

   (c)(1), such as witness testimony or intangible information. See, e.g.,

   *United States v. Mintmire*, 507 F. 3d 1273, 1290 (CA11 2007)

   (prosecution under subsection (c)(2) based in part on the defendant's

   attempt to orchestrate a witness's grand jury testimony)." *Id.*  It is plain

   that the district court's description of "state enforcement" that

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Appellant's newly-discovered evidence proves fundamentally involves the *wholesale policy-prescribed* criminal alteration, fabrication and falsification of federal computer government records and State Appellees' false certification of federal law compliance that are calculated to make false claims to the United States for billions of dollars of federal funding Rhode Island is not eligible for, conceal from federal auditors Rhode Island's policy-prescibed wholesale criminal falsification of federal Central Registry support obligation records and conceal from federal auditors Rhode Island's false certification of federal law compliance, in violation of 18 U.S.C. § 1512(c)(1) and (c)(2), and to make false claims to interstate support obligors for unlawful interest debt and false claims for waived interest does not only go towards the issue of Younger Abstention, but show Appellant's reporting to the United States judges under 18 U.S.C. § 4 the State Appellees' and Appellee Gero Meyersiek's violate a slew of multiple federal criminal laws discussed by *Fischer v. U.S.*, 603 U. S. ____ (2024), such as 18 U.S.C. § 1516 (impairing or obstructing federal audit),  18 U.S.C. § 1503(a), for example, makes it a crime to "corruptly, or by threats or force, or by any threatening . . . communication, endeavor[] to influence, intimidate, or impede" any juror or court

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63-30 Filed 09/05/24 Page 50 of 81 PageID #: 5855
2357

officer"; "sub-sections (a)(2)(C), (b)(3), and **(d)(2) criminalize various means of preventing someone from ==giving a judge== or law enforcement officer ==information relating to the commission or possible commission of a federal offense==**.  And subsections (d)(3) and (4) make it a crime to harass someone and thereby dissuade them from arresting or prosecuting a person alleged to have committed a federal offense. ==***None of these crimes requires an "official proceeding***==." *Id.* (emphasis added).  "For a person to have violated (c)(2), "an official proceeding need not be pending or about to be instituted." §1512(f )(1). And interference with an arrest or with communications to authorities about federal offenses could very well obstruct the initiation of future official proceedings." *Id.* Applying the Supreme Court's rulings of obstruction acts in *Fischer* to this matter, the record in this matter shows State Appellees, counsel for State Appellees (a state official who knows, aids and abets in the furtherance of the State Policy to falsify federal records to impair their integrity that is calculated to aid and abet Rhode Island to make false claims to the United States for federal funds Rhode Island is not eligible for and to conceal the federal penalty-incurring criminal conduct under 42 U.S.C. § 655) and Appellee Title IV client Gero Meyersiek engaging in criminal activities discussed by the

Supreme Court in *Fischer*.   The Appellees by policy conceal Rhode

Island's unlawful 12% compound interest by removing it thereby

falsifying federal Central Registry records that impairs the records'

integrity.  After removing the interest that all users relying on the

integrity of the records rely on record truthfulness, the Appellees then

represent to the support obligor, the Appellant, that interest was waived.

After removing the interest from the record, State Appellees further

falsely certify to federal authorities and federal auditors that Rhode

Island is federal law compliant.  Then, the Appellees put back on the

*state* register the unlawful 12% compound interest, then fraudulently lien

Appellant's Texas properties.  The State Appellee John Langlois again

states in 2022 in Rhode Island's Title IV enforcement agency appeal

proceeding that Appellee Gero Meyersiek waived the interest.  See

attached Exhibit I Transcript of audio recording Appellant made in

Texas on October 5, 2022 of telephone call Appellant had with Appellee

John Langlois, Esq., Deputy Chief Counsel of the Appellee Office of

Child Support Services, and Debra DeStefano, Rhode Island Executive

Office of Health and Human Services Appeals Officer in a Title IV

enforcement agency appeal proceeding  in agency Appeal No. 22-2116

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

that occurred on October 5, 2022, at the Title IV-D enforcement Appeal

telephonic Hearing, pages 2-5:

"DeStefano: -- Mary. I know -- I know what you asked for. Let

11 me get to -- let me understand what John just said

12 before. So, John, you're saying there was a change

13 subsequent to her making a payment --

14 Langlois: Correct.

15 DeStefano: -- but before the Notice of Lien went out?

16 Langlois: Yes.

17 DeStefano: Okay. So --

18 Langlois: And can I -- can -- if I could just back up and

19 explain what happened. Okay?

20 DeStefano: Okay.

21 Seguin: This --

22 Langlois: This is -- 99 percent of this is a misunderstanding.

23 DeStefano: Okay.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 3:23-cv-00126-WES-PAS  Document 63  Filed 09/05/24  Page 83 of 81 PageID #65855
2360

24 Langlois: Okay?

25 Seguin: Including --

Page 3

1 Langlois: (Inaudible - 00:01:51)

2 Seguin: -- what's on the screenshot? Is that a

3 misunderstanding?

4 Langlois: Can -- can I speak without being shouted over?

5 Seguin: Well, I'm --

6 DeStefano: Mary, let --

7 Seguin: I'm sh- --

8 DeStefano: Let --

9 Seguin: I'm flabbergasted really.

10 DeStefano: Uh, Mary, you've got to let me --

11 Seguin: Sorry.

12 DeStefano: -- listen --

13 Seguin: Sorry.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

14 DeStefano: -- to what the agency is gonna --

15 Seguin: I appreciate that.

16 DeStefano: I mean, I know -- I only know that -- what's in

17 front of me and I don't know everything that has

18 happened in this case, but if -- if -- let me just

19 listen to the agency and see what they have to say for

20 --

21 Seguin: Sure.

22 DeStefano: Go ahead, John.

23 Langlois: What -- what happened in this case is when, uh --

24 Mary's representative, her attorney, called us in late

25 November 2021 and said there's a -- she wants her

Page 4

1 passport released. What does she have to do to

2 release her passport? They put her in touch with

3 Carla, who gave her the $104,000 number. Where that

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

4 number came from, was the department attorney

5 contacted the custodial parent, Mr. Miurski (ph) or,

6 uh, Mr. -- I can't pronounce her last name.

7 Meyersiek. So we contacted his attorney -- it wasn't

8 me, but it was someone in my office -- and said, "If

9 she's willing to make a $104,000 payment to pay off

10 the principal, would you agree to waive the $75,000" -

11 - I think it was $73,000 in arrears at that time? He

12 said yes. So Carla notified Mary that, if she paid

13 $104,000, it would be paid in full because he was

14 willing to waive the interest. That was just the

15 principal. What happened was, the day after Carla

16 spoke to Mary and told her to mail in the -- or to --

17 to wire the $104,000, the attorney for Mr., um,

18 Meyersiek contacted us again and said he changed his

19 mind, please put the interest back up on the system,

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

20 so we did. That's his money. The state is just

21 collecting for -- for this past child support that's

22 owed to him. If he wants the arrears, he has every

23 right to ask for it. So the number that was given to

24 her was correct on the day it was given to her. The

25 arrears for $104,000. Because when he was waiving the

Page 5

2   arrears, when he changed his mind the next day, we put

2 the arrear -- I mean, interest back up on the system."

Then, after that agency proceeding was dismissed, Appellant on December 1,

2022 requested the Title IV debt collection procedure  records in general

jurisdiction Superior Court under this state's open records act that incorporates the

federal Administrative Procedure Act.  After the Appellant initiated the open

records act record denial appeal in the Superior Court, the State Appellees initiated

a judicial proceeding in the limited jurisdiction state family court that utterly lacks

jurisdiction to put back on the federal computer system the unlawful 12%

compound interest that Rhode Island Office of Child Support Services removes

(and modifies the court order/falsified court order) from the Federal Central

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Registry computer system, by Rhode Island's official criminal State Policy and that Appellee nonwelfare client Gero Meyersiek waived – under Title IV and all applicable federal (preemption) law, the limited jurisdiction state family court lacks jurisdiction to oblige Rhode Island State Appellees and Appellee client Gero Meyersiek.  As the United States Supreme Court warns corrupt officials on July 1, 2024, "The President is not above the law." *Trump v. U.S*., 603 U. S. ____ (2024). Nobody is above the law, the United States Supreme Court warned, much less the Appellees in Rhode Island, whose conduct by conclusive evidence have been shown to be criminally corrupt falsifying federal records for the purpose of making false claims, and reveal a sense of being above the law for decades, in this matter alone, from 1996 to the present, and is on-going.   Similarly, the Court's ministerial acts described herein as it relates to ministering the structurally defective courts that favors the Appellee agency, conceals judge-created laws relating to the Appellee criminal administration of Title IV and deprives defenders' right to jury trial in actions in law and in debt at common law, are not above the law.  the state family court lacks jurisdiction to unlawfully establish 12% compound interest that violates the preemptive 42 U.S.C. § 654(21)(A), or establish the 12% compound interest retroactively that violates 42 U.S.C. § 666(9)(C), or enforce unlawful 12% compound interest that is by Rhode Island's State Policy always and "automatically" removed from the Federal Government

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 38 Filed 09/05/24 Page 88 of 81 PageID #65855
2365

Central Registry computer system records, including transmitting modified support orders (falsified court orders in violation of 18 U.S.C. § 1512(c)(2) see June 28, 2024 United States Supreme Court holding, ***Fischer v. U.S***., 603 U. S. ____ (2024), citing ***United States v. Reich***, 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.) (prosecution under subsection (c)(2) for trans mitting a forged court order). "Subsection (c)(2) also ensures that liability is still imposed for impairing the availability or integrity of other things used in an official proceeding be yond the "record[s], document[s], or other object[s]" enumerated in (c)(1), such as witness testimony or intangible information. See, e.g., ***United States v. Mintmire***, 507 F. 3d 1273, 1290 (CA11 2007) (prosecution under subsection (c)(2) based in part on the defendant's attempt to orchestrate a witness's grand jury testimony)") in order to conceal unlawful 12% compound interest from federal auditors (in violation of 18 U.S.C. § 1216, see *Fischer v. U.S., Id*.), the State Judiciary Appellees exercise the ministerial function of establishing "court rules" governing the digital courts the state judiciary implemented calculated to conceal from the public, from federal authorities, from pro-se litigants any and all judge-created laws (and the respective syllabi that show the State Appellee Department of Human Services and Office of Child Support routinely establishing and administering and enforcing unlawful 12% compound interest enabled in the state family court of limited jurisdiction that is by Rhode Island state policy criminally

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00120-WES-PAS Document 39 Filed 09/05/24 Page 59 of 81 PageID #65855
2366

removed from the Federal Central Registry, to which the Appellees transmit forged

falsified self-modified court orders and whenever certifications of federal law

compliance is performed) created by the state family court that lacks jurisdiction to

preempt Title IV of the Social Security Act.  *See*, ***Trump vs. U.S.***, 603 U. S. _____

(2024) (reinforcing and directing Special Prosecutor Jack Smith to apply *Fischer*

*vs. U.S.*, 603 U. S. _____ (2024); ***Fischer vs. U.S.***, 603 U. S. _____ (2024); ***LOPER***

***BRIGHT ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF***

***COMMERCE, ET AL***., No. 22-451 *Together with No. 22–1219, ***Relentless, Inc.,***

***et al. v. Department of Commerce***, et al.; ***Corner Post, Inc. v. Board of Governors***

***of the Federal Reserve System***, 603 U. S. _____ (2024)

> THIS COURT MINISTERS STRUCTURALLY
> CONSTITUTIONALLY INFIRM FORUMS THAT DEPRIVE THE
> SEVENTH AMENDMENT TRIAL BY JURY RIGHT AND R.I.
> CONSTITUTION SECTION 15 JURY TRIAL RIGHT IN DEBT
> ENFORCEMENT PROCEEDINGS THAT THE LIMITED
> JURISDICTION FAMILY COURT LACKS THE AUTHORITY TO
> CALL – APPELLANT MOVES TO ENJOIN APPELLEES AND THE
> COURT FROM MINISTERING FORUMS THAT DEPRIVE JURY
> TRIAL RIGHTS IN LEGAL ACTIONS IN DEBT AT COMMON LAW

5. the United States Supreme Court's June 28, 2024 ruling in ***S.E.C. v.***

   ***Jarkesy***, 603 U.S.___(2024), that upheld the defendant's right to a trial

   by jury, not just a judge as in the limited jurisdiction family court, in

   debt enforcement proceedings.  "Actions by the Government to recover

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 3:23-cv-00126-WES-PAS Document 63-90 Filed 09/05/24 Page 24 of 81 PageID #: 5855
2367

civil penalties under statutory provisions," we explained, "historically

ha[d] been viewed as [a] type of action in debt requiring trial by jury"

quoting *Tull v. U.S.*, 481 U.S., at 418-419 (1987).

6. When the state family court adjudicates, there are no juries. R.I.G.L. 8-

10-3 confers no authority to the limited jurisdiction state family court to

call juries. In these proceedings, the above-mentioned unconstitutional

structural defect already violates the due process mandate Congress

legislated in 42 U.S.C. § 666. The Fifth Circuit applied a two-part test

from *Granfinan ciera, S. A. v. Nordberg*, 492 U. S. 33 (1989), the panel

held that the agency's decision to adjudicate the matter in-house violated

Jarkesy's and Patriot28's Seventh Amendment right to a jury trial. 34 F.

4th, at 451. First, the panel determined that because these SEC antifraud

claims were "*akin to [a] traditional action[] in debt,*" a jury trial would

be required if this case were brought in an Article III court. Id., at 454;

see id., at 453–455. The Fifth Circuit panel concluded that case should

have been brought in federal court, where a *jury could have found the*

*facts*. Based on this Seventh Amendment violation, the panel vacated the

final order. *Id*., at 459. It also identified two further constitutional

problems. First, it determined that Congress had violated the non

delegation doctrine by authorizing the SEC, without adequate guidance,

to choose whether to litigate this action in an Article III court or to adjudicate the matter itself. See *id*., at 459–463. The panel also found that the insulation of the SEC ALJs from executive supervision with two layers of for-cause removal protections violated the separation of powers. See *id*., at 463–466.

7. Interest on overdue support claims are traditional actions in debt, and a jury trial would be required if this case were brought in an Article III court. The state family court is a constitutionally infirm forum for actions in debt that violate Seventh Amendment right and to Section 15 of the R.I. Constitution guarantee to jury trial at common law. This Court's ministering of Title IV proceedings for actions in debt at common law in constitutionally infirm forums that deprive the defendant of the Seventh Amendment right to jury trial and Section 15 of the R.I. constitution's right to jury trial at common law must moreover be immediately enjoined. The Appellees' knowing deception against support obligors in actions in debt at common law in constitutionally infirm forums like the family court that deprive defendants' right to jury trial at common law must moreover be immediately enjoined. *S.E.C. vs. Jarkesy*, 603 U.S.___(2024) is controlling, and Appellant preserves and reserves this issue (Appellant is denied access by this Court to review

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63-2 Filed 09/05/24 Page 62 of 81 PageID #: 5855
2369

R.I. judge created laws in all Rhode Island courts on the right of jury

trial and further reserves the right to supplement once access is granted

by the end of the year, per this Court's orders) that is ripe for United

States Supreme Court review.  A jury would have found the facts that

the Appellees actively sought to conceal, obstruct access to, and impair

access to documents relating to Appellee falsification of Title IV

records, zeroing out Rhode Island's unlawful 12% compound interest

that facially violate 42 U.S.C. sec. 654(21)(A) in order to make false

claims.  The Court's ministerial acts depriving Title IV support obligors

in Title IV proceedings that deprive the right to trial by jury to find all

triable facts de facto functions to aid and abet agency Appellees' making

false claims to support obligors and the United States.  A jury would

have found triable facts surrounding the Appellee agency removal or

zeroing out Rhode Island's 12% compound interest, then stating to

support obligors that the $0 interest showing resulting from the removal

means interest was waived, then clandestinely illegally put the interest

back on the system to make false claims.  This fraudulent alteration of

federal Title IV interest record by Appellees in constitutionally infirm

and grossly structurally defective lower state courts implemented and

ministered by the Rhode Island Supreme Court must be enjoined

immediately, must be remedied and is ripe for United States Supreme
Court review. The Court's ministerial acts and the Appellees moreover
violate Separation of Powers, so that the Court denies immediate remedy
that conform with the law under both the U.S. Constitution and R.I.
constitution. This Court's denial of remedy concerning federal interstate
programs that involve egregious criminal activity thus far is ripe for
Article III review.

8. Appellant incorporates this Court's four orders dated November 27,
2023, January 19, 2024, March 29, 2024 and June 7, 2024 and all
motions filed before this Court to date by reference as proof of
Appellant-raised and preserved but unremedied fundamental structural
defect issues prejudicing not just this appeal forum but all state lower
court structural defects implemented and ministered against the
Appellant that violate core tenets of law and order in our democratic
system, namely the Government Edicts Doctrine, the First Amendment,
the Seventh Amendment, Sections 1, 5, 15 of the R.I. constitution, Due
Process and Equal Protection, Privileges and Immunities Clauses and
Separation of Powers in this Court's ministered digital court structure
and purposely unlawfully designed architecture that shows conclusive
evidence of prejudice, bias, *concealment* with knowing, underlined and

purposeful violation of the Constitution, of the First Amendment, the

Due Process Clause, the Equal Protection Clause, and the Privileges and

Immunities Clauses, the Seventh Amendment, Separation of Powers, and

the Supremacy Clause.   Denied access to judge-created laws created in

Rhode Island, Appellant's Due Process is violated and Appellant is

unconstitutionally targeted as a class (the public and the pro se litigants

are denied access) – this evidently ministerial court policy that motivates

the Rule 5 denial is upheld by the very persons who sit in a judicial

capacity in this matter to continue to deny judge-created law access by

its latest June 6, 2024 order denying Appellant's application for access

in its entirety.   Because access denial to Rhode Island's judge-created

laws functions to *conceal* the law in Rhode Island relating to corrupt

administration of federal programs by the Appellees and conceal from

the public what the courts in Rhode Island are up to as they relate to the

continuing corrupt administration of the federal programs by the

Appellees, under the United States Supreme Court's established case

laws on public access to court information and judge-created laws, the

Court in its ministerial acts and the Appellees violate the core tenets of

our democracy: see,  *Richmond Newspapers v. Virginia*,  448 U.S. at

587–88 (1980) (emphasis added) "the First Amendment . . . has a

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

*structural* role to play in securing and fostering our republican system of self-government. Implicit in this *structural* role is not only 'the principle that debate on public issues should be uninhibited, robust, and wide-open,' but the antecedent assumption that valuable public debate—as well as other civic behavior—*must be informed*. The *structural* model links the First Amendment to that process of communication necessary for a democracy to survive, and thus entails solicitude not only for communication itself but also for the indispensable conditions of meaningful communication." The structure of this Court fails to comport with the fundamental tenets of our republican system of self-government and the Constitution, evidently by design and purposefully, and rejects Appellant's proper requests to timely comply with the Constitution under the First Amendment. As such, ***Appellant hereby reserves and preserves all rights to supplement Appellant's motion to enjoin until such time Appellant is granted remote access to judge-created laws created by Rhode Island judges.*** Since the Court acknowledges the problem and acknowledges proceeding is due process violative, Appellant concurrently filed separately a motion to stay pursuant to the Court's Order dated March 29, 2024 relating to this matter – however, the structural defects raised in this motion must be enjoined and

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00120-WES-PAS Document 96 Filed 09/05/24 Page 96 of 81 PageID #65855
2373

remedied without delay nor could they be held in abeyance, which are categorically ripe for review by Article III, the United States Supreme Court. *Jarkesy, Lopes Bright Enterprise Inc., Fischer,* and *Trump* show the United States Supreme Court places paramount priority reigning in the excesses of the [criminal] abuses of the Administrative State of government agency actions, as It should, that this matter shows the Administrative State engages in criminal schemes to harm the public, defraud the public and undermine core tenets and the rule of law of our democracy.

### Officials' Violation of the Law Is Treated As More Severe That Is Herein Preserved For Article III Review

9. Under 18 U.S.C. § 4, hinderance, concealment, suppression, affirmative neglect, or unjustified delay are "especially culpable for public officers, since they received a higher penalty for the crime than that received by ordinary citizens at common law." Mullis, *supra*. at 1113. The public officers specifically named in the Federal misprision statutory text with a duty to act upon the receipt of information are "judge(s) and civil authorities." The First Circuit federal appeals court equally applies the Federal misprision statute to state and local public officers, such as the Appellees and Mr. Coleman, and this Court's justices in their ministerial capacities ministering, promulgating, administering, implementing the

afore-described structurally defective and constitutionally infirm forums
targeting pro se litigants and concealing what the Appellees and the
judges in Rhode Island are up to, by denying access to court information
to the public and to Appellant regarding the judge-created laws
concerning the Appellees' corrupt administration of Title IV program
that involves routine falsification of federal support records zeroing out
interest and otherwise alterations of the Title IV records to make false
claims. *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir.
2007). The First Circuit in *Caraballo* further noted that the Supreme
Court also noted in *Branzburg v. Hayes,* 408 U.S. 665, 696 n. 36, 92
S.Ct. 2646, 33 L.Ed.2d 626 (1972), that some lower courts had construed
the statute to require both knowledge of a crime and an affirmative act of
concealment or participation, but that both the Supreme Court and the
First Circuit did not adopt that construction. Appellant preserves this
issue as it relates to this matter concerning Appellee conduct, Mr.
Coleman's conduct, and the Court's ministerial conduct, and the issue is
ripe for Article III review by the United States Supreme Court.
Moreover, the Plaintiff-Appellant raised the specter of Appellee
Misprision of felony committed before this Court on July 31, 2024
evidenced by the Appellee's 12A Counter Statement and Objection to

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Motion to Stay submitted by the Appellees through Mr. Coleman, an

agency Deputy Chief Counsel, a public officer. The First Circuit in

*Caraballo* (precedent) cited **United States v. Sessions**, Nos. 00-1756, 00-

1791, 2000 WL 1456903 (8th Cir. Oct.2, 2000) (unpublished decision),

holding that the misprision statute was satisfied where the individual

"gave incomplete information regarding his knowledge of the [crime],"

at least where he "gave the police partial information that was

misleading." Id. at *1, 2000 WL 1456903. If the statute is geared toward

avoiding the misleading of authorities, *Ciambrone*, 750 F.2d at 1418, it

is still possible, in concept and in fact, that even a truthful but partial

disclosure could conceal by misleading the government through the

withholding of key information, specifically in footnote 10 that "it is

commonly accepted in other areas of law. The specific cases the First

Circuit Court cited and relied on are all in the form of omitted facts in

filings submitted to judges in a federal court of law in official federal

proceedings that "may mislead." (Emphatically, it is obvious that the

omission of key facts submitted in this Court which satisfies the

misprision statute equally applies to the omission of key facts submitted

in the federal appellate court). See the *Caraballo* Court cited cases,

**United States v. Nelson-Rodriguez**, 319 F.3d 12, 33 (1st Cir.2003)

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 639 Filed 09/05/24 Page 39 of 81 PageID #65855
2376

(recognizing that <mark>omitted facts in a wiretap warrant affidavit may mislead</mark>); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.1996) (commenting that a <mark>**"bare-bones description" submitted to judge may have been "calculated to mislead"**</mark>); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985) (holding that <mark>omitted facts in a warrant affidavit may mislead</mark>); *United States v. Previte*, 648 F.2d 73, 85 (1st Cir.1981) (noting that trial court's use of slide transparencies to deliver jury instructions "had some potential to mislead the jury, more by what they omitted than by what they contained"). Therefore it is abundantly plain that the First Circuit *Caraballo* Court applied the **misprision statute** to court "filings submitted to a judge." The federal misprision of felony statute is a carry-over of common law misprision of felony that equally applies to Rhode Island state misprision of felony – accordingly both apply as they relate to Title IV program administration and corrupt ministering or aid and abet of corrupt administration of federal programs by state persons. Accordingly, the Appellee Rule 12A Counter Statement and Objection to motion to stay that were filed before this very Court, that grossly and egregiously omitted key facts evidenced in the previously Appellant-submitted state policy documenting the falsification of federal computer records zeroing out the unlawful 12%

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63 Filed 09/05/24 Page 70 of 85 PageID #: 5855
2377

compound interest in order to conceal it for the felonious purpose of feloniously making false claims to the United States and to support-obligors, "may have been calculated to mislead" which the First Circuit held in **United States v. Caraballo-Rodriguez,** 480 F.3d 62 (1st Cir. 2007) **satisfies the misprision of felony statute,** holding that the misprision statute was satisfied where the individual "gave incomplete information regarding his knowledge of the [crime]," at least where he "gave the partial information that was misleading" which the Plaintiff-Appellant plainly contends before this same Court was committed by the Appellees, and Plaintiff-Appellant now preserves this misprision of felony by the Appellees filings submitted to appellate Rhode Island supreme court judges omitting the substantial fact of falsification of federal computer records zeroing out the unlawful 12% compound interest for the purpose of making false claims "calculated to mislead" and "satisfies the misprision statute" for *all* applicable prosecution under misprision of felony by the Appellant, and all qualifying persons, and that it is ripe for review by Article III United States Supreme Court. The Court should note that the Plaintiff-Appellant applies for the $250,000 per Appellee submission per count allowed under the misprision statute by law and should grant under the misprision law – there is no basis in

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 61 Filed 09/05/24 Page 101 of 85 PageID #: 5855
2378

<u>law or fact</u> for NO consequence or no addressment or indifference or inaction or denying remedy by this Court under the misprision statute or at common law, as painstakingly detailed by the First Circuit in ==**United States v. Caraballo-Rodriguez,**== 480 F.3d 62 (1st Cir. 2007).

10. Under ==**United States v. Caraballo-Rodriguez,**== 480 F.3d 62 (1st Cir. 2007), immediate remedy and relief to the Appellant at the first opportunity further complies with 18 U.S.C. § 4 and Rhode Island's misprision of felony at common law and by the First Circuit Court's own addressment in *Caraballo*, is <u>required at common law</u>, having at length described as a forewarning the consequences of <u>failure to act by public officers</u>.  This applies in equal force to this Court's ministerial acts implementing, ministering and enforcing structurally defective and constitutionally infirm lower courts in the administration of federal Title IV proceedings in the administration of federal programs, incorporating the Administrative Procedure Act.

## **CONCLUSION**

WHEREFORE, the Court should GRANT Appellant's motion to enjoin.  The Court should commit its decision, remedy <u>or lack thereof</u> and reasoning in writing.  The structurally defective and all issues raised herein are preserved and are ripe for the United States Supreme Court

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan
Case 1:23-cv-00126-WES-PAS Document 63-2 Filed 09/05/24 Page 103 of 231 PageID #: 5855
2379

review of the State's corrupt, unlawful, unconstitutional, and criminally obstructive administration of a federal program that implicates billions of federal funds falsely claimed by the State and billions of dollars falsely claimed by the State against support obligors since the 1996 Amendments to Title IV through the routine falsification of Title IV records zeroing out Rhode Island's 12% compound interest by the Appellees since 1996, such as the Appellant. The Court should GRANT Appellant's application for $250,000 per Appellee concealment, obstruction and misprision of felony under common law by the Appellees. Appellant condemns the Appellees. Appellant preserves the issue of Appellee violation of, and the Court's ministering of Rule 5's violation of, and those persons knowingly ministering Rule 5, and denial of public, federal auditors and Appellant's right to remote access of court information and judge-created laws in violation of the following federal criminal codes (that are not exhaustive): 18 U.S.C. § 2, 18 U.S.C. §3, 18 U.S.C. § 4, 18 U.S.C. § 1512, 18 U.S.C. § 1516, 18 U.S.C. § 666, 18 U.S.C. § 241. Appellant reserves and preserves all rights to supplement this motion upon being granted remote access to Rhode Island's judge-created laws in all its courts.

Respectfully submitted,

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 63-3 Filed 09/06/24 Page 73 of 85 PageID #: 5855
2380

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: August 1, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2024, I filed the within Motion with the Clerk of the Court via the Rhode Island Electronic filing system, and a copy to Attorney Michael Coleman, Esq., 25 Howard Bldg. 57, Cranston, RI  02920.  A copy of the filing through the Court's EFS is available for downloading and viewing.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: August 1, 2024

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

# EXHIBIT I.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case 1:23-cv-00126-WES-PAS Document 6305 Filed 09/05/24 Page 75 of 85 PageID #665855
2382

# Recorded Phone Call

## Recording Name:

[Recording of phone conversations among John Langlois, Debra DeStefano and
Mary Seguin recorded in Texas by Mary Seguin on October 5 2022]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

```
 1   Seguin:    'Cause all -- like, if -- if we base the practice on
 2              how things are done of -- based on what Mr. Langlois,
 3              John, is representing today, everyone should be able
 4              to look at that screenshot, that screen, and be able
 5              to rely on it, correct?
 6   DeStefano: Well, yeah, I --
 7   Seguin:    And its accuracy, correct?
 8   DeStefano: -- I mean, the agen- --
 9   Seguin:    So --
10   DeStefano: The agency is going to have to prove it.  Yes.  The
11              agency is going to have to submit -- and, again, it --
12              it's difficult for me to know how relevant what you're
13              asking for is 'cause I don't know what the agency's
14              gonna submit yet, uh, to -- to support their position.
15              So --
16   Langlois:  And can I -- can I just say, the reason I asked
17              earlier whether, uh, Mary had spoken to Carla after
18              she made the $104,000 payment was because there was a
19              change in circumstances immediately after that and I
20              don't know whether anyone in my agency has ever
21              explained that to Mary.
22   Seguin:    Wait -- wait -- wait a minute.
23   Langlois:  (Inaudible - 00:01:10)
24   Seguin:    Wait a minute.
25   Langlois:  (Inaudible - 00:01:11)
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

```
1    Seguin:   Wait -- wait -- wait -- wait a minute.  Wait a minute.

2              If there is --

3    DeStefano:  Wait a minute.

4    Seguin:   -- I'd like to get some documents of that.  Okay?  So

5              -- so, again --

6    DeStefano:  Mary, what do you --

7    Seguin:   -- I've asked for, I think --

8    DeStefano:  Oh.  Wait a minute --

9    Seguin:   I -- I'm so sorry.  I'm --

10   DeStefano:  -- Mary.  I know -- I know what you asked for.  Let

11             me get to -- let me understand what John just said

12             before.  So, John, you're saying there was a change

13             subsequent to her making a payment --

14   Langlois: Correct.

15   DeStefano:  -- but before the Notice of Lien went out?

16   Langlois: Yes.

17   DeStefano:  Okay.  So --

18   Langlois: And can I -- can -- if I could just back up and

19             explain what happened.  Okay?

20   DeStefano:  Okay.

21   Seguin:   This --

22   Langlois: This is -- 99 percent of this is a misunderstanding.

23   DeStefano:  Okay.

24   Langlois: Okay?

25   Seguin:   Including --
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

```
 1   Langlois: (Inaudible - 00:01:51)

 2   Seguin:   -- what's on the screenshot?  Is that a

 3            misunderstanding?

 4   Langlois: Can -- can I speak without being shouted over?

 5   Seguin:   Well, I'm --

 6   DeStefano:  Mary, let --

 7   Seguin:   I'm sh- --

 8   DeStefano:  Let --

 9   Seguin:   I'm flabbergasted really.

10   DeStefano:  Uh, Mary, you've got to let me --

11   Seguin:   Sorry.

12   DeStefano:  -- listen --

13   Seguin:   Sorry.

14   DeStefano:  -- to what the agency is gonna --

15   Seguin:   I appreciate that.

16   DeStefano:  I mean, I know -- I only know that -- what's in

17            front of me and I don't know everything that has

18            happened in this case, but if -- if -- let me just

19            listen to the agency and see what they have to say for

20            --

21   Seguin:   Sure.

22   DeStefano:  Go ahead, John.

23   Langlois: What -- what happened in this case is when, uh --

24            Mary's representative, her attorney, called us in late

25            November 2021 and said there's a -- she wants her
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

```
 1              passport released.  What does she have to do to

 2              release her passport?  They put her in touch with

 3              Carla, who gave her the $104,000 number.  Where that

 4              number came from, was the department attorney

 5              contacted the custodial parent, Mr. Miurski (ph) or,

 6              uh, Mr. -- I can't pronounce her last name.

 7              Meyersiek.  So we contacted his attorney -- it wasn't

 8              me, but it was someone in my office -- and said, "If

 9              she's willing to make a $104,000 payment to pay off

10              the principal, would you agree to waive the $75,000" -

11              - I think it was $73,000 in arrears at that time?  He

12              said yes.  So Carla notified Mary that, if she paid

13              $104,000, it would be paid in full because he was

14              willing to waive the interest.  That was just the

15              principal.  What happened was, the day after Carla

16              spoke to Mary and told her to mail in the -- or to --

17              to wire the $104,000, the attorney for Mr., um,

18              Meyersiek contacted us again and said he changed his

19              mind, please put the interest back up on the system,

20              so we did.  That's his money.  The state is just

21              collecting for -- for this past child support that's

22              owed to him.  If he wants the arrears, he has every

23              right to ask for it.  So the number that was given to

24              her was correct on the day it was given to her.  The

25              arrears for $104,000.  Because when he was waiving the
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

```
 1              arrears, wen he changed his mind the next day, we put

 2              the arrear -- I mean, interest back up on the system.

 3   Seguin:    I think --

 4   Langlois:  He was waiving the interest, and when that interest

 5              went back up on the system, that's why the system is

 6              now saying she owes $73,000.  That's why, in March,

 7              when the system saw that she had a, uh -- some kind of

 8              a personal injury settlement or some kind of an

 9              insurance settlement, we had -- we -- our system was

10              showing that she owed $73,000 in interest, so we

11              issued the lien.  But that's what happened, is when he

12              changed his mind the next day, and that's what messed

13              up the numbers.  So that's how this all happened.  It

14              was a pure misunderstanding.  I don't know whether

15              anyone has ever explained that to Mary, how that

16              happened.

17   DeStefano:  Okay.  Mary, did anybody ever explain that to you

18              before?

19   Seguin:    No.  No one ever --

20   DeStefano:  That the system has just -- just --

21   Seguin:    -- explained any of that, and I --
```

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

1                   TRANSCRIBER'S CERTIFICATE

2

3          I, Laurel Keller, do hereby certify that I have

4   listened to the recording of the foregoing; further that the

5   foregoing transcript, Pages 1 through 5, was reduced to

6   typewritten form from a digital recording of the proceedings

7   held October 5, 2022, in this matter; that Participant Mary

8   Seguin has stated John Langlois and Debra DeStefano present were

9   included in this recording; and that the foregoing is an

10  accurate record of the proceedings as above transcribed in this

11  matter on the date set forth.

12          DATED this 20th day of June, 2024.

13

14

15                              _Laurel Keller_
                                _____

16                              Laurel Keller

17                              Ditto Transcripts
                                3801 E. Florida Ave.
18                              Suite 500
                                Denver, CO 80210
19                              Tel: 720-287-3710
                                Fax: 720-952-9897
20
                                DUNS Number: 037801851
21                              CAGE Code: 6C7D5
                                Tax ID #: 27-2983097
22

23

24

25

 Gmail

**Mary Seguin <maryseguin22022@gmail.com>**

---

## 23-cv-126: CORRECTED Rule 62.1 Motion for Indicative Ruling

---

**Mary Seguin** <maryseguin22022@gmail.com>                                    Fri, Sep 6, 2024 at 1:31 PM
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Good afternoon Clerks of the Court,

I noticed I forgot to attach a few documents to the exhibits in the filing ECF 63.  Therefore, please docket the attached CORRECTED Plaintiff's Rule 62.1 Motion for indicative Ruling on Rule 60(b) and 15(a) motions.

Thank you in advance for your assistance.

Have a nice day and nice weekend.

Respectfully submitted,
Mary Seguin

---

📄 **CORRECTED 23-cv-126 Rule 62.1 Motion WITH ALL EXHIBITS 090624.pdf**
4379K

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                    Civil Action No. 1:23-cv-126-WES-PAS
                      U.S. Court of Appeals for the First Circuit Appeal No. 23-1967
                      Related Appeal No. 23-1851
                      Related Appeal No. 24-1451

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

*Defendants*


## RULE 62.1 INDICATIVE MOTION ON PLAINTIFF'S

## RULE 60(b)(2) Motion based on New Evidence

## AND

## RULE 60(b)(3) Motion based on Fraud to Vacate the Final Judgment

## AND

## RULE 60(b)(4) MOTION to Vacate Void Post Appeal Orders

## AND

## RULE 60(b)(6) MOTION to Vacate based on 28 U.S.C. § 655(a) Disqualification of William E. Smith for *Functus Officio* Pattern of *Mispricio Clericio* Obstruction Involving the Alteration and Falsification of the Record on Appeal Corruptly Influencing A Pending Official Appellate Proceeding, NECESSITATING DISQUALIFICATION and RE-ASSIGN

## AND

## RULE 15(a)(2) MOTION


## ORAL ARGUMENT REQUESTED

———————————————

**STATE-SPONSORED ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS**

**Unlawful Interstate Collection of Unlawful 12% Compound Interest Within the Title IV-D Legal Framework Involving Organized Felonious Obstruction of Justice Acts by Defendants, Obstruction of Justice and Misprision of Felony by Defendant Counsels, and**

## I.      UNDISPUTED FACTS

State Title IV-D Administrator and private partner Defendants withheld from the Court, concealed from United States judges and federal authorities listed in 18 U.S.C. §§ 1503, 1512, and 4 *concealed* document evidence (Exhibit A) within their possession (and knowledge) that shows the decades-long and on-going official Rhode-Island State-prescribed administrative procedure that prescribes altering and falsifying federal Central Registry records and state court orders for the purpose of concealment by "zeroing out" Rhode Island's unlawful usurious 12% compound interest in interstate support cases, which on its face runs afoul of federal laws and regulations requiring the Rhode Island Title IV-D State Plan Administrator State Defendants to only charge interest (if any) between 3%-6% simple interest, per 42 U.S.C. § 654(21)(A).  The new evidence shows the corrupt scheme put in place (regarding altering and falsifying the interest records in the

State's new computer Title IV record system as of 2011 by the State Defendants

Administrators of federal Title IV-A and Title IV-D of the Social Security Act)

entails the coordination of all political subdivisions of the State of Rhode Island

(*see* 42 U.S.C. § 654(1) requiring the State's Title IV-D administrative procedures

in place to be in effect in *all* political subdivisions of the State), to order 12%

compound interest through the complicit state family court, which the Title IV-D

State Administrators (State Defendants) subsequently "zero out" in the 42 U.S.C. §

654(27) computer federal records when transmitting support records to the federal

Central Registry (*see* federal regulation 45 CFR 303.2 and 45 CFR 303.7),

including "modifying court orders" that contain Rhode Island's unlawful 12%

compound interest.  Federal regulation requires the State Title IV-D Administrator

Defendants to certify records transmitted to the federal Central Registry within

Title IV-D framework (see 45 CFR 303), which the State Title IV-D Administrator

Defendants falsely certified to the accuracies of the interest "zeroed-out" support

records and support court orders that the Defendants modified, aided in modifying

and knew were modified.  In interstate support cases under 42 U.S.C. § 666(14),

the State Title IV-D Administrator Defendants moreover certify systematically and

systemically to Receiving States, such as Texas, that there is no interest in the

support cases, after falsifying the records and support orders "zeroing out" interest.

In this matter, State Title IV-D Administrator Defendants' false certifications of

"zero interest" to the United States and to Texas occurred in 2018, 2019, 2020, 2021, 2022, 2023 and 2024, and is on-going, pursuant to the new evidenced Defendants' Title IV-D administrative procedures.  New evidence shows that after the aforesaid 12% compound interest record is "zeroed out," Defendants represent to support obligor victims that interest was "waived" then fraudulently "put interest back on the system" and pursue debt collection activities and legal actions in debt at common law, including placing fraudulent liens on properties for the Defendants' "zeroed out" 12% compound interest against the support obligor victims, dressed up as "enforcement" under the Title IV-D legal framework in "Title IV" proceedings in constitutionally infirm forums, that moreover deprive the right to jury trial.  The infirm state family court forum's domestic procedure does not even contain rules (*e.g.* domestic rule 38 of the state family court's rules and procedures is intentionally left blank as "reserved") preserving the right to jury trial – the deprivation of trial by jury in a thoroughly constitutionally infirm forum for Title IV-D proceedings is intentional, so that the Defendants' egregious systemic and systematic *criminal* "zeroing out" of Rhode Island's unlawful 12% compound interest in both Title IV federal records and modification of support orders has not been at issue in the annals of Rhode Island Supreme Court caselaw. To that end, the Judiciary Title IV-D State Administrator Defendants make sure to conceal, impair and otherwise obstruct the availability to the public and federal

auditors alike of state court records and state judge-created laws in the State's
digital courts so as to obstruct and impair the availability and access to cases in
which the systemic criminal federal record alteration "zeroing out of interest"
issues are actually raised in cases in the state's digital courts.  Finally, to ensure
that judge-created laws relating to the unlawful 12% compound interest that is
"zeroed out" is cleaned up so that the State Defendants' criminal systemic record
alterations in Title IV proceedings are equally "erased from the record," the State
Judiciary Defendants implemented and continuously operate digital courts that
operate two separate electronic case management systems, one undisclosed and
unnamed "legacy system" with its own separate set of court clerks called "clerks of
Reciprocal" for the filings for State Title IV-D Administrator Defendants who
"zero out interest" record alterations and falsifications that only the State and the
judge can see, and another separate electronic case filing system for everyone else
called Odyssey, purposefully failing to integrate the two case management
systems, so that: (1) State Administrator Defendants' electronic filings  (pursuing
12% compound interest) cannot be seen by anyone else other than the judge and
the State Defenders; (2) State Administrator Defendants' electronic filings are not
noticed to the opposing party who is predominantly pro se; (3) the clerks of the
state family court are not able to see the State Administrator Defendants' filings
nor can the Rhode Island's Virtual Clerk see their "legacy system" filings; (4)

despite objections filed by the opposing party to the State Administrator's

proposed orders (that obscure the unlawful 12% compound interest and zeroing out

interest facts purposefully in vague language in order to conceal it), the judge

automatically signs and enters the State's proposed orders without a hearing, in

violation of due process; (5) pro se litigants are denied electronic remote access to

their own court case information; (6) the public, pro se litigants and federal

auditors are denied remote access to court information of Rhode Island's digital

courts, effectively denied access to, obstructed from access to Rhode Island judge-

created laws, in violation of the First Amendment, the Due Process and Equal

Protection and Privileges and Immunities Clauses, the Supremacy Clause, the

Administrative Procedures Act, and the Government Edicts Doctrine – *see* Rhode

Island Supreme Court promulgated and enforced Rule 5 Denying Remote Access

to Court Information to the public, pro se litigants and Federal Auditors – see new

evidence Exhibit A showing Rhode Island Supreme Court acknowledgement that

Rule 5 "is a problem."  More importantly, Defendants' acts carry federal criminal

penalties, in violation of RICO (making false claims for debt), wire fraud, mail

fraud, computer fraud, obstruction (*inter alia* 18 U.S.C.  §§1512, 1503, 1516, 666).

Plaintiff repeatedly raised these facts and issues of egregious criminality, to which

neither Defendants nor Defendant counsel disputed, including the Rhode Island

Attorney General, in the pending official federal proceeding Appeal 23-1967, nor

any explanatory justification whatsoever for systemically and systematically altering and falsifying federal Title IV records zeroing out Rhode Island's 12% compound interest for both federal central registry computer records and "modifying court orders zeroing out interest," then certifying there is no interest to both the United States and to receiving State Sovereigns.    Under the Administrative Procedures Act, State Defendants' criminal record falsification and alteration to conceal Rhode Island's unlawful 12% compound interest systemically and systematically altering court orders in the system to zero out interest in order to conceal it, falsely certifying to the altered records' accuracy then making claims for federal funds under Title IV-A and Title IV-D when the State is knowingly noncompliant with federal regulation are egregious, treasonous crimes.  Obvious to the Court and to **any objective observer** under 28 U.S.C. § 455(a), the integrity of federal records for one of the largest State-Federal work-together Programs is damaged, the legitimacy of the agency administration and political subdivision administration of an Act of Congress is grossly harmed, the United States is the recipient of false claims from Rhode Island, and the State Defendants systemically make false claims to support obligors within the federal Title IV-D legal framework.  Defendants caused gross *irreparable harm* to the Plaintiff, and the systemic nature of Defendants' corrupt egregiously criminal administration of an

Act of Congress is a matter of extraordinary public interest causing extraordinary irreparable public harm. The aforesaid is at the state level.

At the federal level, the Plaintiff is moreover irreparably harmed by the federal judiciary in the district for Rhode Island, for similar pattern of criminal *misprisio clericio* record alteration, falsification, impairment and obstruction of the record on appeal during the pendency of Appeal No. 23-1967 by the *functus officio* William E. Smith and associating clerks of the court in the district court, in violation of 18 U.S.C. § § 1512(c)(2) and 1503. Moreover, the Plaintiff has raised the facts and criminal issues of the record on appeal in this matter in the pending Appeal No. 23-1967 to United States judges – again, none of the Defendants-Appellees disputed. The undisputed facts of the record on appeal shows the follows:

(1) Emblazoned on the Federal Judiciary website for the district of Rhode Island is the undisputed biographical facts that U.S. District Court Judge William E. Smith has had unusually intimate multi-prong and multi-layered personal, professional **attorney-client relationship**s with *numerous* state (inter alia Office of the Governor and Office of the Treasury) and municipal political subdivisions of the State of Rhode Island, and loyal political relationships with the Rhode Island government judicial and executive Appellees, who implemented the 2024 newly evidenced systemic and systematic *criminal* document alteration

of Title IV of the Social Security Act *federal records* procedures

approved and operating under former Rhode Island Governor Lincoln

Chafee in 2011 (systemic criminal computer record alteration procedures

evidenced in the 2024 new evidence shows it is effective from 2011 (start

of Chafee Governorship) to the present), for whom William Smith had

quit his Partnership at his former firm Edwards & Angell in order to run

Chafee's campaign full-time for the U.S. Senate in 2000; Chafee, after

successful election to the Senate, in turn rewarded Smith's personal and

political loyalty by nominating Smith to the federal judgeship that Smith

started twenty-two years ago in 2002.

(2) Earlier iterations (from 1996 to 2011) of the 2024 evidence showing

Rhode Island's systemic and systematic *criminal* federal document

alteration procedures were implemented by and in effect in *all* political

subdivisions of Rhode Island (including counties, cities, towns, villages)

under the Rhode Island State Plan pursuant to 42 U.S.C. § 654(1).

Chafee served as the mayor of W. Warwick at the time of the seismic

1996 Congressional Amendments to Part D of Title IV of the Social

Security Act, and the Rhode Island *criminal* federal document alteration

procedures were in effect in W. Warwick, a political subdivision of

Rhode Island, as early as 1996, zeroing out Rhode Island's 12%

compound interest systemically and systematically electronically and manually.

(3) Smith had complex and in-depth attorney-client relationships with political subdivisions of Rhode Island at multiple levels, e.g., towns, cities, counties, state judiciary, state attorney-general, state secretary, state treasury, state governor and executive subdivisions, to a well-known *personal* attorney-client relationship fact in Rhode Island with Lincoln Chafee from 1996 to 2002.  This fact is so well known that the ***Federal Judiciary Website*** itself credits Smith with building Edward & Angell's Public Law Practice based on Smith's person, professional and political attorney-client relationships with the judiciary and executive Appellees, in part through his personal relationship with Chafee.  Smith knew and or should have known the 2024 new evidence of Rhode Island systemic alteration of federal records for the purpose of making false claims to the United States for federal public funds of billions of dollars, and making false claims to support obligors for tens of millions of dollars within the reach of the Title IV legal framework.

(4) Before the Notice of Appeal was filed on November 17, 2024 (ECF 32), Smith interfered three times with the docketing of Appellant's filed papers on November 16, 2024 and November 17, 2024, in a pending

judicial proceeding at the federal district court in the district of Rhode
Island in violation of Federal Rules of Civil Procedure 79, and federal
*criminal* laws 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, among
others, such as *misprisio clerici.*

(5) There were no pending motions before the docketing of the Notice of
Appeal (ECF 32) on November 17, 2023 – this critical fact is now
undisputable: The Court Order dated May 24, 2024 in Appeal No. 23-
1967 **Document: 00118148678** found the Court has jurisdiction over
Appeal No. 23-1978 after reviewing Appellant's court-ordered Show
Cause, which is only legally possible if there were no pending motions at
the time of notice of appeal filing on November 17, 2023 (ECF 32).

(6) Moreover, the district court clerk had certified there were no pending
motions on November 17, 2023 (ECF 33, 33-1) – this critical fact is also
undisputable:  The Court Order dated May 24, 2024 in Appeal No. 23-
1967 **Document: 00118148678** found the Court has jurisdiction over
Appeal No. 23-1978 after reviewing Appellant's court-ordered Show
Cause.

(7) Three days post appeal (23-1967), on November 20, 2023, the *functus
officio misprisio clerici* district court judge William E. Smith, whose
personal, political and professional attorney-client relationship with the

executive and judicial Appellees are at issue on appeal (and the subsequent 2024 new evidence shows Smith knew or should have known of the systemic Rhode Island falsification of federal Title IV official records in the federal Central Registry), in his *unofficial capacity* schemed to alter the record on appeal.  Issuing a void, *functus officio* directive dressed up as "an order," William E. Smith instructed the district court clerks in Rhode Island to alter the district court docket and the record on appeal, that purposefully *falsified* the record on appeal to make it look like there were pending motions on November 17, 2023. Therefore, while the federal Appeal 23-1967 was pending, Smith and the district court clerks knowingly falsified the federal record on appeal by post-appeal docketing three motions under the date November 17, 2023, to corruptly fabricate a false appellate record aimed to confuse this Court to falsely believe there were pending motions on November 17, 2023 this Court lacked jurisdiction over properly filed appeal no. 23-1978 that precisely appealed the district court's void November 20, 2023 text order and the subsequent resulting falsification and alteration of the original record on appeal, docketing on November 20, 2023 three motions under the November 17, 2023 docket entry date for the purpose of falsely making it look like there were pending motions on November 17, 2023,

for the purpose of corruptly influencing this Court into believing it lacked jurisdiction over properly filed appeal No. 23-1978 (that appealed the validity of William Smith's post-appeal *functus officio* November 20, 2023 order). The knowing functus officio actions by William E. Smith and persons in the district court altering the record on appeal for the purpose of corruptly influencing and interfering with a pending federal official proceeding in their unofficial capacities, trigger 18 U.S.C. § 1512(c)(2) and § 1503, and *misprisio clerici* among others.

(8) William E. Smith's former clients, the Rhode Island government judiciary and executive Appellees, in coordination with Smith, knowingly and purposefully filed dressed up "objections" in the district court while Appeal No. 23-1967 was pending, in coordination with the functus officio district court transmitting altered and falsified record on appeal with the purpose of interfering with the pending No. 23-1967 and 23-1978, moreover triggered 18 U.S.C. § 1512(c)(2) and § 1503 and among others, *misprisio clerici*.

(9) On February 1, 2024, William Smith in his functus officio *misprisio clerici* unofficial capacity issued a void "order" dressed up as "in aid of the court" to interfere with the pending appeals 23-1967 and 23-1978.

(10)   This appellate Court fell for the *functus officio* William E. Smith's and the Rhode Island judiciary and executive Appellees' *criminal misprisio clerici* ruse.  Three days prior to the due date of the opening brief, this Court vacated its original briefing schedule on the late afternoon of a Friday, on March 1, 2024, with explicit instructions to the Appellant to file a motion for extension of time under FRAP 4 or amend the complaint in Appeal no. 23-1967.

(11)   Appeal No. 24-1313 arises from the district court's equally *functus officio misprisio clerici* VOID denials (dressed up as legitimate) of timely filed FRAP 4 motions for extensions of time, that this Court-instructed Appellant to file.

(12)   The *functus officio misprisio clerici* William E. Smith, in his unofficial capacity, persons in the district court in coordination with Smith, and William Smith's former clients, Rhode Island judiciary and executive Appellees, in coordination with Smith, knowingly altered and falsified the record on appeal, committed at common law *misprisio clerici*, and collectively interfered with Appeal No. 23-1967 and 23-1978, that <u>succeeded</u> in confusing this Court and succeeded in interfering with pending proceedings in this Court, which necessitated the filing of an

appeal of yet more *functus officio* VOID denial orders in March 2024, the

resulting Appeal 24-1313.

(13)   The newly discovered evidence showing criminal systemic and

systematic procedures altering and falsifying federal records by the

Appellees and all political subdivisions under the State Plan federally

regulated and federally funded under Part D of Title IV of the Social

Security Act shows the motive behind the elaborate falsification and

alteration of federal records of pending official proceedings in Appeals

No. 23-1967 and 23-1978 by the *functus officio* William E. Smith, the

Appellees with whom William E. Smith had intimate, extensive and

broad multiple attorney-client relationships at multiple levels of political

divisions and political subdivisions of the State of Rhode Island in which

the systemic and systematic falsification of federal records procedures

were in effect pursuant to federal regulation under 42 U.S.C. § 654(1),

and *functus officio* persons employed by the district court for the district

of Rhode Island, who **all knew or should have known** that making

*functus officio* alterations to the record pursuant to a *functus officio*

judge's void orders during the pendency of said appeals to falsely make it

look like the appellate court lacked jurisdiction over a properly filed

appeal corruptly interferes with the pending official appellate

proceedings.  The forensic misconduct implicates on its face *misprisio clerici* by officers of the federal court, whose misconduct this Court has ministerial supervision responsibility.

(14)   After this Court performed a forensic investigation of the record on appeal in the same underlying district court matter 23-cv-126 and determined that the Court has jurisdiction over Appeal 23-1978 because the forensic record investigation concluded there were no pending motions on November 17, 2023, the Court in effect determined forensic misconduct *misprisio clerici* by the *functus officio* William E. Smith who issued not one but FIVE *functus officio misprisio clerici* VOID orders post appeal, purposefully and corruptly dressed up as legitimate orders by falsifying the docket entry post-appeal on November 20, 2023 to make it look like there were pending motions at the time of the appeal of the final judgment on November 17, 2023.  The forensic investigation of the record performed by this Court shows as a matter of undisputed fact that the acts of William E. Smith, the Appellees with whom Smith had extensive attorney-client relationships, and persons at the district court triggered federal criminal 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, as well as *misprisio clerici* among others.

(15)   Pursuant to the performance of forensic investigation of the record on appeal, the Court of Appeals, at Plaintiff-Appellant's request, consolidated three appeals, 23-1967, 23-1978 and 24-1313.

(16)   These above extraordinary circumstances involve federal obstruction crimes by federal officers of the district court for the district of Rhode Island under *misprisio clerici* at common law.

(17)   Under these extraordinary circumstances that involve the commission of *misprisio clerici* **by *functus officio* persons of the federal judiciary in and officers of the lower district court for the district of Rhode Island**, this Court's <u>equitable obligations</u> and the Court's adherence to 28 U.S.C. § 455(a) require the Court to disqualify William E. Smith, at the minimum, <u>whose actions caused</u> appeals No. 23-1978 and 24-1313, that had stemmed from injurious harm to Appellant caused by the *misprisio clerici functus officio* <u>forensic misconduct</u> by William E. Smith. The Court by law should apply the superseding *Fischer vs. U.S.*, 603 U.S. __ (2024), *Trump vs. U.S.*, 603 U.S. __ (2024), and *Lopes Bright Enterprises, Inc. vs. Raimondo* (2024)(Slip Opinion).

Plaintiff hereby incorporates the Appellate Court's May 24, 2024 Order in **Appeal No. 23-1967 Document: 00118148678 as fully referenced herein**.

Plaintiff hereby incorporates the Appellate Court's filings Documents

**00118162842** and Document **00118178653** as fully alleged herein.  The Court

must note and find as a matter of fact in the record on appeal in Appeal 23-1967

that Plaintiff-Appellant repeatedly made several filings of the above facts in the

pending Appeal 23-1967 for seven months from March 2024 to September 2024,

to which facts the Defendants from March 2024 to September 2024 ***do not dispute.***

The state government defendants as a matter and fundamental issue of government

legitimacy concern must dispute allegations challenging the legitimacy and legality

of its actions that violate federal criminal laws in our democratic government

system.  The Title IV-D Administrator Defendants never disputed any of the above

aforesaid facts.  The aforesaid facts are **undisputed facts**.  William E. Smith's

extensive, broad and political attorney-client relationship makes it clear to the 28

U.S.C. § 455(a) objective observer that Smith knew or should have known about

the systemic and systematic criminal alteration and falsification of federal Title IV-

D records effective in ALL political subdivisions of Rhode Island under 42 U.S.C.

§ 654(1)with whom Smith had intimate, broad, in depth political and personal and

***attorney-client relationships*** in one of the largest state-federal work-together

programs in the counry.

   In light of this newly discovered withheld and concealed evidence, Plaintiff

respectfully requests that the Court indicate to the First Circuit that it would grant

Plaintiffs' Rule 60(b) and 15(a)(2) Motions.

Had Defendants, who are not just officers of the federal Court but are also
public officers in the First Circuit under *United States v.  Şballo-Rodriguez,* 480
F.3d 62 (1st Cir. 2007) (who are also referenced as  public officers in Section 1503
and Section 1512) that applies to *any and all **public federal** and state officials*
throughout the First Circuit as required by federal law, and when required by this
Court nearly a year ago, Plaintiff would have sought leave to bring five
Administrative Procedure Act ("APA") claims, *i.e.*, that State Defendant Agency
Rhode Island Department of Human Service's November 29, 2022, decision (1) is
per se arbitrary and capricious; and (2) resulted from improper criminal influence
by the Office of the Child Support Services and for reasons that Congress did not
intend him to consider; Defendants' "zeroing out interest" of Title IV-D records
then put the zeroed out and State falsely certified "no-interest" back on the system
are criminal obstruction; Defendants' Rule 5 concealment, impairment of
availability of court information records showing the State's systemic and
systematic zeroing out of interest from federal auditors are criminal obstruction;
denials of access to administrative procedures relating to the State's making claims
for all Title IV federal Public Funds related to the zeroed out interest records that
are criminal obstruction. **5 U.S.C. § 706**; *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*
*State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)

Plaintiff has now presented new evidence that "raises a substantial issue," the relevance of which Plaintiff and this Court should at least be allowed to explore. Fed. R. Civ. P. 62.1. Plaintiff has otherwise "made [a] showing that defendants' actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." **5 U.S.C. § 706.** This Court should not countenance Defendants' now transparent criminal dereliction of agencies' duties—especially Title IV-D administrators' statutory and regulatory obligation to furnish this Court the whole record. **5 U.S.C. § 706**.

## II.    The Omitted New Evidence Reveal Defendants' and Smith's Scheme To Help Operate A 'Racket' Under RICO.

The aforesaid makes clear that Defendants' and William E. Smith's scheme help operate a "racket" under RICO and operating false claims that involves document obstruction under 18 U.S.C. § 1512(c)(2) and 1503, including *mispisio clerico*.

## III.    Defendants Withheld The Systemic and Systematic Title IV-D Administrative Procedures Prescribing "Zero Out Interest" Federal Record Alteration and Falsification Evidence Despite Plaintiffs' APRA-FOIA Request.

The Defendant State Administrators of Title IV-D withheld the federal record alteration and falsification Title IV-D administrative procedures prescribing zeroing out to conceal Rhode Island's unlawful 12% compound interest despite Plaintiff's APRA-FOIA request. The Defendant's administration of Title IV-D

involves falsifying federal Title IV-D records in the federal Central Registry that is regulated by federal law and regulations and the Defendants' administration is funded by federal public funds contingent upon compliance with federal laws and regulations, which Defendants purposefully schemed to violate, conceal and aimed to operate a RICO debt collecting enterprise, funded by federal public funds.  It is utterly outrageous and goes towards the legitimacy of the government that commits systemic fraud and obstruction with each count punishable by 20 years imprisonment.

## IV.     FEDERAL OBSTRUCTION OF JUSTICE CONSTRUCTION STATUTES RELATING TO DOCUMENTS IS <u>BROAD</u>

1. The undisputed fact remains that Smith, persons in the district court and the Appellees altered the record on appeal in part to make it look like the Court lacked jurisdiction over Appeal 23-1978 and subsequent post-appeal void orders, succeeded in confusing this Court, the Court had to perform a forensic investigation of the record, found forensic alteration implicating *functus officio misprisio clerici* forensic misconduct by officers of the district court, and that it turns out in part was calculated to conceal a more egregious systemic document alteration and falsification crime by the State Appellees, with whom William E. Smith had extensive and broad attorney-client relationships, and who knew and should have known about the systemic federal record falsification implicating false

claims involving billions of federal public funds, showing Smith's commission of egregious *misprisio clerici* with broad implications affecting the legitimacy of the judiciary and the corrupt administration of the federal Title IV-A and Title IV-D programs.

2. Obstruction of justice as both a concept and a legal term of art has adorned the halls of Anglo-American justice in the context of professional misconduct for over four centuries. See *People ex. rel. Karlin v. Culkin*, 162 N.E. 487, 489-92 (N.Y. 1928) (Cardozo, C.J.) (tracing, with <u>derision</u>, the history of barristers and attorneys who have been charged with obstruction of justice back to the seventeenth century and making comparisons to contemporaneous prosecutions). In analyzing a case involving "practices obstructive or harmful to the administration of justice," Justice Cardozo considered the early instances of the attachment of culpability for such behavior, and that history underscores the importance of documentation in the judicial process dating to the 16th Century.' *Id.* at 490-91 (discussing the charge of *misprisio clerici*: the submission of writs without the required formalities). The appearance of judicial propriety, equity, and fairness was the underlying rationale behind the charge, as the Court emphatically must apply <u>here</u>. "Our court is 'slandered and evil spoken of, our cares and labors made void and frustrate' by the 'negligence of clerks and ministers;' the client 'beginneth to think evil of us that are judges, to suspect our skill,' and to speak evil

of the law." *Id.* (quoting in part the Lord Chief Justice of the Common Pleas,

Easter Term, 9 Eliz. 1567). The charge of obstruction of justice was carried into

the Americas and retained its strongly negative normative overtone. *See* THE

DECLARATION OF INDEPENDENCE para. 2, 10 (U.S. 1776), noted in

*O'Malley v. Woodrough*, 307 U.S. 277, 284 (1939).  The Declaration of

Independence is illustrative: "The history of the present King of Great Britain is a

history of repeated injuries and usurpations, all having in direct object the

establishment of an absolute Tyranny over these States .... He has obstructed the

Administration of Justice, by refusing his Assent to Laws for establishing Judiciary

powers. ' *Id*. (emphasis added).  In the twentieth century, federal obstruction of

justice provisions expanded from Section 1503, the wellspring from which most of

the obstruction of justice provisions arose, including section 1512. See *United*

*States v. Poindexter,* 951 F.2d 359, 380-83 (D.C. Cir. 1991) (providing a detailed

history of the development of federal obstruction of justice statutes including §§

1503, 1505, and 1512).  Sections 1503 and 1512 have been broadly construed to

proscribe actions beyond those enumerated in their provisions. *See* Michael E.

Tigar, *Crime Talk, Rights Talk, and Double-Talk*: *Thoughts on Reading the*

*Encyclopedia of Crime and Justice*, 65 TEX. L. REV. 101, 111 n.72 (1986).

Section 1512 was thought to "significantly broaden" the reach of Section 1503,

even while 1503 was being read to reach outside its specifically enumerated scope.

Tigar, *supra* note 33, at 111 n.72.  Modern readings of the statutes texts "corrupt"

intent require only that the act in question have the reasonably foreseeable effect of

obstructing a proceeding, regardless of the defendant's actual intent. *See* Jeffrey R.

Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV.

1090-91 (2001).   The prosecutorial inquiry is not, therefore, the presence of intent

to obstruct the proceeding per se, but rather the presence of intent to commit an act

that could reasonably be foreseen to have that effect. *Id*.  Already having had to

apply the necessary prosecutorial inquiry itself during the Appellate Court's own

performance of forensic investigation of the appellate record in order to determine

that Appeal 23-1978 could proceed, the Appellate Court already answered in the

affirmative the "presence of intent to commit an act that could reasonably be

foreseen to have that effect" – the act did in fact confuse the Appellate Court, did

in fact mislead the Appellate Court into falsely believing initially that the

Appellate Court lacked jurisdiction over 23-1978 after William E. Smith and

officers of the court in the district court altered and falsified the appellate record

post-appeal (on November 20, 2023) to falsely make it look like there were

pending motions when the notice of appeal was filed for appeal no. 23-1967 (ECF

32 filed on November 17, 2023).  (Successfully) Misleading the Appellate Court

through record alteration into falsely believing the Appellate Court lacks threshold

jurisdiction over a properly filed notice of appeal (23-1978) is a <u>fundamental</u> <u>material</u> corruption of the record on appeal.

3. Moreover, under construction of Section 1503, to be "corrupt" an act must only have the natural and probable effect of interfering with an official proceeding. Both natural and probable effect of interfering with this pending official proceeding occurred here.  See *United States v. Aguilar*, 515 U.S. 593, 598-601 (1995).  In *United States v. Aguilar*, a federal judge was convicted of both illegally disclosing a wiretap and obstruction of justice.  Section 1512(c)(1) states, "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2) states, "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

4. The Supreme Court in *Fischer vs. U.S.*, 603 U.S. ___ (2024) made clear that Section 1512(c)(2) "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so," relates to any official proceeding obstruction involving documents and records, that this Court must apply to the district court's acts in these consolidated matters.  The Court must independently review the facts of travel of the appellate record post appeal after the overturn of the *Chevron* deference (see *Lopes Bright Enterprise vs. Raimondo*, (2024) (Slip Opinion), with

no deference to the agency Defendant-Appellees who aided and abetted the criminal alteration of the record on appeal. *Trump vs. U.S.*, 603 U.S. ___ (2024) instructs the Court to review official and unofficial acts by public officials, that when applied here, must make the distinction among *functus officio* void acts of *mispriscio clericio* dressed up as valid judge-created law that on its face states "in aid of the court" showing intent to corruptly influence and interfere with the appellate judges in a pending official appellate proceeding when the *functus officio* William Smith lacked any authority, that the 2024 new evidence shows Smith's action is calculated to conceal, impair, impede the availability of egregiously incriminating evidence from coming to light showing systemic and systematic federal record falsification and alteration procedures that went on for decades in Rhode Island covered by 18 U.S.C. §1512(c)(1) and (2), each count up to 20 years imprisonment.

5. Under the Court's fundamental truth-finding and equitable obligations, these sets of extraordinary circumstances involving systematic and systemic obstruction with each count up to 20 years imprisonment warrants the Court to explore the "substantial issue."    Smith's obstruction act is not merely prejudicial to the Plaintiff-Appellant but compounds the officer *mispriscio clericio* injury rather than provide requisite truth-seeking and equitable obligation the Court by law is required to remedy.   The harm of any resulting error would be irreparable and

goes towards the legitimacy of the judiciary.  Appellant hereby preserves the issues

raised in this motion for Article III review by the U.S. Supreme Court and states on

the record that the raised and preserved issues are ripe for Supreme Court review.

## V. LAW AND ARGUMENT

6. The Ninth Circuit Court of Appeals explains that "[t]he whole administrative

record," as per 5 U.S.C. § 706, "'is not necessarily those documents that the

agency has complied and submitted as 'the' administrative record.' 'The 'whole'

administrative record . . . consists of all documents and materials directly or

indirectly considered by agency decision-makers and includes evidence contrary to

the agency's position.'" *Thompson v. United States Dep't of Labor*, 885 F.2d 551,

555 (9th Cir. 1989) (emphasis in original; citations omitted).  The newly

discovered evidence prescribing administrative procedures that systemically and

systematically shows falsification and alteration of federal Title IV-D records as it

relates to Rhode Island's unlawful 12% compound interest that prescribes "zeroing

out" interest and altering support orders to zero out interest, purposefully on its

face is intended to conceal the unlawful and 42 U.S.C. § 654(21)(A) noncompliant

12% compound interest Rhode Island Defendants seek to collect in actions in debt,

triggering systemic (1) RICO liability, (2) false claims liability and (3) obstruction

liability.  The Supreme Court ***Trump v. U.S.***, 603 U.S.__(2024) made it crystal

clear that alterations and falsification of court orders trigger 18 U.S.C.  §

1512(c)(2), which is [precisely and textually what the new evidence prescribes to do, alter court orders to zero out the interest.  The whole administrative record must now be brought before this Court.

## A. FED. R. CIV. P. 62.1 ALLOWS THIS COURT TO REMEDY DEFENDANTS' CRIMINAL MALFEASANCE.

7. "A party proffering newly discovered evidence may obtain an indicative ruling from a district court concerning relief from judgment pending appeal." *Franken v. Mukamal,* 449 F. App'x 776, 779 (11th Cir. 2011) (citing Fed. R. Civ. P. 62.1; Fed. R. App. P. 12.1); see also *Amarin Pharm. Ireland v. Food & Drug Admin*., 139 F. Supp. 3d 437, 447 (D.D.C. 2015) ("Where a district court concludes, for example, that newly discovered evidence warrants vacatur of a judgment that is already on appeal, the court can issue an indicative ruling . . . .").

8. Once an appeal is filed, the District Court no longer has jurisdiction to consider motions to vacate judgment. *Gould v. Mut. Life Ins. Co. of N.Y*., 790 F.2d 769, 772 (9th Cir.1986). However, the District Court may entertain and decide a motion after notice of appeal is filed if the movant adheres to Rule 62.1, which sets forth a process to "ask the district court whether it wishes to entertain the motion, or to grant it, and then move this court, if appropriate, for remand of the case." *Id*; see also *Crateo, Inc. v. Intermark, Inc.,* 536 F.2d 862, 869 (9th Cir. 1976) ("The most the District Court could do was to either indicate that it would 'entertain' such a

motion or indicate that it would grant such a motion."). If the District Court states

that it would grant the motion or that the motion raises a "substantial issue," the

movant must notify the Circuit Clerk and the District Court "may decide the

motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(b),

(c); see also *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv*., No. 16- 04294,

2018 WL 2010980, at *4 (N.D. Cal. Apr. 30, 2018) (district courts "have authority

to deny [a motion], but . . . may not grant it without a remand from the court of

appeals").

### 1. Fed. R. Civ. P. 60(b) Relief From This Court's Judgment is Appropriate.

9. Usually, Rule 62.1 relief is sought under Rule 60(b). See *Williams v. Woodford*,

384 F.3d 567, 586 (9th Cir. 2004) ("To seek Rule 60(b) relief during the pendency

of an appeal, the proper procedure is to ask the district court whether it wishes to

entertain the motion, or to grant it, and then move this court, if appropriate, for

remand of the case."). As explained in *Hake v. Guardian Life Ins. Co*.: Rule 62.1

permits the Court to make an "indicative ruling" on a post-judgment motion to give

the Court of Appeals an indication on how the Court would rule if it still had

jurisdiction to rule. The Rule 62.1 "indicative ruling" procedure was instituted to

deal with post-appeal Rule 60(b) motions, where a district court lacks jurisdiction

to rule directly. No. 07-1712, 2010 WL 11578944, at *2 (D. Nev. Apr. 1, 2010)

(citing Fed. R. Civ. P. 62.1 advisory committee's note). In *Comm. on Oversight &*

*Gov't Reform, United States House of Representatives v. Sessions* it was similarly explained: Rule 62.1 provides that upon the timely filing of a motion for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue. This rule is invoked in situations where a court has lost jurisdiction over a case because it has been docketed for appeal, and therefore cannot entertain motions such as those made under Rule 60(b) for relief from judgment. Rule 62.1 allows a court to indicate to the appeals court that it would grant the party's motion if remanded to the lower court. 344 F. Supp. 3d 1, 7 (D.D.C. 2018) (quotation omitted).

## 2. Fed. R. Civ. P. 15(a)(2) Leave To Amend Is Also Appropriate.

10. While "Rule 62.1 codifies the procedure most courts used to address Rule 60(b) motions to vacate final judgments which had already been appealed . . . , nothing in Rule 62.1's language limits its application to Rule 60(b) motions or to motions made after final judgment." *Ret. Bd. of Policemen's Annuity v. Bank of New York Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013). The Advisory Committee's note confirms that it "adopt[ed] for any motion that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal."

Fed. R. Civ. P. 62.1 Advisory Committee's Note; see also *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden,* No. 11-0253, 2013 WL 1867067, at *3 (D. Idaho May 1, 2013) (issuing an indicative ruling under Rule 62.1 regarding a motion to add a party under Rule 21); *Reflex Media, Inc. v. Chan*, No. 16- 0795, 2017 WL 8223985, at *1 (C.D. Cal. Oct. 17, 2017) ("Rule 62.1 provisions were originally drafted as an addition to Rule 60, addressing only relief under Rule 60 pending appeal, but the proposal was broadened to include all circumstances in which a pending appeal ousts districtcourt authority to grant relief."). Thus, an indicative ruling is appropriate where, under any Rule of Federal Procedure, it would "allow for the timely resolution of motions which may further the appeal or obviate its necessity" and not simply "place a district court in a position where it must predict the outcome of an appeal of its own decision." *United States v. Brennan,* 385 F. Supp. 3d 205, 208 (W.D.N.Y. 2019) (quotation omitted); see e.g. *Rabang v. Kelly*, No. 17-088, 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018) (denying a Rule 62.1 motion that was "simply asking this Court to decide the question on appeal").

11.  Plaintiff is requesting that this Court allow Plaintiff to assert five new claims, based on new evidence that was not—but should have been—available when Defendants made their filings in the district court.

## C. PLAINTIFF DESERVES BOTH FED. R. CIV. P. 60(B) AND 15(A)(2) RELIEF.

### 1. Plaintiff Deserves Leave To Plead Two New APA Claims By Amendment.

12. A motion to amend the complaint "can be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996); see also *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (same). Under Rule 60(b)(6), a judgment may be vacated for any "reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60(b)(6). The U.S. Supreme Court has held that a "motion to vacate the judgment in order to allow amendment of the complaint" constitutes such a justifying reason, so long as the movant meets the requirements of Rule 15(a). *Foman v. Davis,* 371 U.S. 178, 182 (1962). As the Foman rule was more recently articulated by the Fourth Circuit: "To determine whether vacatur is warranted . . . the court need not concern itself with either [Rule 59 or 60]'s legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). In other words, a court should evaluate a post judgment motion to amend the complaint under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quotation omitted).

13. Had the Defendants not withheld in both 2022 and 2023 the new 2024 evidence, Plaintiff (also — per 5 U.S.C. § 706) when the public officers Defendants originally produced documents pursuant to APRA in 2022, and in the district court as required by federal law based on their administration of Title IV-D, pursuant to Rule 11(b)(3), 18 U.S.C. § 4, 1503 and 1512(c)(2), the Plaintiff would have had the factual and legal basis required by Rule 11(b)(3) to seek leave to amend Plaintiff's Amended Complaint and add five new Administrative Procedure Act (APA) claims. Plaintiff now has the evidence Plaintiff needs to bring those five claims. Plaintiff was manifestly prejudiced by not being able to seek leave to plead those five new claims to the Court under Rule 15(a). None of the new claims would be futile. All claims are plausible, if not dispositive in favor of Plaintiff. Defendants, on the other hand, have demonstrated bad faith by not originally producing the federal record alteration and falsification evidence either as part of the administrative record in July 2023, or in response to Plaintiff's APRA-FOIA request for administrative procedures documents or in response to Plaintiff's APRA-FOIA request for administrative procedures documents on December 1, 2022.

## 2. Plaintiff Should Also Be Granted Rule 60(b)(2) Relief.

14. Rule 15(a) aside, Plaintiff is independently entitled to Rule 60(b)(2) relief under the "newly discovered evidence" rule. Fed. R. Civ. P. 60(b)(2). For the Court

to grant relief under this rule "the movant must show the evidence (1) existed at the time of the [judgment], (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir. 1990) (quotation omitted). Requirements (1) and (2) are easily met. There is no doubt that this evidence was discovered after the now-appealed judgment was issued.  There is no doubt that Plaintiff made several APRA-FOIA requests for administrative procedure documents to both the Department of Human Services and Rhode Island Judiciary Defendants in 2022 and 2023.  This evidence, particularly was of such magnitude that production of it earlier would have been likely to change the disposition of the case. Those new evidence show that in making systemic falsification of federal records to zero out interest in Title IV-D federal registry, federal interests are not only central to this case, but that Defendants are involved in systematic and systemic falsifying records in official proceedings systematic for the purpose of making false claims to both the United States and support obligors, in actions at debt at common law, and creating purposeful constitutional infirm Title IV proceeding forums to rig the process in a RICO scheme, that purposefully impair the availability of public Title IV-D actions in debt at common law proceeding records to federal auditors, pro se support obligors and to the public. This is not permitted under the APA. *Id*. at 43;

see also, e.g., *ATX, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1527 (D.C. Cir.

1994) ("The test is whether 'extraneous factors intruded into the calculus of

consideration' of the individual decisionmaker.") (quoting *Peter Kiewit Sons' Co.*

*v. United States Army Corps of Eng'rs,* 714 F.2d 163, 170 (D.C. Cir. 1983)); *Saget*

*v. Trump,* 375 F. Supp. 3d 280, 360 (E.D.N.Y. 2019) (finding an agency "decision

was arbitrary and capricious due to improper political influence"); *Connecticut v.*

*U.S. Dep't of the Interior,* 363 F. Supp. 3d 45, 65 (D.D.C. 2019) (APA claim

where "significant political pressure was brought to bear on the issue and the

Secretary may have improperly succumbed to such pressure"); *Tummino v. Torti,*

603 F. Supp. 2d 519, 544 (E.D.N.Y. 2009) ("An agency's consideration of some

relevant factors does not immunize the decision; it would still be invalid if based in

whole or in part on the pressures emanating from political actors.") (quotation

omitted).  The new evidence would have easily produced a different result.  In

addition, as noted above, had Plaintiff been in possession of the record falsification

record, in particular, Plaintiff would have sought to amend Plaintiff's Complaint

pursuant to Rule 15(a) to allege additional five APA claims, as alleged above

already. See e.g. *Jianhong Zhai v. Ning Liu,* No. 16-7242, 2017 WL 7156251, at *2

(C.D. Cal. Aug. 17, 2017) (instructing plaintiffs to "file a motion to set aside the

default judgment pursuant to Rule 60(b) in conjunction with a motion to

supplement the complaint pursuant to Rule 15(d)" in order to include new evidence in a pleading).

15. Plaintiff is moreover entitled to Rule 60(b)(3) relief for fraud, as the new evidence delineates in detail falsification of records for false claims in actions in debt at common law.

16.  Plaintiff is further entitled to Rule 60(b)(4) relief to vacate all void orders issued post appeal after November 17, 2023 by William Smith, as outlined above.

17. Plaintiff is additionally entitled to Rule 60(b)(6) relief to vacate based on the extraordinary egregious gross irreparable harm to Plaintiff that has been outlined in detail above.

18. Based on the above, the Court must disqualify William E. Smith and re-assign to hear this motion.

19.  The issues raised herein are hereby preserved on the record and is ripe for Article III review by the Supreme Court of the United States.

## VI. CONCLUSION

20. Plaintiff and this Court must be allowed to discover who and what actually caused to and to what extent, and how falsified Title IV-D records have been transmitted to the federal Central Registry, based on which how much federal

public funds has been knowingly falsely claimed to the United States to operate the

RICO scheme and to support obligors, and to the Plaintiff.  Oral Argument is

Requested.

Respectfully submitted,

Mary Seguin
Pro Se
/s/          *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: September 5, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing motion has been filed on September 5, 2024 electronically transmitted to the Clerk of the Court who serves via the Court's ECF filing system, on all registered counsel of record.

Mary Seguin
Pro Se
/s/          *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Exhibit A

# SPECIFICATION FOR OCSS CHANGE ORDER
## Auto Adjustment of Interstate Interest

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

## FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.

Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:28:47 Tuesday, December 13, 2022

```
12/13/22   11:28         C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00               CASE HISTORY             U824  PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
AGENT CONTACTED ME THAT NCP WANTS TO PAY ALL ARREARS TO OBTAIN PASSPORT. I____
CALLED CP PRIVATE ATTORNEY BARBARA GRADY TO ADVISE, AND TO DISCUSS IF CP_____
WANTS THE INTEREST PUT BACK ON THE CASE (███████████████████
██████████████████████████████████). WE REMOVED THE INTEREST WHEN_____
CASE WAS MADE UI WHEN WE WERE FILING TO TEXAS. ATTY GRADY CHECKED WITH CP_____
AND CP IS STATISFIED WITH THE LUMP SUM PAYMENT OF PRINCIPLE OF $104K +/-._____
AFTER CONFERENCE WITH MONIQUE BONIN AND FRANK DIBIASE, IT WAS DECIDED TO_____
REQUIRE PAYMENT IN MORE SECURE/LESS REVERSABLE FORM THAN CREDIT CARD, SO $____
WILL NEED TO BE WIRED OR BY BANK CHECK. AGENT WILL BE CONTACTED BACK BYNCP____
ASNCP WON'T GIVE PHONE NUMBER OR EMAIL ADDRESS. AGENT IS NOT EVEN SURE IF_____
NCP IS IN COUNTRY. INTEREST IS NOT INCLUDED IN AMOUNT THAT IS CONSIDERED_____
FOR PASSPORT PURPOSES IN ANY EVENT._____

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____

RL: 80  12 22 ABSP:          SEGUIN     MARY      CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK  GERO   K  PNL:
```

Case Number K200185219M
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4132704
Reviewer Maria O.

11:20:56 Tuesday, December 13, 2022

```
12/13/22   11:20        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00            CASE HISTORY               U024  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
BUSINESS OFFICE HAS PUT A FLAG ON DISBURSEMENTS SO WE CAN GET THIS SORTED____
OUT. ADVISED AGENT THAT WHILE THERE IS NO BODY ATTACHMENT FOR NCP ISSUED_____
FOR OCSS, THERE MAY BE A BODY ATTACHMENT THAT ISSUED PRIVATELY, SO WE DO_____
NOT WANT TO TELL THE NCP ANY MORE THAN THAT. NCP CAN CHECK WITH THE COURT.____
ATTY GRADY SAID THAT SHE DOES NOT RECALL WHETHER OR NOT BA ISSUED PRIVATEL____
Y FOR NCP. ONCE WE ARE SATISFIED THAT PAYMENT HAS BEEN MADE AND THE FORM_____
OF IT, WE CAN NOTIFY SYSTEMS TO RELEASE THE BLOCK ON PASSPORT._____

12/07/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
PER ATTY KDT AT CP REQUEST REINSTATING INTEREST_____

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSISDERED AND WANTED INTEREST_____
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTERES____


RL: 80  12 22 ABSP:        SEGUIN      MARY          CMD: _____
FNX: TRAC  D CLIENT:       MEYERSIEK   GERO    K     PNL:
```

Case 24913/3 Document: 00118186837 Page: 154 Date Filed: 09/06/2024 Entry ID: 6665855
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4132704
Reviewer Maria O.

11:29:01 Tuesday, December 13, 2022

| 12/13/22 11:29 | C A S E   T R A C K I N G | CSCL ASMXA2G1 |
|---|---|---|
| TRAC.00 | CASE HISTORY | U824 PROD |

STARTING DATE 09 01 2021
SELECTION COMPREHENSIVE CASE HISTORY

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSIDERED AND WANTED INTEREST
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTEREST THAT WAS REMOVED IN 10/18 BACK UP ON SYSTEM AND TO RUN INTEREST FORWARD.

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
SUSPEND DISBURSEMENT FLAG WAS CHANGED FROM B TO SPACE
          FROM CASE DATA PANEL

12/09/21 KATHLEEN MCCUSKER (KMM8623) ENTERED COMMENT
SUSPEND PASSPORT OFFSET WAS CHANGED FROM (BLANK) TO Y
FROM CASE ID:
          FROM OFST PANEL

12/09/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

RL: SO 12 22 ABSP:          SEGUIN     MARY      CMD:
FWX: TRAC  D CLIENT:        MEYERSIEK  GERO   K  PNL:

Case Number: 24-123134
Filed in Providence/Bristol County Family Court
Submitted: 9/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria G.

11:29:53 Tuesday, December 13, 2022

```
12/13/22   11:29        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00             CASE HISTORY              U824  PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/09/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
ACCOUNTING HAS CONFIRMED WITH TREASURY THAT THE $104,000 PAYMENT HAS BEEN
RECEIVED AND THAT THAT ACCOUNT WILL NOT ALLOW THE MONEY TO BE REVERSED OUT
OF THE ACCOUNT. BASED ON THAT INFORMATION, I ASKED SYSTEMS TO RELEASE THE
PASSPORT BLOCK. ACCOUNTING HAS GIVEN ME THE BANK INFORMATION THAT CAME IN
WITH THE WIRE TRANSFER. I AM REFERRING THIS TO T. FLYNN TO RESEARCH IF WE
CAN MATCH ACCOUNT TO NCP AND TO LIEN IT IF POSSIBLE. ATTY GRADY, WHO REP-
RESENTS CP HAS ASKED THAT THE PAYMENT BE MADE BY CHECK RATHER THAN ON THE
KIDSCARD. ACCOUNTING WILL DO THIS, BUT I TOLD ATTY THAT IT MAY TAKE A FEW
DAYS TO EFFECTUATE. ATTY GRADY ALSO SENT EMAIL TODAY CONFIRMING THAT SHE
REPRESENTS CP AND IS AUTHORIZED TO TAKE POSSESSION OF THE CHECK. CP IS
BLIND SO COMING TO THE OFFICE TO PICK UP IS A HARDSHIP AND ACCOUNTING IS
CONCERNED ABOUT MAILING THE CHECK.

12/09/21 WENDY FOBERT (WAF2343) ENTERED COMMENT

```
RL: 80  12 22 ABSP:          SEGUIN      MARY          CMD: _____
FXX: TRAC  D CLIENT:         MEYERSIEK   GERO     K    PNL:
```

ed in Providence/Bristol County Family Court Document: 00118186837    Page: 156    Date Filed: 09/06/2024    Entry ID: 6665855
ibmitted: 6/17/2023 10:13 PM
ivelope: 4132704
iviewer: Maria O
11:29:09 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00           CASE HISTORY                U824    PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP_____
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:_____
    TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)_____

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS_____
    58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY_____

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT_____
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75._____

```
RL: 80  12 22 ABSP:            SEGUIN      MARY          CMD: _____
FNX: TRAC  D CLIENT:           MEYERSIEK   GERO    K     PNL:
```

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00             CASE HISTORY              U824  PROD
STARTING DATE   09 01 2021
SELECTION   COMPREHENSIVE CASE HISTORY

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:
     TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS
     58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75.

RL: 80  12 22 ABSP:          SEGUIN      MARY          CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO     K    PNL:
```

Case Number: K20010521M
Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:29:13 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00           CASE HISTORY                U824  PROD
STARTING DATE   09 01 2021
SELECTION     COMPREHENSIVE CASE HISTORY

12/14/21 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
MAILED ADMIN. SUBPOENA AND REQ. FOR INFO TO BANK OF AMERICA_____

12/14/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
CONTACTED CP'S ATTY TO ADVISE THAT CHECK IS READY TO BE PICKED UP AND TO_____
PLEASE LET ME KNOW WHEN SHE WILL COME BY SO I CAN ALERT THE GUARD AT THE_____
DOOR AND BRING THE CHECK DOWN TO HER._____

01/04/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
SPOKE WITH MARIE AT BANK OF AMERICA REGARDING A SUBPOENA THAT I HAD SENT_____
TO THEM REGARDING THE NCP. SHE WILL NOTIFY AN EMPLOYEE THERE TO DO MORE_____
RESEARCH_____

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS____

RL: 80  12 22 ABSP:          SEGUIN      MARY        CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO    K   PNL:
```

Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Viewer: Maria O.

11:29:17 Tuesday, December 13, 2022

```
12/13/22    11:28       C A S E    T R A C K I N G        CSCL  ASMXA201
            TRAC.00            CASE HISTORY               U824  PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS
A CHECKING ACCOUNT WITH THEM. CREATED AN OFFLINE NOTICE OF INTENT TO LIEN
THE NCP'S ACCOUNT. FAXED AND MAILED COPIES TO BANK OF AMERICA TODAY. WILL
NOTICE NCP VIA MAIL AT THE TEN DAY MARK

02/21/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
MAILED AND FAXED OFFLINE PERFECTED NOTICE OF LIEN TO BANK OF AMERICA
REGARDING NCP.'S ACCOUNT. COPY MAILED TO NCP

03/04/22 SYSTEM (SYSTEM) ENTERED COMMENT
KWS1263 CREATED THE LIEN OF INSURANCE ASSETS FORM
ON 03/03/2022 FOR: PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE (PURE)
CLAIM NUMBER: TX027985

```
RL: 80  12 22 ABSP:
FNX: TRAC  D CLIENT:           SEGUIN      MARY          CMD: _____
                              MEYERSIEK    GERO    K     PNL:
```



12:38 PM Mon Dec 6

cseinfo.dhs.ri.gov

ADCB Internet Banking | Community Health Choice |... | Sign In - Community Healt... | Case Manager Portal | Offi... | RI OCSS Payment

RI.gov

R.I. Government Agencies | Privacy policy | Search RI.gov:

**State of Rhode Island**
**Office of Child Support Services**
DEPARTMENT OF HUMAN SERVICES

Home  My Profile  Contact Us  Site Map  Log

Welcome Mary Saggan

**Menu**
▼ Case Information
  ▶ Last 5 Payments
  ▶ Last 13 Months
  ▶ Current Orders/ Past Due Balances
  ▶ Court Dates/ Appointments
  ▶ Enforcement Actions
  ▶ PIN Lookup

Home > Current Orders and Past Due Balances

**Case Manager**

**Current Orders / Past Due Balances**

Custodial Parent: Gero K Meyersiek     CSE ID: 1689817

**Current Orders**

| Court Order | Amount | Frequency | Begin Date | End Date |
|---|---|---|---|---|
| Child Support | $218.00 | Weekly | 05/28/2012 | 06/30/2018 |
| Arrears | $21.80 | Weekly | 07/17/2012 | |
| Past Liability | $0.00 | None | | |
| Spousal Support | $0.00 | None | | |

⚠ Note: Medical orders and medical arrears are not listed on this screen.

**Past Due Balances**

| As Of | Total Due | Arrears | Interest | Spousal |
|---|---|---|---|---|
| 11/30/2021 | $93,214.56 | $93,214.56 | $0.00 | $0.00 |



cseinfo.dhs.ri.gov

RI.gov

R.I. Government Agencies | Privacy policy | Search RI.gov:

State of Rhode Island
**Office of Child Support Services**
DEPARTMENT OF HUMAN SERVICES

Welcome Mary Seguin

Home  My Profile  Contact Us  Site Map  Log Out

**Menu**
▼ Case Information
 ▶ Last 5 Payments
 ▶ Last 13 Months
 ▶ Current Orders/ Past
   Due Balances
 ▶ Court Dates/
   Appointments
 ▶ Enforcement Actions
 ▶ PIN Lookup

Home > Last 13 Months

Case Manager

## Last 13 Months

Custodial Parent: Gero K Meyersiek          CSE ID:

### Payment Made By The Non-Custodial Parent

| Period | Payment Made |
|--------|--------------|
| 12/2021 | $0.00 |
| 09/2018 | $6,461.95 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

# Recorded Phone Call

## Recording Name:

[Recording of phone conversations among John Langlois, Debra DeStefano and Mary Seguin recorded in Texas by Mary Seguin on October 5 2022]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

```
 1   Seguin:    'Cause all -- like, if -- if we base the practice on
 2              how things are done of -- based on what Mr. Langlois,
 3              John, is representing today, everyone should be able
 4              to look at that screenshot, that screen, and be able
 5              to rely on it, correct?
 6   DeStefano:  Well, yeah, I --
 7   Seguin:   And its accuracy, correct?
 8   DeStefano:  -- I mean, the agen- --
 9   Seguin:   So --
10   DeStefano:  The agency is going to have to prove it.  Yes.  The
11              agency is going to have to submit -- and, again, it --
12              it's difficult for me to know how relevant what you're
13              asking for is 'cause I don't know what the agency's
14              gonna submit yet, uh, to -- to support their position.
15              So --
16   Langlois: And can I -- can I just say, the reason I asked
17              earlier whether, uh, Mary had spoken to Carla after
18              she made the $104,000 payment was because there was a
19              change in circumstances immediately after that and I
20              don't know whether anyone in my agency has ever
21              explained that to Mary.
22   Seguin:   Wait -- wait -- wait a minute.
23   Langlois: (Inaudible - 00:01:10)
24   Seguin:   Wait a minute.
25   Langlois: (Inaudible - 00:01:11)
```

```
 1   Seguin:    Wait -- wait -- wait -- wait a minute.  Wait a minute.
 2              If there is --
 3   DeStefano:  Wait a minute.
 4   Seguin:    -- I'd like to get some documents of that.  Okay?  So
 5              -- so, again --
 6   DeStefano:  Mary, what do you --
 7   Seguin:    -- I've asked for, I think --
 8   DeStefano:  Oh.  Wait a minute --
 9   Seguin:    I -- I'm so sorry.  I'm --
10   DeStefano:  -- Mary.  I know -- I know what you asked for.  Let
11              me get to -- let me understand what John just said
12              before.  So, John, you're saying there was a change
13              subsequent to her making a payment --
14   Langlois: Correct.
15   DeStefano:  -- but before the Notice of Lien went out?
16   Langlois: Yes.
17   DeStefano:  Okay.  So --
18   Langlois: And can I -- can -- if I could just back up and
19              explain what happened.  Okay?
20   DeStefano:  Okay.
21   Seguin:    This --
22   Langlois: This is -- 99 percent of this is a misunderstanding.
23   DeStefano:  Okay.
24   Langlois: Okay?
25   Seguin:    Including --
```

| 1 | Langlois: (Inaudible - 00:01:51) |
| 2 | Seguin:   -- what's on the screenshot?  Is that a |
| 3 |          misunderstanding? |
| 4 | Langlois: Can -- can I speak without being shouted over? |
| 5 | Seguin:  Well, I'm -- |
| 6 | DeStefano:  Mary, let -- |
| 7 | Seguin:  I'm sh- -- |
| 8 | DeStefano:  Let -- |
| 9 | Seguin:  I'm flabbergasted really. |
| 10 | DeStefano:  Uh, Mary, you've got to let me -- |
| 11 | Seguin:  Sorry. |
| 12 | DeStefano:  -- listen -- |
| 13 | Seguin:  Sorry. |
| 14 | DeStefano:  -- to what the agency is gonna -- |
| 15 | Seguin:  I appreciate that. |
| 16 | DeStefano:  I mean, I know -- I only know that -- what's in |
| 17 |          front of me and I don't know everything that has |
| 18 |          happened in this case, but if -- if -- let me just |
| 19 |          listen to the agency and see what they have to say for |
| 20 |          -- |
| 21 | Seguin:  Sure. |
| 22 | DeStefano:  Go ahead, John. |
| 23 | Langlois: What -- what happened in this case is when, uh -- |
| 24 |          Mary's representative, her attorney, called us in late |
| 25 |          November 2021 and said there's a -- she wants her |

1    passport released.  What does she have to do to

2    release her passport?  They put her in touch with

3    Carla, who gave her the $104,000 number.  Where that

4    number came from, was the department attorney

5    contacted the custodial parent, Mr. Miurski (ph) or,

6    uh, Mr. -- I can't pronounce her last name.

7    Meyersiek.  So we contacted his attorney -- it wasn't

8    me, but it was someone in my office -- and said, "If

9    she's willing to make a $104,000 payment to pay off

10   the principal, would you agree to waive the $75,000" -

11   - I think it was $73,000 in arrears at that time?  He

12   said yes.  So Carla notified Mary that, if she paid

13   $104,000, it would be paid in full because he was

14   willing to waive the interest.  That was just the

15   principal.  What happened was, the day after Carla

16   spoke to Mary and told her to mail in the -- or to --

17   to wire the $104,000, the attorney for Mr., um,

18   Meyersiek contacted us again and said he changed his

19   mind, please put the interest back up on the system,

20   so we did.  That's his money.  The state is just

21   collecting for -- for this past child support that's

22   owed to him.  If he wants the arrears, he has every

23   right to ask for it.  So the number that was given to

24   her was correct on the day it was given to her.  The

25   arrears for $104,000.  Because when he was waiving the

| | |
|---|---|
| 1 | arrears, wen he changed his mind the next day, we put |
| 2 | the arrear -- I mean, interest back up on the system. |
| 3 | Seguin: I think -- |
| 4 | Langlois: He was waiving the interest, and when that interest |
| 5 | went back up on the system, that's why the system is |
| 6 | now saying she owes $73,000.  That's why, in March, |
| 7 | when the system saw that she had a, uh -- some kind of |
| 8 | a personal injury settlement or some kind of an |
| 9 | insurance settlement, we had -- we -- our system was |
| 10 | showing that she owed $73,000 in interest, so we |
| 11 | issued the lien.  But that's what happened, is when he |
| 12 | changed his mind the next day, and that's what messed |
| 13 | up the numbers.  So that's how this all happened.  It |
| 14 | was a pure misunderstanding.  I don't know whether |
| 15 | anyone has ever explained that to Mary, how that |
| 16 | happened. |
| 17 | DeStefano: Okay.  Mary, did anybody ever explain that to you |
| 18 | before? |
| 19 | Seguin: No.  No one ever -- |
| 20 | DeStefano: That the system has just -- just -- |
| 21 | Seguin: -- explained any of that, and I -- |

TRANSCRIBER'S CERTIFICATE

I, Laurel Keller, do hereby certify that I have listened to the recording of the foregoing; further that the foregoing transcript, Pages 1 through 5, was reduced to typewritten form from a digital recording of the proceedings held October 5, 2022, in this matter; that Participant Mary Seguin has stated John Langlois and Debra DeStefano present were included in this recording; and that the foregoing is an accurate record of the proceedings as above transcribed in this matter on the date set forth.

DATED this 20th day of June, 2024.

*Laurel Keller*

Laurel Keller

Ditto Transcripts
3801 E. Florida Ave.
Suite 500
Denver, CO 80210
Tel: 720-287-3710
Fax: 720-952-9897

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

**Supreme Court**

No. 2023-278-A.

|                                                    |   |
|----------------------------------------------------|---|
| Mary Seguin                                        | : |
| v.                                                 | : |
| Rhode Island Department of Human Services<br>Office of Child Support Services. | : |

# O R D E R

The appellant's "Second Motion to Repeal Rule 5 of the Rhode Island Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Second Motion to Stay Proceedings Until Repeal of Rule 5 of Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Motion to Compel and Comply with the Court's Order", as prayed, is denied.  This Court's November 27, 2023 Order stated that, to extent the appellant needed any materials "***related to this matter***" during the pendency of this appeal, the Clerk's Office was directed to make reasonable efforts to provide her with the requested materials.  Pursuant to that Order, the appellant is only permitted to request materials from the Clerk's Office that have been filed in her Superior Court case (PC 22-07215) or in this appeal.

The appellant's "Third Motion for an Extension of Time to File Statement of the Case and a Summary of the Issues Proposed to be Argued" is granted.  The appellant shall either file her Rule 12A statement within ***thirty (30) days*** of the date of this Order or she

may seek to hold this appeal in abeyance until she is permitted remote access to case materials as a pro se litigant which access we estimate will be in effect by the end of the year.

Chief Justice Suttell did not participate.

Justice Lynch Prata did not participate.

Entered as an Order of this Court this *29th* day of *March 2024.*

By Order,


/s/ *Meredith A. Benoit*
Clerk

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/172024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan
No. 1313    Document: 00118186837    Page: 171    Date Filed: 09/06/2024    Entry ID: 6665855

STATE OF RHODE ISLAND                    SUPREME COURT

MARY SEGUIN
    *Appellant*

VS.                                      C.A. NO. SU-2023-0278-A

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES *et al.*
    *Appellees*

### **APPELLANT'S MOTION FOR PRELIMINARY INJUNCTION**

Texas Appellant, MARY SEGUIN, proceeding self-represented ("pro se"),

respectfully moves the Court for a preliminary injunction to enjoin the Court, also

known as the Rhode Island Supreme Court, in its ministerial capacity as the Rhode

Island courts rules promulgator, administrator and digital court implementor to

immediately enjoin from enforcing (1) Rhode Island Supreme Court promulgated

and administered Rule 5 that denies remote access to judge-created laws and all

digital court information (except for the docket sheet) to the public, pro-se litigants

and federal agency or federal auditors in Rhode Island's digital courts; (2) enjoin

from enforcing and ministering grossly structurally defective digital courts that

operates TWO digital case management systems and TWO sets of court clerks,

effectively, TWO court systems within the court that forces pro-se and all other

court users to use Odyssey while executive administrative agencies, such as the

Appellee Department of Human Services, file through an unnamed LEGACY case

management system where agency filings are (a) only visible to themselves and the

judge, (b) are invisible to pro se litigants, the public and the Virtual Clerk in

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 172    Date Filed: 09/06/2024    Entry ID: 6665855

Odyssey, (c) are not digitally nor electronically noticed to the pro-se litigant, (d) the agencies' filings are managed by a separate "reciprocal court clerks" that fail to coordinate with the main court clerks who manage everyone else's filings through Odyssey, (d) that result in agency proposed orders automatically entered and signed by a judge even though objections are filed by defendants through Odyssey without a hearing thereby unconstitutionally structurally prejudiced to advantage Rhode Island's agencies in violation of *inter alia* Due Process and Equal Protection Clauses; (3) enjoin Appellees and this Court's ministered Rhode Island Family Court forum from structurally depriving defendants of United States Constitutional Seventh Amend rights to trial by jury in civil actions at law and civil actions in debt at common law (ordered support are debts (including debts signed over to the State in welfare cases) with the federal Title IV legal framework in Title IV proceedings – this Court's ministered Domestic Family Relations Rule 38 that traditionally provide for preserving the right for jury trial does not exist and is "reserved"; (4) enjoin Appellees and this Court's ministered Rhode Island Family Court forum from structurally depriving defendants of Rhode Island constitutional right to jury under Section 15 right to jury trial shall be inviolate in civil actions at law and civil action in debt at common law (ordered support are debts (including debts signed over to the State in welfare cases) within the federal Title IV llegal framework in Title IV proceedings.  Appellant is unconstitutionally denied access

to judge-created laws in Rhode Island's digital courts and hereby reserves and

preserves Appellant's right to amend and supplement this motion with Rhode

Island judge-created laws created by the Superior Court judges, Family Court

judges, and Supreme Court judges that are unpublished and freely publicly

accessible on all issues raised herein.  This State's constitution moreover

guarantees the right to justice and entitles the Appellant to the requested remedy

under Section 5 that guarantees Appellant the right to "obtain justice freely,

without purchase, completely and without denial, promptly and without delay,

comformably to the laws."  This Court in its ministerial capacity promulgating and

administering the rules of the courts and the structures of the digital courts

purposefully and knowingly violate established principles of the Government

Edicts Doctrine, the First Amendment, Due Process and Equal Protection,

Privileges and Immunities Clauses, the Seventh Amendment, and the Supremacy

Clause, as well as this state's constitution guarantees in Section 5 and Section 15.

In support of this motion for preliminary injunction, Appellant incorporates all

motions files before this Court requesting access to judge-created laws and court

information in Rhode Island's digital courts, that have been acknowledged by this

Court as "a problem" and won't be resolved until the "end of the year," and

simultaneously denied immediate relief in violation of the First Amendment, Due

Process, Equal Protection, Privileges and Immunities Clauses and the Government

Case Number: SU-2023-0278-A
Filed in Supreme Court 1313
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 174    Date Filed: 09/06/2024    Entry ID: 6665855

Edicts Doctrine, violating constitutional guarantees for prompt remedy without delay and purchase, and contravening constitutional requirement to comform to the laws. The laws require this Court to minister the judicial branch's court architecture and basic structure to conform to the Laws and to the Constitution, not structurally rig proceedings to the advantage of agencies, such as the Appellees. Appellant has raised this fundamental structural issue in both lower courts (in superior court incorporating the Administrative Procedure Act over Title IV administration by Appellee, and in the family court incorporating compliance to Title IV in Title IV proceedings) to no avail, saying they can't do anything about it (denying remedy) and to go and ask the Rhode Island Supreme Court for remedy. Appellant hereby moves this Court now for the above requested remedy to enjoin the aforesaid structural bias promulgated, implemented and ministered by this Court – in other words, the lower courts point to THIS Court for unconstitutional structural bias causation - and preserves this Rhode Island Supreme Court fundamental *ministerial* unconstitutional court structural bias for United States Supreme Court review – Appellant preserves the issue of structural bias and raises before the Court that it is ripe for Article III review. Appellant raises before the Court that the Court's ministered structural bias functions to CONCEAL *criminal* agency administration of federal programs calculated to make false claims in constitutionally infirm forums that deny the fundamental right to jury trial in civil

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 175    Date Filed: 09/06/2024    Entry ID: 6665855

actions at common law, to wit the Appellees' criminal policy and procedure to

falsify interstate interest support records zeroing out Rhode Island's illegal 12%

compound interest disallowed by 42 U.S.C. sec. 654(21)(A) then electronically

transmits the falsified zeroed out interest support records to the Federal Central

Registry within the Title IV legal framework, while falsely certifying the falsified

support record and falsely transmitting a falsified zeroed out interest support order

to the Federal Central Registry and to the Receiving State, in this case, to Texas,

thus damaging and destroying the integrity of both the Federal Central Registry

records and the Receiving State (this case Texas) Registry records within the Title

IV legal framework – that encompassed the calculation to ultimately make false

claims to the United States Title IV federal program for funding in the attempt to

CONCEAL the 12% compound interest that facially contravenes 42 U.S.C. sec.

654(21)(A) for the purpose of receiving TANF and Title IV-D 66% funding that

the Appellee agency persons know(s) they are not eligible for when they falsify

records, zero out the unlawful 12% compound interest and "collect debt" in actions

in debt at common law in constitutionally infirm forums like this Court's

ministered family court that operates the illegal aforesaid structurally biased two

digital case management systems that further deprives access to court information

and judge-created laws to pro se litigants and the public, as well as deprive

defendants the right to jury trial in actions in debt at common law, and which the

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan
Document: 00118186837    Page: 176    Date Filed: 09/06/2024    Entry ID: 6665855

Appellee agencies knowingly scheme to <u>conceal</u> this penalty incurring scheme from federal auditor detection under 42 U.S.C. sec. 655.  This Court's ministering and enforcement of Rule 5 effectively functions to CONCEAL from and obstruct federal auditors access to judge-created law Title IV proceeding documents that involve documented evidence of the falsification of Title IV records by Appellees routinely zeroing out Rhode Island's unlawful 12% compound interest in Title IV interstate support cases, false certifications of Title IV compliance, routinely falsifying support orders with zeroed out interest, routinely transmitting falsified records to the Federal Central Registry and routinely transmitting falsified records to the receiving states' registry carrying false certifications of regulatory compliance within the Title IV legal framework.  As such, Appellant incorporates the Administrative Procedure Act that is triggered upon injury to the Appellant. This Access to Public Records Act action over the Appellees' interstate administration of the Title IV program incorporates by definition the Administrative Procedure Act.  The Appellant submitted the public records request to the Appellee agency on December 1, 2022, at which time there was no pending action initiated by the Appellees.  The Appellees' public records written denial on December 13, 2022 relied on alleged "unsegregable" reasons, not impending litigation.  The Appellee agency Chief Counsel Ms. Martinelli's written public records denial letter dated December 16, 2022 also relied on unsegregable reasons

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

SJC-13313    Document: 00118186837    Page: 177    Date Filed: 09/06/2024    Entry ID: 6665855

not impending litigation, notifying Appellant in writing of Appellant's right to

appeal under the Access to Public Records Act.   Mr. Coleman's written claims in

this proceeding contravenes his boss Ms. Martinelli's written reasons for record

denial.  Either Mr. Coleman is lying on July 31, 2024 before this Court or his boss

Ms. Martinelli is lying, in writing, dated December 16, 2022.  Either way, the

Appellee is lying, in writing, before this Court and/or committing wire fraud

interstate to Texas lying about public record denials under both open records laws

and the Administrative Procedure Act governing Appellee administration

procedures of the federal Title IV program, that it turns out, involves routine

interstate criminal fraud, false claims, obstruction, and obstruction of federal

auditors.   This state's open government laws never differentiate textually between

Title IV records and other federal program records, conferring the family court

jurisdiction over public access to Title IV records – instead jurisdiction is

conferred to the Superior Court over ALL records access denial appeals

irrespective of program, agency or nature.  No litigation was pending at the time of

APRA request and Appellee counsel Ms. Martinelli never stated impending

litigation as a basis for denial on December 16, 2022, instead stating in writing

"unsegregable" as the reason.  The Superior Court structurally is required to review

the disputed records to make a determination, not defer to Appellee agency

opinions, which is controlled by new Supreme Court case law, ***Loper Bright***

Case Number: SU-2023-0278-A
Filed in Supreme Court 1313
Submitted: 8/17/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 178    Date Filed: 09/06/2024    Entry ID: 6665855

***Enterprise Inc. vs. Raimondo***, Slip opinion (2024) conclusively overturning the

Chevron deference.   In support of this motion, Appellant incorporates Appellant's

Rule 12A Statement, all of Appellant's filed motions to repeal Rule 5 and grant

access to judge-created laws, motion to stay, and the Court's orders to date in this

matter, as fully alleged and raised herein.  Moreover, Appellant states the follows:

## New Controlling United States Supreme Court Case Law

### Overturn of the Chevron Deference

1. This Court's ministering of the biased court structure rigged in favor of

   the Appellee agency, replete with family court structure operating the

   aforesaid said biased and illegal TWO digital case management systems

   that blinds the pro se litigant, fails to notice the pro se litigant and

   coupled with access denial to court information and judge-created laws

   effectively functions as this Court's deference to the agency on steroids,

   that implements and enforces and administers structural biased rigged in

   favor of the Appellee agency.  This Court's ministerial bias in gross

   deference to the Administrative State is ripe for United States Supreme

   Court review of this State's administration of federal Title IV that

   incorporates the Administrative Procedure Act over the subsequently

   enacted Title IV.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 179     Date Filed: 09/06/2024     Entry ID: 6665855

2. ***Lopes Bright Enterprises Inc. vs. Raimondo*** (Slip Opinion) (2024) overturned the Chevron deference, and gives Article III courts independent review of all agency administrative actions of federal programs. This Court's ministerial administration of structurally biased state courts involving federal Title IV programs in favor of the agency that de facto functions to conceal from the public and support obligors and conceal from federal auditors court documents and otherwise records evidence relating to the Appellee agency's routine falsification of Title IV records zeroing out Rhode Island's unlawful 12% compound interest in interstate cases in order to make false claims is unconstitutional and Appellant is entitled under the Constitution to remedy upon injury. Appellant preserves the issue for United States Supreme Court review of Appellee and court structural ministering by this Court triggering 18 U.S.C. § 4 and incorporates 18 U.S.C. § 1512, 18 U.S.C. § 666, 18 U.S.C. § 241, 18 U.S.C. § 1516.

3. ***Corner Post, Inc. v. Board of Governors of the Federal Reserve System***, 603 U. S. \_\_\_\_ (2024) makes clear that Appellant is entitled to remedy upon injury by the aforesaid Court ministered structural defect and the Appellee's corrupt administration of a federal program, including covering up and denying access to Appellees' routine

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 180     Date Filed: 09/06/2024     Entry ID: 6665855

falsification of interstate Title IV support records under the
Administrative Procedure Act  that requires disclosure of records.
Appellant is injured now and continues to seek denied remedy.
Appellant's entitlement to remedy upon injury is moreover guaranteed
by the Rhode Island constitution Section 5.  This issue of remedy denial
thus far is preserved for United States Supreme Court review.  Appellant
seeks remedy now that conform to the laws, that this Court
acknowledges "is a problem" but denies Appellant the requisite
immediate remedy to irreparable harms by the Court's ministerial acts.
Appellant is entitled to access Rhode Island's judge's created laws
relating to access to all Title IV public records, Appellee procedures
zeroing out interest, procedures falsifying and certifying zeroed out
interest in interstate Title IV support cases, and the procedures relating
to the transmission of falsified zeroed out interest records to the Federal
Central Registry and the receiving state that is moreover governed under
the Administrative Procedure Act.  This Court's ministerial court
information and judge-created laws access denial as it relates to what the
judges are up to in Rhode Island as it relates to agency administration of
federal programs requires immediate First Amendment injury remedial
access.  This issue is preserved for Article III review.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

COVID 1313   Document: 00118186837   Page: 181   Date Filed: 09/06/2024   Entry ID: 6665855

4. On June 28, 2024, the United States Supreme Court reinforced in

***Fischer v. U.S.***, 603 U. S. _____ (2024), that 18 U.S.C. § 1512(c)(1) and

Section 1512(c)(2) cover criminal conduct altering, fabricating and

falsifying U.S. Government Federal Central Registry computer records

by the State Appellees and Appellee client Gero Meyersiek.  On page 9,

the U.S. Supreme Court held "…subsection (c)(2) makes it a crime to

impair the availability or integrity of records, documents, or objects used

in an official proceeding in ways other than those specified in (c)(1). For

example, it is possible to violate (c)(2) by creating false evidence—

rather than altering incriminating evidence. See, e.g., *United States v.*

*Reich*, 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.) (prosecution

under subsection (c)(2) for transmitting a forged court order). Subsection

(c)(2) also ensures that liability is still imposed for impairing the

availability or integrity of other things used in an official proceeding

beyond the "record[s], document[s], or other object[s]" enumerated in

(c)(1), such as witness testimony or intangible information. See, e.g.,

*United States v. Mintmire*, 507 F. 3d 1273, 1290 (CA11 2007)

(prosecution under subsection (c)(2) based in part on the defendant's

attempt to orchestrate a witness's grand jury testimony)." *Id.*  It is plain

that the district court's description of "state enforcement" that

Appellant's newly-discovered evidence proves fundamentally involves
the *wholesale policy-prescribed* criminal alteration, fabrication and
falsification of federal computer government records and State
Appellees' false certification of federal law compliance that are
calculated to make false claims to the United States for billions of
dollars of federal funding Rhode Island is not eligible for, conceal from
federal auditors Rhode Island's policy-prescibed wholesale criminal
falsification of federal Central Registry support obligation records and
conceal from federal auditors Rhode Island's false certification of
federal law compliance, in violation of 18 U.S.C. § 1512(c)(1) and
(c)(2), and to make false claims to interstate support obligors for
unlawful interest debt and false claims for waived interest does not only
go towards the issue of Younger Abstention, but show Appellant's
reporting to the United States judges under 18 U.S.C. § 4 the State
Appellees' and Appellee Gero Meyersiek's violate a slew of multiple
federal criminal laws discussed by ***Fischer v. U.S.,*** 603 U. S. _____
(2024), such as 18 U.S.C. § 1516 (impairing or obstructing federal
audit),  18 U.S.C. § 1503(a), for example, makes it a crime to "corruptly,
or by threats or force, or by any threatening . . . communication,
endeavor[] to influence, intimidate, or impede" any juror or court

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 183     Date Filed: 09/06/2024     Entry ID: 6665855

officer"; "sub-sections (a)(2)(C), (b)(3), and **(d)(2) criminalize various means of preventing someone from <mark>giving a judge</mark> or law enforcement officer <mark>information relating to the commission or possible commission of a federal offense</mark>**.  And subsections (d)(3) and (4) make it a crime to harass someone and thereby dissuade them from arresting or prosecuting a person alleged to have committed a federal offense. <mark>*None of these crimes requires an "official proceeding*</mark>." *Id.* (emphasis added).  "For a person to have violated (c)(2), "an official proceeding need not be pending or about to be instituted." §1512(f )(1). And interference with an arrest or with communications to authorities about federal offenses could very well obstruct the initiation of future official proceedings." *Id.* Applying the Supreme Court's rulings of obstruction acts in *Fischer* to this matter, the record in this matter shows State Appellees, counsel for State Appellees (a state official who knows, aids and abets in the furtherance of the State Policy to falsify federal records to impair their integrity that is calculated to aid and abet Rhode Island to make false claims to the United States for federal funds Rhode Island is not eligible for and to conceal the federal penalty-incurring criminal conduct under 42 U.S.C. § 655) and Appellee Title IV client Gero Meyersiek engaging in criminal activities discussed by the

Supreme Court in *Fischer*. The Appellees by policy conceal Rhode Island's unlawful 12% compound interest by removing it thereby falsifying federal Central Registry records that impairs the records' integrity. After removing the interest that all users relying on the integrity of the records rely on record truthfulness, the Appellees then represent to the support obligor, the Appellant, that interest was waived. After removing the interest from the record, State Appellees further falsely certify to federal authorities and federal auditors that Rhode Island is federal law compliant. Then, the Appellees put back on the *state* register the unlawful 12% compound interest, then fraudulently lien Appellant's Texas properties. The State Appellee John Langlois again states in 2022 in Rhode Island's Title IV enforcement agency appeal proceeding that Appellee Gero Meyersiek waived the interest. See attached Exhibit I Transcript of audio recording Appellant made in Texas on October 5, 2022 of telephone call Appellant had with Appellee John Langlois, Esq., Deputy Chief Counsel of the Appellee Office of Child Support Services, and Debra DeStefano, Rhode Island Executive Office of Health and Human Services Appeals Officer in a Title IV enforcement agency appeal proceeding in agency Appeal No. 22-2116

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Copy 313    Document: 00118186837    Page: 185    Date Filed: 09/06/2024    Entry ID: 6665855

that occurred on October 5, 2022, at the Title IV-D enforcement Appeal

telephonic Hearing, pages 2-5:

"DeStefano: -- Mary. I know -- I know what you asked for. Let

11 me get to -- let me understand what John just said

12 before. So, John, you're saying there was a change

13 subsequent to her making a payment --

14 Langlois: Correct.

15 DeStefano: -- but before the Notice of Lien went out?

16 Langlois: Yes.

17 DeStefano: Okay. So --

18 Langlois: And can I -- can -- if I could just back up and

19 explain what happened. Okay?

20 DeStefano: Okay.

21 Seguin: This --

22 Langlois: This is -- 99 percent of this is a misunderstanding.

23 DeStefano: Okay.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

CD-2024-1313    Document: 00118186837    Page: 186    Date Filed: 09/06/2024    Entry ID: 6665855

24 Langlois: Okay?

25 Seguin: Including --

Page 3

1 Langlois: (Inaudible - 00:01:51)

2 Seguin: -- what's on the screenshot? Is that a

3 misunderstanding?

4 Langlois: Can -- can I speak without being shouted over?

5 Seguin: Well, I'm --

6 DeStefano: Mary, let --

7 Seguin: I'm sh- --

8 DeStefano: Let --

9 Seguin: I'm flabbergasted really.

10 DeStefano: Uh, Mary, you've got to let me --

11 Seguin: Sorry.

12 DeStefano: -- listen --

13 Seguin: Sorry.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 187    Date Filed: 09/06/2024    Entry ID: 6665855

14 DeStefano: -- to what the agency is gonna --

15 Seguin: I appreciate that.

16 DeStefano: I mean, I know -- I only know that -- what's in

17 front of me and I don't know everything that has

18 happened in this case, but if -- if -- let me just

19 listen to the agency and see what they have to say for

20 --

21 Seguin: Sure.

22 DeStefano: Go ahead, John.

23 Langlois: What -- what happened in this case is when, uh --

24 Mary's representative, her attorney, called us in late

25 November 2021 and said there's a -- she wants her

Page 4

1 passport released. What does she have to do to

2 release her passport? They put her in touch with

3 Carla, who gave her the $104,000 number. Where that

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 188     Date Filed: 09/06/2024     Entry ID: 6665855

4 number came from, was the department attorney

5 contacted the custodial parent, Mr. Miurski (ph) or,

6 uh, Mr. -- I can't pronounce her last name.

7 Meyersiek. So we contacted his attorney -- it wasn't

8 me, but it was someone in my office -- and said, "If

9 she's willing to make a $104,000 payment to pay off

10 the principal, would you agree to waive the $75,000" -

11 - I think it was $73,000 in arrears at that time? He

12 said yes. So Carla notified Mary that, if she paid

13 $104,000, it would be paid in full because he was

14 willing to waive the interest. That was just the

15 principal. What happened was, the day after Carla

16 spoke to Mary and told her to mail in the -- or to --

17 to wire the $104,000, the attorney for Mr., um,

18 Meyersiek contacted us again and said he changed his

19 mind, please put the interest back up on the system,

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 189    Date Filed: 09/06/2024    Entry ID: 6665855

20 so we did. That's his money. The state is just

21 collecting for -- for this past child support that's

22 owed to him. If he wants the arrears, he has every

23 right to ask for it. So the number that was given to

24 her was correct on the day it was given to her. The

25 arrears for $104,000. Because when he was waiving the

Page 5

2   arrears, when he changed his mind the next day, we put

2 the arrear -- I mean, interest back up on the system."

Then, after that agency proceeding was dismissed, Appellant on December 1,

2022 requested the Title IV debt collection procedure  records in general

jurisdiction Superior Court under this state's open records act that incorporates the

federal Administrative Procedure Act.  After the Appellant initiated the open

records act record denial appeal in the Superior Court, the State Appellees initiated

a judicial proceeding in the limited jurisdiction state family court that utterly lacks

jurisdiction to put back on the federal computer system the unlawful 12%

compound interest that Rhode Island Office of Child Support Services removes

(and modifies the court order/falsified court order) from the Federal Central

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

No. 1313    Document: 00118186837    Page: 190    Date Filed: 09/06/2024    Entry ID: 6665855

Registry computer system, by Rhode Island's official criminal State Policy and
that Appellee nonwelfare client Gero Meyersiek waived – under Title IV and all
applicable federal (preemption) law, the limited jurisdiction state family court
lacks jurisdiction to oblige Rhode Island State Appellees and Appellee client Gero
Meyersiek.  As the United States Supreme Court warns corrupt officials on July 1,
2024, "The President is not above the law." *Trump v. U.S*., 603 U. S. ____ (2024).
Nobody is above the law, the United States Supreme Court warned, much less the
Appellees in Rhode Island, whose conduct by conclusive evidence have been
shown to be criminally corrupt falsifying federal records for the purpose of making
false claims, and reveal a sense of being above the law for decades, in this matter
alone, from 1996 to the present, and is on-going.   Similarly, the Court's
ministerial acts described herein as it relates to ministering the structurally
defective courts that favors the Appellee agency, conceals judge-created laws
relating to the Appellee criminal administration of Title IV and deprives defenders'
right to jury trial in actions in law and in debt at common law, are not above the
law.  the state family court lacks jurisdiction to unlawfully establish 12%
compound interest that violates the preemptive 42 U.S.C. § 654(21)(A), or
establish the 12% compound interest retroactively that violates 42 U.S.C. §
666(9)(C), or enforce unlawful 12% compound interest that is by Rhode Island's
State Policy always and "automatically" removed from the Federal Government

Central Registry computer system records, including transmitting modified support orders (falsified court orders in violation of 18 U.S.C. § 1512(c)(2) see June 28, 2024 United States Supreme Court holding, ==*Fischer v. U.S*==., 603 U. S. \_\_\_\_ (2024), citing ==*United States v. Reich*,== 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.) (prosecution under subsection (c)(2) for trans mitting a forged court order). "Subsection (c)(2) also ensures that liability is still imposed for impairing the availability or integrity of other things used in an official proceeding be yond the "record[s], document[s], or other object[s]" enumerated in (c)(1), such as witness testimony or intangible information. See, e.g., ==*United States v.*== ==*Mintmire*==, 507 F. 3d 1273, 1290 (CA11 2007) (prosecution under subsection (c)(2) based in part on the defendant's attempt to orchestrate a witness's grand jury testimony)") in order to conceal unlawful 12% compound interest from federal auditors (in violation of 18 U.S.C. § 1216, see *Fischer v. U.S., Id*.), the State Judiciary Appellees exercise the ministerial function of establishing "court rules" governing the digital courts the state judiciary implemented calculated to conceal from the public, from federal authorities, from pro-se litigants any and all judge-created laws (and the respective syllabi that show the State Appellee Department of Human Services and Office of Child Support routinely establishing and administering and enforcing unlawful 12% compound interest enabled in the state family court of limited jurisdiction that is by Rhode Island state policy criminally

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

1313    Document: 00118186837    Page: 192    Date Filed: 09/06/2024    Entry ID: 6665855

removed from the Federal Central Registry, to which the Appellees transmit forged

falsified self-modified court orders and whenever certifications of federal law

compliance is performed) created by the state family court that lacks jurisdiction to

preempt Title IV of the Social Security Act.  *See*, ***Trump vs. U.S.***, 603 U. S. ____

(2024) (reinforcing and directing Special Prosecutor Jack Smith to apply *Fischer*

*vs. U.S.*, 603 U. S. ____ (2024); ***Fischer vs. U.S.***, 603 U. S. ____ (2024); ***LOPER***

***BRIGHT ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF***

***COMMERCE, ET AL***., No. 22-451 \*Together with No. 22–1219, ***Relentless, Inc.,***

***et al. v. Department of Commerce***, et al.; ***Corner Post, Inc. v. Board of Governors***

***of the Federal Reserve System***, 603 U. S. ____ (2024)

> THIS COURT MINISTERS STRUCTURALLY
> CONSTITUTIONALLY INFIRM FORUMS THAT DEPRIVE THE
> SEVENTH AMENDMENT TRIAL BY JURY RIGHT AND R.I.
> CONSTITUTION SECTION 15 JURY TRIAL RIGHT IN DEBT
> ENFORCEMENT PROCEEDINGS THAT THE LIMITED
> JURISDICTION FAMILY COURT LACKS THE AUTHORITY TO
> CALL – APPELLANT MOVES TO ENJOIN APPELLEES AND THE
> COURT FROM MINISTERING FORUMS THAT DEPRIVE JURY
> TRIAL RIGHTS IN LEGAL ACTIONS IN DEBT AT COMMON LAW

5. the United States Supreme Court's June 28, 2024 ruling in ***S.E.C. v.***

   ***Jarkesy***, 603 U.S.___(2024), that upheld the defendant's right to a trial

   by jury, not just a judge as in the limited jurisdiction family court, in

   debt enforcement proceedings.  "Actions by the Government to recover

civil penalties under statutory provisions," we explained, "historically ha[d] been viewed as [a] type of action in debt requiring trial by jury" quoting ==***Tull v. U.S***==., 481 U.S., at 418-419 (1987).

6.   When the state family court adjudicates, there are no juries.  R.I.G.L. 8-10-3 confers no authority to the limited jurisdiction state family court to call juries.  In these proceedings, the above-mentioned unconstitutional structural defect already violates the due process mandate Congress legislated in 42 U.S.C. § 666.  The Fifth Circuit applied a two-part test from *Granfinan ciera, S. A. v. Nordberg*, 492 U. S. 33 (1989), the panel held that the agency's decision to adjudicate the matter in-house violated Jarkesy's and Patriot28's Seventh Amendment right to a jury trial. 34 F. 4th, at 451. First, the panel determined that because these SEC antifraud claims were "***akin to [a] traditional action[] in debt,***" a jury trial would be required if this case were brought in an Article III court. Id., at 454; see id., at 453–455. The Fifth Circuit panel concluded that case should have been brought in federal court, where a ***jury could have found the facts***. Based on this Seventh Amendment violation, the panel vacated the final order. *Id*., at 459. It also identified two further constitutional problems. First, it determined that Congress had violated the non delegation doctrine by authorizing the SEC, without adequate guidance,

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

COSJ-1313   Document: 00118186837   Page: 194   Date Filed: 09/06/2024   Entry ID: 6665855

to choose whether to litigate this action in an Article III court or to adjudicate the matter itself. See *id*., at 459–463. The panel also found that the insulation of the SEC ALJs from executive supervision with two layers of for-cause removal protections violated the separation of powers. See *id*., at 463–466.

7. Interest on overdue support claims are traditional actions in debt, and a jury trial would be required if this case were brought in an Article III court.  The state family court is a constitutionally infirm forum for actions in debt that violate Seventh Amendment right and to Section 15 of the R.I. Constitution guarantee to jury trial at common law.  This Court's ministering of Title IV proceedings for actions in debt at common law in constitutionally infirm forums that deprive the defendant of the Seventh Amendment right to jury trial and Section 15 of the R.I. constitution's right to jury trial at common law must moreover be immediately enjoined.  The Appellees' knowing deception against support obligors in actions in debt at common law in constitutionally infirm forums like the family court that deprive defendants' right to jury trial at common law must moreover be immediately enjoined.  *S.E.C. vs. Jarkesy*, 603 U.S.___(2024) is controlling, and Appellant preserves and reserves this issue (Appellant is denied access by this Court to review

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 195    Date Filed: 09/06/2024    Entry ID: 6665855

R.I. judge created laws in all Rhode Island courts on the right of jury

trial and further reserves the right to supplement once access is granted

by the end of the year, per this Court's orders) that is ripe for United

States Supreme Court review. A jury would have found the facts that

the Appellees actively sought to conceal, obstruct access to, and impair

access to documents relating to Appellee falsification of Title IV

records, zeroing out Rhode Island's unlawful 12% compound interest

that facially violate 42 U.S.C. sec. 654(21)(A) in order to make false

claims. The Court's ministerial acts depriving Title IV support obligors

in Title IV proceedings that deprive the right to trial by jury to find all

triable facts de facto functions to aid and abet agency Appellees' making

false claims to support obligors and the United States. A jury would

have found triable facts surrounding the Appellee agency removal or

zeroing out Rhode Island's 12% compound interest, then stating to

support obligors that the $0 interest showing resulting from the removal

means interest was waived, then clandestinely illegally put the interest

back on the system to make false claims. This fraudulent alteration of

federal Title IV interest record by Appellees in constitutionally infirm

and grossly structurally defective lower state courts implemented and

ministered by the Rhode Island Supreme Court must be enjoined

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 196    Date Filed: 09/06/2024    Entry ID: 6665855

immediately, must be remedied and is ripe for United States Supreme
Court review.  The Court's ministerial acts and the Appellees moreover
violate Separation of Powers, so that the Court denies immediate remedy
that conform with the law under both the U.S. Constitution and R.I.
constitution.  This Court's denial of remedy concerning federal interstate
programs that involve egregious criminal activity thus far is ripe for
Article III review.

8.  Appellant incorporates this Court's four orders dated November 27,
2023, January 19, 2024, March 29, 2024 and June 7, 2024 and all
motions filed before this Court to date by reference as proof of
Appellant-raised and preserved but unremedied fundamental structural
defect issues prejudicing not just this appeal forum but all state lower
court structural defects implemented and ministered against the
Appellant that violate core tenets of law and order in our democratic
system, namely the Government Edicts Doctrine, the First Amendment,
the Seventh Amendment, Sections 1, 5, 15 of the R.I. constitution, Due
Process and Equal Protection, Privileges and Immunities Clauses and
Separation of Powers in this Court's ministered digital court structure
and purposely unlawfully designed architecture that shows conclusive
evidence of prejudice, bias, *concealment* with knowing, <u>admitted</u> and

purposeful violation of the Constitution, of the First Amendment, the

Due Process Clause, the Equal Protection Clause, and the Privileges and

Immunities Clauses, the Seventh Amendment, Separation of Powers, and

the Supremacy Clause.   Denied access to judge-created laws created in

Rhode Island, Appellant's Due Process is violated and Appellant is

unconstitutionally targeted as a class (the public and the pro se litigants

are denied access) – this evidently ministerial court policy that motivates

the Rule 5 denial is upheld by the very persons who sit in a judicial

capacity in this matter to continue to deny judge-created law access by

its latest June 6, 2024 order denying Appellant's application for access

in its entirety.   Because access denial to Rhode Island's judge-created

laws functions to *conceal* the law in Rhode Island relating to corrupt

administration of federal programs by the Appellees and conceal from

the public what the courts in Rhode Island are up to as they relate to the

continuing corrupt administration of the federal programs by the

Appellees, under the United States Supreme Court's established case

laws on public access to court information and judge-created laws, the

Court in its ministerial acts and the Appellees violate the core tenets of

our democracy: see,  *Richmond Newspapers v. Virginia*,  448 U.S. at

587–88 (1980) (emphasis added) "the First Amendment . . . has a

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 198     Date Filed: 09/06/2024     Entry ID: 6665855

*structural* role to play in securing and fostering our republican system of self-government. Implicit in this *structural* role is not only 'the principle that debate on public issues should be uninhibited, robust, and wide-open,' but the antecedent assumption that valuable public debate—as well as other civic behavior—*must be informed*. The *structural* model links the First Amendment to that process of communication necessary for a democracy to survive, and thus entails solicitude not only for communication itself but also for the indispensable conditions of meaningful communication." The structure of this Court fails to comport with the fundamental tenets of our republican system of self-government and the Constitution, evidently by design and purposefully, and rejects Appellant's proper requests to timely comply with the Constitution under the First Amendment. As such, ***Appellant hereby reserves and preserves all rights to supplement Appellant's motion to enjoin until such time Appellant is granted remote access to judge-created laws created by Rhode Island judges.*** Since the Court acknowledges the problem and acknowledges proceeding is due process violative, Appellant concurrently filed separately a motion to stay pursuant to the Court's Order dated March 29, 2024 relating to this matter – however, the structural defects raised in this motion must be enjoined and

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

1313    Document: 00118186837    Page: 199    Date Filed: 09/06/2024    Entry ID: 6665855

remedied without delay nor could they be held in abeyance, which are categorically ripe for review by Article III, the United States Supreme Court. *Jarkesy, Lopes Bright Enterprise Inc., Fischer,* and *Trump* show the United States Supreme Court places paramount priority reigning in the excesses of the [criminal] abuses of the Administrative State of government agency actions, as It should, that this matter shows the Administrative State engages in criminal schemes to harm the public, defraud the public and undermine core tenets and the rule of law of our democracy.

## **Officials' Violation of the Law Is Treated As More Severe That Is Herein Preserved For Article III Review**

9.  Under 18 U.S.C. § 4, hinderance, concealment, suppression, affirmative neglect, or unjustified delay are "especially culpable for public officers, since they received a higher penalty for the crime than that received by ordinary citizens at common law." Mullis, *supra.* at 1113. The public officers specifically named in the Federal misprision statutory text with a duty to act upon the receipt of information are "judge(s) and civil authorities." The First Circuit federal appeals court equally applies the Federal misprision statute to state and local public officers, such as the Appellees and Mr. Coleman, and this Court's justices in their ministerial capacities ministering, promulgating, administering, implementing the

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case No. 1313     Document: 00118186837     Page: 200     Date Filed: 09/06/2024     Entry ID: 6665855

afore-described structurally defective and constitutionally infirm forums

targeting pro se litigants and concealing what the Appellees and the

judges in Rhode Island are up to, by denying access to court information

to the public and to Appellant regarding the judge-created laws

concerning the Appellees' corrupt administration of Title IV program

that involves routine falsification of federal support records zeroing out

interest and otherwise alterations of the Title IV records to make false

claims. *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir.

2007). The First Circuit in *Caraballo* further noted that the Supreme

Court also noted in *Branzburg v. Hayes,* 408 U.S. 665, 696 n. 36, 92

S.Ct. 2646, 33 L.Ed.2d 626 (1972), that some lower courts had construed

the statute to require both knowledge of a crime and an affirmative act of

concealment or participation, but that both the Supreme Court and the

First Circuit did not adopt that construction. Appellant preserves this

issue as it relates to this matter concerning Appellee conduct, Mr.

Coleman's conduct, and the Court's ministerial conduct, and the issue is

ripe for Article III review by the United States Supreme Court.

Moreover, the Plaintiff-Appellant raised the specter of Appellee

Misprision of felony committed before this Court on July 31, 2024

evidenced by the Appellee's 12A Counter Statement and Objection to

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

CV-2024-1313    Document: 00118186837    Page: 201    Date Filed: 09/06/2024    Entry ID: 6665855

<u>Motion to Stay</u> submitted by the Appellees through Mr. Coleman, an

agency Deputy Chief Counsel, a <u>public officer</u>.  The First Circuit in

*Caraballo* (precedent) cited ***United States v. Sessions***, Nos. 00-1756, 00-

1791, 2000 WL 1456903 (8th Cir. Oct.2, 2000) (unpublished decision),

holding that the misprision statute was satisfied where the individual

"==gave incomplete information regarding his knowledge of the [crime]==,"

at least where he "gave the police partial information that was

misleading." Id. at *1, 2000 WL 1456903. If the statute is geared toward

avoiding the misleading of authorities, *Ciambrone*, 750 F.2d at 1418, it

is still possible, in concept and in fact, that even a truthful but partial

disclosure could <u>conceal</u> by <u>misleading</u> the <u>government</u> through the

<u>withholding</u> of key information, specifically in footnote 10 that "it is

commonly accepted in other areas of law.  The specific cases the First

Circuit Court cited and relied on are all in the form of <u>omitted facts</u> in

filings submitted to judges in a federal court of law in official federal

proceedings that "may mislead."  (Emphatically, it is obvious that the

omission of key facts submitted in this Court which satisfies the

misprision statute equally applies to the omission of key facts submitted

in the federal appellate court). See the *Caraballo* Court cited cases,

***United States v. Nelson-Rodriguez***, 319 F.3d 12, 33 (1st Cir.2003)

Document: 00118186837     Page: 202     Date Filed: 09/06/2024     Entry ID: 6665855

(recognizing that ==omitted facts in a wiretap warrant affidavit may mislead==); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.1996) (commenting that a =="bare-bones description" submitted to judge may have been "calculated to mislead"==); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985) (holding that ==omitted facts in a warrant affidavit may mislead==); *United States v. Previte*, 648 F.2d 73, 85 (1st Cir.1981) (noting that trial court's use of slide transparencies to deliver jury instructions "had some potential to mislead the jury, more by what they omitted than by what they contained"). Therefore it is abundantly plain that the First Circuit *Caraballo* Court applied the **misprision statute** to court "filings submitted to a judge." The federal misprision of felony statute is a carry-over of common law misprision of felony that equally applies to Rhode Island state misprision of felony – accordingly both apply as they relate to Title IV program administration and corrupt ministering or aid and abet of corrupt administration of federal programs by state persons. Accordingly, the Appellee Rule 12A Counter Statement and Objection to motion to stay that were filed before this very Court, that grossly and egregiously omitted key facts evidenced in the previously Appellant-submitted state policy documenting the falsification of federal computer records zeroing out the unlawful 12%

compound interest in order to conceal it for the felonious purpose of

feloniously making false claims to the United States and to support-

obligors, "may have been calculated to mislead" which the First Circuit

held in *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir.

2007) **satisfies the misprision of felony statute,** holding that the

misprision statute was satisfied where the individual "gave incomplete

information regarding his knowledge of the [crime]," at least where he

"gave the partial information that was misleading"  which the Plaintiff-

Appellant plainly contends before this same Court was committed by the

Appellees, and Plaintiff-Appellant now preserves this misprision of

felony by the Appellees filings submitted to appellate Rhode Island

supreme court judges omitting the substantial fact of falsification of

federal computer records zeroing out the unlawful 12% compound

interest for the purpose of making false claims "calculated to mislead"

and "satisfies the misprision statute" for *all* applicable prosecution under

misprision of felony by the Appellant, and all qualifying persons, and

that it is ripe for review by Article III United States Supreme Court.  The

Court should note that the Plaintiff-Appellant applies for the $250,000

per Appellee submission per count allowed under the misprision statute

by law and should grant under the misprision law – there is no basis in

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 204    Date Filed: 09/06/2024    Entry ID: 6665855

law or fact for NO consequence or no addressment or indifference or inaction or denying remedy by this Court under the misprision statute or at common law, as painstakingly detailed by the First Circuit in ***United States v. Caraballo-Rodriguez,*** 480 F.3d 62 (1st Cir. 2007).

10. Under ***United States v. Caraballo-Rodriguez,*** 480 F.3d 62 (1st Cir. 2007), immediate remedy and relief to the Appellant at the first opportunity further complies with 18 U.S.C. § 4 and Rhode Island's misprision of felony at common law and by the First Circuit Court's own addressment in *Caraballo*, is required at common law, having at length described as a forewarning the consequences of failure to act by public officers. This applies in equal force to this Court's ministerial acts implementing, ministering and enforcing structurally defective and constitutionally infirm lower courts in the administration of federal Title IV proceedings in the administration of federal programs, incorporating the Administrative Procedure Act.

## CONCLUSION

WHEREFORE, the Court should GRANT Appellant's motion to enjoin. The Court should commit its decision, remedy or lack thereof and reasoning in writing. The structurally defective and all issues raised herein are preserved and are ripe for the United States Supreme Court

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 205    Date Filed: 09/06/2024    Entry ID: 6665855

review of the State's corrupt, unlawful, unconstitutional, and criminally

obstructive administration of a federal program that implicates billions

of federal funds falsely claimed by the State and billions of dollars

falsely claimed by the State against support obligors since the 1996

Amendments to Title IV through the routine falsification of Title IV

records zeroing out Rhode Island's 12% compound interest by the

Appellees since 1996, such as the Appellant.  The Court should GRANT

Appellant's application for $250,000 per Appellee concealment,

obstruction and misprision of felony under common law by the

Appellees.  Appellant condemns the Appellees.  Appellant preserves the

issue of Appellee violation of, and the Court's ministering of Rule 5's

violation of, and those persons knowingly ministering Rule 5, and denial

of public, federal auditors and Appellant's right to remote access of

court information and judge-created laws in violation of the following

federal criminal codes (that are not exhaustive): 18 U.S.C. § 2, 18 U.S.C.

§3, 18 U.S.C. § 4, 18 U.S.C. § 1512, 18 U.S.C. § 1516, 18 U.S.C. § 666,

18 U.S.C. § 241.  Appellant reserves and preserves all rights to

supplement this motion upon being granted remote access to Rhode

Island's judge-created laws in all its courts.

Respectfully submitted,

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

SU-2023-1313    Document: 00118186837    Page: 206    Date Filed: 09/06/2024    Entry ID: 6665855

Mary Seguin

Pro Se

/s/  *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: August 1, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2024, I filed the within Motion with the Clerk of the Court via the Rhode Island Electronic filing system, and a copy to Attorney Michael Coleman, Esq., 25 Howard Bldg. 57, Cranston, RI  02920.  A copy of the filing through the Court's EFS is available for downloading and viewing.

Respectfully submitted,

Mary Seguin

Pro Se

/s/  *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: August 1, 2024

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

SJC-13313     Document: 00118186837     Page: 207     Date Filed: 09/06/2024     Entry ID: 6665855

EXHIBIT I.

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/1/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case: 24-1313    Document: 00118186837    Page: 208    Date Filed: 09/06/2024    Entry ID: 6665855

# Recorded Phone Call

## Recording Name:

[Recording of phone conversations among John Langlois, Debra DeStefano and Mary Seguin recorded in Texas by Mary Seguin on October 5 2022]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 209    Date Filed: 09/06/2024    Entry ID: 6665855

1

```
 1   Seguin:    'Cause all -- like, if -- if we base the practice on

 2              how things are done of -- based on what Mr. Langlois,

 3              John, is representing today, everyone should be able

 4              to look at that screenshot, that screen, and be able

 5              to rely on it, correct?

 6   DeStefano:  Well, yeah, I --

 7   Seguin:    And its accuracy, correct?

 8   DeStefano:  -- I mean, the agen- --

 9   Seguin:    So --

10   DeStefano:  The agency is going to have to prove it.  Yes.  The

11              agency is going to have to submit -- and, again, it --

12              it's difficult for me to know how relevant what you're

13              asking for is 'cause I don't know what the agency's

14              gonna submit yet, uh, to -- to support their position.

15              So --

16   Langlois: And can I -- can I just say, the reason I asked

17              earlier whether, uh, Mary had spoken to Carla after

18              she made the $104,000 payment was because there was a

19              change in circumstances immediately after that and I

20              don't know whether anyone in my agency has ever

21              explained that to Mary.

22   Seguin:    Wait -- wait -- wait a minute.

23   Langlois: (Inaudible - 00:01:10)

24   Seguin:    Wait a minute.

25   Langlois: (Inaudible - 00:01:11)
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 210    Date Filed: 09/06/2024    Entry ID: 6665855

2

```
 1   Seguin:   Wait -- wait -- wait -- wait a minute.  Wait a minute.
 2             If there is --
 3   DeStefano:  Wait a minute.
 4   Seguin:   -- I'd like to get some documents of that.  Okay?  So
 5             -- so, again --
 6   DeStefano:  Mary, what do you --
 7   Seguin:   -- I've asked for, I think --
 8   DeStefano:  Oh.  Wait a minute --
 9   Seguin:   I -- I'm so sorry.  I'm --
10   DeStefano:  -- Mary.  I know -- I know what you asked for.  Let
11             me get to -- let me understand what John just said
12             before.  So, John, you're saying there was a change
13             subsequent to her making a payment --
14   Langlois: Correct.
15   DeStefano:  -- but before the Notice of Lien went out?
16   Langlois: Yes.
17   DeStefano:  Okay.  So --
18   Langlois: And can I -- can -- if I could just back up and
19             explain what happened.  Okay?
20   DeStefano:  Okay.
21   Seguin:   This --
22   Langlois: This is -- 99 percent of this is a misunderstanding.
23   DeStefano:  Okay.
24   Langlois: Okay?
25   Seguin:   Including --
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837     Page: 211     Date Filed: 09/06/2024     Entry ID: 6665855

3

```
 1   Langlois: (Inaudible - 00:01:51)

 2   Seguin:   -- what's on the screenshot?  Is that a

 3            misunderstanding?

 4   Langlois: Can -- can I speak without being shouted over?

 5   Seguin:   Well, I'm --

 6   DeStefano:  Mary, let --

 7   Seguin:   I'm sh- --

 8   DeStefano:  Let --

 9   Seguin:   I'm flabbergasted really.

10   DeStefano:  Uh, Mary, you've got to let me --

11   Seguin:   Sorry.

12   DeStefano:  -- listen --

13   Seguin:   Sorry.

14   DeStefano:  -- to what the agency is gonna --

15   Seguin:   I appreciate that.

16   DeStefano:  I mean, I know -- I only know that -- what's in

17            front of me and I don't know everything that has

18            happened in this case, but if -- if -- let me just

19            listen to the agency and see what they have to say for

20            --

21   Seguin:   Sure.

22   DeStefano:  Go ahead, John.

23   Langlois: What -- what happened in this case is when, uh --

24            Mary's representative, her attorney, called us in late

25            November 2021 and said there's a -- she wants her
```



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Document: 00118186837    Page: 212    Date Filed: 09/06/2024    Entry ID: 6665855

4

1    passport released.  What does she have to do to

2    release her passport?  They put her in touch with

3    Carla, who gave her the $104,000 number.  Where that

4    number came from, was the department attorney

5    contacted the custodial parent, Mr. Miurski (ph) or,

6    uh, Mr. -- I can't pronounce her last name.

7    Meyersiek.  So we contacted his attorney -- it wasn't

8    me, but it was someone in my office -- and said, "If

9    she's willing to make a $104,000 payment to pay off

10   the principal, would you agree to waive the $75,000" -

11   - I think it was $73,000 in arrears at that time?  He

12   said yes.  So Carla notified Mary that, if she paid

13   $104,000, it would be paid in full because he was

14   willing to waive the interest.  That was just the

15   principal.  What happened was, the day after Carla

16   spoke to Mary and told her to mail in the -- or to --

17   to wire the $104,000, the attorney for Mr., um,

18   Meyersiek contacted us again and said he changed his

19   mind, please put the interest back up on the system,

20   so we did.  That's his money.  The state is just

21   collecting for -- for this past child support that's

22   owed to him.  If he wants the arrears, he has every

23   right to ask for it.  So the number that was given to

24   her was correct on the day it was given to her.  The

25   arrears for $104,000.  Because when he was waiving the



Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/12/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

Case No. 21313    Document: 00118186837    Page: 213    Date Filed: 09/06/2024    Entry ID: 6665855

5

```
 1              arrears, wen he changed his mind the next day, we put

 2              the arrear -- I mean, interest back up on the system.

 3  Seguin:    I think --

 4  Langlois:  He was waiving the interest, and when that interest

 5              went back up on the system, that's why the system is

 6              now saying she owes $73,000.  That's why, in March,

 7              when the system saw that she had a, uh -- some kind of

 8              a personal injury settlement or some kind of an

 9              insurance settlement, we had -- we -- our system was

10              showing that she owed $73,000 in interest, so we

11              issued the lien.  But that's what happened, is when he

12              changed his mind the next day, and that's what messed

13              up the numbers.  So that's how this all happened.  It

14              was a pure misunderstanding.  I don't know whether

15              anyone has ever explained that to Mary, how that

16              happened.

17  DeStefano:  Okay.  Mary, did anybody ever explain that to you

18              before?

19  Seguin:    No.  No one ever --

20  DeStefano:  That the system has just -- just --

21  Seguin:    -- explained any of that, and I --
```

Case Number: SU-2023-0278-A
Filed in Supreme Court
Submitted: 8/7/2024 4:26 PM
Envelope: 4740095
Reviewer: Zoila Corporan

SC-2023-1313    Document: 00118186837    Page: 214    Date Filed: 09/06/2024    Entry ID: 6665855

6

1                    TRANSCRIBER'S CERTIFICATE

2

3           I, Laurel Keller, do hereby certify that I have

4    listened to the recording of the foregoing; further that the

5    foregoing transcript, Pages 1 through 5, was reduced to

6    typewritten form from a digital recording of the proceedings

7    held October 5, 2022, in this matter; that Participant Mary

8    Seguin has stated John Langlois and Debra DeStefano present were

9    included in this recording; and that the foregoing is an

10   accurate record of the proceedings as above transcribed in this

11   matter on the date set forth.

12           DATED this 20th day of June, 2024.

13

14

15                              _Laurel Keller_____

16                              Laurel Keller

17                              Ditto Transcripts
                                3801 E. Florida Ave.
18                              Suite 500
                                Denver, CO 80210
19                              Tel: 720-287-3710
                                Fax: 720-952-9897
20
                                DUNS Number: 037801851
21                              CAGE Code: 6C7D5
                                Tax ID #: 27-2983097
22

23

24

25



🇺🇸 An official website of the United States government   Here's how you know

# State Child Support Agencies with Debt Compromise Policies

Listen

**Publication Date:** June 2, 2023 **Current as of:** June 2, 2023

OCSS found that at least 36 states and the District of Columbia have debt compromise options available to noncustodial parents.  Although the approach varies from state to state, each has the same goal to encourage consistent payments and foster better family relationships.

Please check with the state in which you have your child support order for additional information. **See our map for contact information for each state**.

## Alabama

An interest rebate law allows for forgiveness of interest owed to the state and custodial parent (if the custodial parent agrees), in cases where current support is paid consistently for at least 12 months.

Source: **Code of Alabama §30-3-6.1** ⬈

**Back to top**

## Alaska

The state offers debt forgiveness for noncustodial parents who have accrued at least $1,500 in state-owed child support arrears and meets other eligibility criteria. If the parent complies with the arrears forgiveness agreement, state-owed debt will be forgiven in stages over a 6-year period.

Source: **15 AAC 125.650** ⬈

**Back to top**

## Arizona

The Division of Child Support Services (DCSS) Settlement Program assists noncustodial parents who may have a large arrears balance on their child support case. It provides an opportunity to pay off past-due balances.

If you are limited in your ability to pay, you may offer to settle your arrears balance by paying either a lump sum or by making monthly installments that can be accepted for up to three months.

To participate in the program:

1. Think about how much you would like to offer to settle the past due amount.
2. Stop by a local DCSS office or contact the DCSS Customer Service Center at 602-252-4045 or 1-800-882-4151, or email the DCSS Settlement Team at **dcsssettlement@azdes.gov** to submit your settlement offer.

Note: The state's role is not to advocate the amount of the settlement, but to facilitate whatever offer is appropriate for the state and the parties involved in the case. The DCSS cannot require a custodial parent to accept a settlement offer.

Source: **Arizona Parents who Pay Child Support** ⧉

**Back to top**

# Arkansas

Does not have a program.

**Back to top**

# California

The California Department of Child Support Services' Debt Reduction Program aims to increase support collected for families and resolve uncollectable debt that is owed to the state of California. The Debt Reduction Program allows for the acceptance of a partial-pay offer in exchange for compromising the remainder of permanently assigned arrears owed by a participant.

Source: **Child Support Reduction Program** ⧉

**Back to top**

# Colorado

County child support offices have the ability to offer arrears compromise for assigned child support arrears. It is up to the counties to determine if they want to implement an arrears compromise program

and, if so, what criteria they wish to use.

Source: State

Back to top

## Connecticut

Connecticut has implemented two arrears programs. The first one, the Arrears Adjustment Program, is designed to reduce state-owed debt as well as encourage the positive involvement of NCPs in the lives of their children and to pay current support. The second program, the Arrears Liquidation Program, is designed to liquidate state-owed arrears by allowing obligors to pay off arrears in a lump-sum payment at a discounted rate.

Source: **Regulations of Connecticut State Agencies §17b-179b-1 to §17b-179b-4** ⧉

Back to top

## Delaware

Does not have a program.

Back to top

## District of Columbia

The Fresh Start program allows for a portion of Temporary Assistance for Needy Families (TANF) arrears to be forgiven in return for successfully making consecutive timely payments on the current support obligation or making a lump sum payment towards arrears. The Child Support Services Division must invite noncustodial parents to participate in the program.

Qualifications are:

- At least $1,000 owed in TANF arrears
- No voluntary payment in at least 12 months
- Previous unsuccessful enforcement efforts
- Valid addresses for both parties
- Failure to pay support must not be due to bad faith
- Responding interstate cases are not eligible for the program

Source: **District of Columbia Fresh Start Program** ⧉

**Back to top**

## Florida

Does not have a program.

**Back to top**

## Georgia

A state statute gives the child support program the authority to waive, reduce, or negotiate the payment of state-owed arrears for administrative child support orders if it is determined that there is good cause for nonpayment or that enforcement would result in substantial and unreasonable hardship to the parent or parents responsible for the support. Courts have discretion in applying or waiving past-due interest owed on arrears.

Source: O.C.G.A. § 19-11-5, § 7-4-12.1; Ga. Comp. R. & Regs. r. 290-7-1-.20

**Back to top**

## Hawaii

Does not have a program.

**Back to top**

## Idaho

Does not have a program.

**Back to top**

## Illinois

Project Clean Slate provides opportunities for low-income noncustodial parents to apply for forgiveness of assigned arrears in exchange for making regular, ordered payments of current support to the custodial parent for six months. The noncustodial parent must have demonstrated that they were unable to pay the assigned support at the time it was owed due to unemployment, incarceration, or serious illness. The noncustodial parent must also meet low-income standards.

Source: **Clean Slate Program** ⧉ ; Illinois Public Aid Code §5/10-17.12; 89 Illinois Administrative Code Section 160.64.

Back to top

# Indiana

Does not have a program.

Back to top

# Iowa

The Promoting Opportunities for Parents Program assists parents in overcoming the barriers which interfere with fulfilling their obligations to their children. In order to encourage parent participation, Iowa's Child Support Recovery Unit may partner with community providers and resources and offer incentives. The incentives include satisfactions of arrears due to the state for payment of court-ordered child support.

Source: **Iowa CSRU Customer Handbook** ⧉

Back to top

# Kansas

The updated incentive program returned January 1, 2021, with an effective date of September 1, 2020. The focus of the updated incentive program is to work with payors to achieve stable employment. The primary incentive remains: a reduction of state-owed arrears only, with a lifetime maximum of $2500 and an additional incentive of $1000 for those payors who complete their GED or high school diploma. So, the lifetime maximum for those who obtain a GED is $3500.

There are three different categories in the incentives:
1) Career enhancement: Enables a payor to progress in their career, $2000 cap (HVAC certificate, barbershop or cosmetology license, forklift driver certificate, etc.)

2) Education: $1000 cap (GED or high school equivalent)

3) Personal enhancement: $500 cap (fatherhood or parenting class, finance class, addiction class, etc.)

The incentives are capped by their category. For example, the completion of an addiction class and a financial class will only result in one $500 incentive. Completion of both the HVAC and Welding certificate programs will only result in one $2000 incentive. In addition, if a payor has already received the maximum amount under prior versions of the incentive program, they will not receive additional incentives. If, however, a payor only received $500 previously, they could be eligible for additional incentives under this program.

Beginning January 1, 2021, all incentives program requests with their appropriate documentation (certificates of completion, attendance logs, etc.) must be sent to **DCF.CSSIncentives@ks.gov** for consideration and approval of credit.

Back to top

# Kentucky

Does not have a program.

Back to top

# Louisiana

Does not have a program.

Back to top

# Maine

Does not have a formal program. The state considers debt forgiveness on a case-by-case basis only for assigned arrears. Factors considered are:

- Ability to pay (present and future)
- Partial or continuing payments for current or partial debt
- Reduction in state owed arrears
- Potential case closure

Back to top

# Maryland

The Payment Incentive Program encourages the noncustodial parent to make consistent child support payments by:

- Reducing state-owed arrears by half if the noncustodial parent makes full child support payments for a year.
- Eliminating the balance owed if the noncustodial parent makes full child support payments for two years.

The noncustodial parent will receive credit for uninterrupted court-ordered payments made immediately prior to participation in the program. Consideration will be given for periods of unemployment due to

seasonal work and no-fault termination.

Source: **Maryland Payment Incentive Program** ⧉

**Back to top**

## Massachusetts

Massachusetts child support regulations allow for the settlement of interest, penalties, and arrears, as well as equitable adjustment of arrears. The Child Support Commissioner may waive all or a portion of the interest and penalties owed to the Commonwealth if the Commissioner determines such waiver is in the best interest of the Commonwealth and will maximize collection of current and past-due child support.

The Commissioner may also accept an offer in settlement that is less than the full amount of state-owed arrears, where there is serious doubt as to liability or collectability of such arrearages. The Commissioner may also equitably adjust the amount of child support arrearages owed to the Commonwealth when the obligor has no present or future ability to pay the full arrearages.

Source: **830 CMR 119.A.6.2** ⧉

**Back to top**

## Michigan

Several laws allow for adjustment of arrears and interest.

- In some cases, the Department of Human Services or its designee may use discretion to settle and compromise state-owed arrears (MCL 205.13).
- Other laws allow noncustodial parents who do not have the ability to pay the arrearage in full, presently, or in the near future to request a payment plan (for a minimum of 24 months). At the completion of the payment plan, the court may waive any remaining arrears owed to the state (MCL 552.605e).
- Additionally, noncustodial parents may request a payment plan as a means to have the surcharge (interest) waived or reduced if regular payments are made (MCL 552.603d).

Source: **MCL 205.13** ⧉ , **MCL 552.605e** ⧉ , **MCL 552.603d** ⧉

**Back to top**

## Minnesota

State statute gives the parties (including the public authority with assigned arrears) the authority to compromise unpaid support debts or arrearages owed by one party to another, whether or not docketed as a judgment.

Source: **Minn. Stat. §518A.62** ⧉

**Back to top**

## Mississippi

Does not have a program.

**Back to top**

## Missouri

Does not have a program.

**Back to top**

## Montana

Does not have a program.

**Back to top**

## Nebraska

Does not have a program.

**Back to top**

## Nevada

Nevada will only consider arrears-only cases where there is no money owed to the custodian. The noncustodial parent must apply and provide supporting documents. Each application is reviewed, and a recommendation is provided to the Administrator of the Division of Welfare and Support Services who has authority to forgive state debt.

Source: State

**Back to top**

## New Hampshire

The New Hampshire Division of Child Support Services does not have a formal debt compromise policy. Child support workers do have some discretion to negotiate agreements to secure current support that may include forgiveness of assistance debt owed to the state that accrued prior to the establishment of a child support order and which was based on imputed income. Any such agreement must be approved by the child support worker's supervisor. Check with the state for more information.

Source: State

**Back to top**

## New Jersey

Occasionally, the New Jersey Child Support Program will offer a time-limited match on payments made towards the child support case and credit the same amount towards the arrears balance owed to the state. The program is announced yearly and is based on availability of funds.

Source: **New Jersey Arrears Match Program** ⧉

**Back to top**

## New Mexico

New Mexico's Child Support Arrears Management Program, *Fresh Start,* supports the needs of today's modern family by reviewing cases to focus on right-sized court orders, resulting in more payments and less debt.  This program may provide an option for the noncustodial parent to reduce the amount of assigned arrears by providing a lumpsum payment or consistent monthly payments to the custodial parent. To be eligible, the noncustodial parent must have over $1,000 of state-owed arrears and meet other additional criteria outlined on the **Fresh Start Arrears Management Program** ⧉ .

Source: State

**Back to top**

## New York

New York State offers several debt compromise programs to noncustodial parents who owe the state. The program varies depending on the local district. Interested persons must confirm with the local district where their order was issued if the service is available.

- Arrears Cap: a limit on the amount of child support debt owed to the government.

- Arrears Credit Program: open to noncustodial parents who owe Department of Social Services child support arrears and do not have more than $3,000 in the bank or more than $5,000 in property.

- Parent Success Program: designed to help noncustodial parents by supporting their well-being and strengthening their ability to provide for their children by completing a substance-use treatment program.

- Pay It Off: a time-limited program that enables noncustodial parents to pay off NYC DSS child support debt twice as fast. See the website for more information about each program.

Source: **New York Debt Reduction** ⧉

**Back to top**

# North Carolina

To be eligible the obligor must:

- Owe a minimum of $15,000 in state-owed arrears
- Agree to make 24 consecutive monthly payments for current support and an amount toward arrears
- Comply with the agreement.

Source: **NC General Statute, Chapter 110, Section 135 (§ 110-135)** ⧉  (PDF)

**Back to top**

# North Dakota

North Dakota has three goals for its debt compromise program:

1. Motivate obligors to comply with long-term payment plan
2. Eliminate uncollectible debt
3. Facilitate case closure where appropriate

Compromise of assigned arrears is permitted if an offer is received for at least 95% of the outstanding arrears balance (after subtracting all negotiable interest) or 90% with IV-D Director approval.

Interest may be compromised when an obligor enters into a payment plan to avoid license suspension or other enforcement remedies or when an obligor has been making payments on a regular basis.

In both cases, interest is not charged while regular payments are made and, after one year of regular payments, any unpaid interest that had accrued before that date can be compromised.

Interest can also be considered uncollectible under certain circumstances. Some situations are pre-approved, such as an obligor is receiving Supplemental Security Income. In these cases, a worker may prevent interest from accruing on the case and can request an adjustment to the payment record for any unpaid interest that has already accrued.

In situations that are not pre-approved, the worker cannot suspend interest or have it waived as uncollectible without IV-D Director approval.

Source: State

Back to top

# Ohio

Permanently assigned arrears can be reduced if/ when the obligor satisfies all the terms and conditions of a waiver, installment plan compromise, lump sum compromise, or a family support program.

Source: **Ohio Administrative Code: Rule 5101:12-60-70** ⧉

Back to top

# Oklahoma

The state permits a waiver of some or all child support arrears with court approval, provided the parents mutually agree (or the state agrees when the debt is owed to the state).

Settlements of past support may include an agreement that the noncustodial parent make a lump-sum partial payment or a series of payments toward the total amount of past support.

Settlements also may include an agreement for the noncustodial parent to pay a specified number of current child support payments or in-kind payments in the future.

In addition, the state has established an amnesty program for accrued interest owed to the state. The state attorney in the local district must approve all settlements of state-owed interest.

Source: **43 O.S. §112 Oklahoma Administrative Code 340:25-5-140 56 O.S. §234** ⧉

Back to top

# Oregon

The Oregon Child Support Program/ Division of Child Support does not have a formal program, but forgiveness is used in appropriate situations. The program considers the family's best interest and may

satisfy all or any portion of child support arrears that are assigned to the State of Oregon or to any other jurisdiction if:

- The arrears are a substantial hardship to the paying parent
- A compromise will result in greater collections on the case; or
- The paying parent enters into an agreement with the program to enhance the parent's ability to pay or their relationship with the children for whom the parent owes arrears.

Source: **OAR Rule 137-055-6120** ⧉

Back to top

# Pennsylvania

Per Pennsylvania Supreme Court Rule, any compromise of state-owed debt must be approved by the court.

Source: State

Back to top

# Rhode Island

The Office of Child Support Services has the discretion to compromise state-owed arrears.

Source: State

Back to top

# South Carolina

Does not have a program.

Back to top

# South Dakota

South Dakota Division of Child Support (DCS) does not have a formal debt compromise policy.

Child support workers do have some discretion to negotiate a lump sum settlement of 75% of state-owed arrears. If the parents agree to a lump sum settlement for arrears owed to the family, DCS has a forgiveness

of arrears form, which the parties can sign. The form is submitted to the court for approval. If the court approves the settlement, DCS will remove the arrears from the case.

Source: State

**Back to top**

## Tennessee

With the approval of the court, the parties have the right to compromise and settle child support arrears owed directly to the person owed support (family-owed arrears). State-owed debt cannot be forgiven.

Source: **Public Chapter 200, amending Tennessee Code Annotated, Section 36-5-101(f)** ⧉  (PDF)

**Back to top**

## Texas

The child support agency may establish and administer a payment incentive program to promote payment by noncustodial parents who are delinquent in satisfying child support arrearages assigned to the child support agency under Section 231.104(a).

The program must provide to a participating noncustodial parent a credit for every dollar amount paid on interest and arrearage balances during each month of the NCP's voluntary enrollment in the program.

Source: **Texas Family Code 231.124** ⧉

**Back to top**

## Utah

The Prisoner Forgiveness Program targets recently released prisoners and forgives state-owed arrears for those who are approved for the program and pay 12 consecutive months of current support plus a nominal amount toward arrears.

Utah also targets obligors in treatment programs and forgives state-owed arrears for those who are approved for the program and pay 12 consecutive months of current support and/or arrears.

Source: UT Admin. Code Rule R527-258

**Back to top**

## Vermont

The court may limit the child support debt, taking into consideration the criteria of 15 V.S.A. § 659.

Source: **33 VSA §3903** ⧉

**Back to top**

# Virginia

The Division of Child Support Enforcement's Temporary Assistance for Needy Families (TANF) Debt Compromise Program is available to parents who owe TANF debt under a Virginia court or administrative order.

The program is designed to encourage consistent child support payments by offering eligible parents a debt reduction in TANF debt. There are three tiers of participation based on your ability to pay. For more information on how much you may be eligible to save, call 800-468-8894 or visit your local district office.

Source: **State Child Support TANF Debt** ⧉

**Back to top**

# Washington

The Child Support Department may accept offers of compromise of disputed claims and may grant partial or total charge-off of support arrears owed to the state.

The state established an administrative dispute resolution process through its Child Support Conference Boards to hear parents' request to reduce the amount of arrears and make determinations based on the individual circumstances.

Source: **Rev. Code of Washington 74.20A.220** ⧉ , **Washington Admin. Code 388-14A-6400 through 388-14A-6415** ⧉

**Washington Child Support Conference Boards** ⧉  (PDF)

**Back to top**

# West Virginia

This program allows forgiveness of interest for obligors who pay off all arrears within 5 years/60 months. This is a voluntary program and requires all parties to voluntarily agree to forgive the interest.

Source: **West Virginia Code §48-1-302 (c)** ⧉

**Back to top**

## Wisconsin

Local child support agencies may forgive all or part of the state-owed arrears under a variety of circumstances, including when the obligor is unable to pay the arrearage based on income, earning capacity, and assets, or the obligor has a long-term disability.

Source: Child Support Bulletin # CSB 20-06

Back to top

## Wyoming

Does not have a program.

Back to top

## Puerto Rico

Does not have a program.

Back to top

## Virgin Islands

Does not have a program.

Back to top

## American Samoa

Does not have a program.

Back to top

## Commonwealth of the Northern Mariana Islands

Does not have a program.

Back to top

## Guam

Does not have a program.

**Back to top**

# Federated States of Micronesia

Does not have a program.

**Back to top**

# Republic of the Marshall Islands

Does not have a program.

**Back to top**

# Republic of Palau

Does not have a program.

**Back to top**

**Types:**
Outreach Material

**Audiences:**
Parents , States